

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed April 19, 2023**

_____
**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 7 |
| | § | |
| **Texas E&P Operating, Inc.** | § | |
| | § | **Case No. 17-34386-SGJ-7** |
| Debtor. | § | |
| | § | |
| | § | |
| | § | |
| **ROBERT YAQUINTO, JR.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | **Adversary No. 19-03231-sgj** |
| | § | |
| **KRAGE & JANVEY, L.L.P.,** | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT KRAGE & JANVEY, L.L.P.'S RULE 12(b)(6) MOTION TO DISMISS

I.    **Introduction**

The above-referenced adversary proceeding ("Adversary Proceeding") was filed by a

Chapter 7 bankruptcy trustee, Robert Yaquinto, Jr. ("Plaintiff" or "Trustee"), against a law firm,

Krage & Janvey, L.L.P. (the "Defendant" or sometimes "K&J") that provided prepetition legal

services to the defunct Debtor and its former affiliates.    The Adversary Proceeding has—until

recently—been about pursuing "chapter 5" avoidance actions—i.e., the Trustee had merely been

pursuing avoidance and recovery of 21 payments made by the Debtor to the Defendant for legal

services provided to the Debtor ***and to its non-debtor affiliates*** in the approximately 34 months

leading up to the bankruptcy petition date.    *See* Original Complaint [Doc 1] (the "Original

Complaint"), Exhibit A.[1]    The Adversary Proceeding was filed two days before the deadline for

pursuing avoidance actions that is set forth in section 546(a) of the Bankruptcy Code.    However,

things morphed substantially recently, when this court granted a motion for leave of the Trustee to

amend his Original Complaint, pursuant to Fed. R. Civ. Proc. 15.    The First Amended Complaint

[Doc 41], recently filed by the Trustee, is a dense 60 pages in length (not counting attachments),

in comparison to the lean 10-page Original Complaint, and not only seeks to avoid and recover

many ***additional*** transfers/payments not listed in the Original Complaint—some being within the

two-years prior to the petition date and some going back four years before the petition date (set

---

[1] References to filings of record in this Adversary Proceeding are denoted herein as [Doc __] and those in the underlying bankruptcy case as [BK Doc __]. The court takes judicial notice of Plaintiff's filings in the bankruptcy case along with all filings by Plaintiff in this Adversary Proceeding and in certain associated adversary proceedings referenced herein. It is well-established and "'clearly proper in deciding a 12(b)(6) motion [that a court may] take judicial notice of matters of public record.'" *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007)) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)). Such public records include the court's records. *Biliouris as next friend of Biliouris v. Patman*, 751 Fed. App'x 603, 604 (5th Cir. 2019) ("court may take judicial notice of the record in prior related proceedings"), citing *In re Missionary Baptist Found. Of Am., Inc.*, 712 F.2d 206, 211 (5th Cir. 1983); *Murchison Cap. Partners, L.P. v. Nuance Communications, Inc.*, 625 Fed. Appx. 617, 618 n. 1. (5th Cir. 2015) ("because they are public records, we also take judicial notice of court pleadings in other cases") *ITT Rayonier Inc. v. U.S.*, 651 F.2d 343, 345 n. 2 (5th Cir. 1981) ("court may … take judicial notice of its own records…").

forth in a much lengthier exhibit)—but also adds four new state law causes of action for the first

time (i.e., "money had and received/unjust enrichment"; professional negligence/malpractice;

participation in or aiding and abetting breach of fiduciary duty; and negligent

retention/supervision).   Due to: (a) the alleged impact of the COVID pandemic on pursuing

discovery in this litigation, (b) a mid-case tolling agreement, and (c) an agreed abatement period,

the filing of the First Amended Complaint did not occur until more than three years after the filing

of the Original Complaint (as well as more than three years after the deadline set forth in section

546(a) of the Bankruptcy Code).[2]   Because of this rather late and quite voluminous amendment of

the Original Complaint, the Adversary Proceeding now presents a panoply of timeliness and

procedural conundrums such as: (a) how does Fed. R. Civ. Proc. 15(c)(1)'s "relation back" concept

work,[3] with regard to pleading amendments, when *new* transfers are sought to be avoided *well*

*after* the section 546(a) statute of limitations and/or after the expiration of a statute of repose under

state fraudulent transfer law; (b) how much specificity is required to begin with, with regard to

pleading avoidable transfers—i.e., can a trustee/plaintiff add on several new, allegedly avoidable

transfers *after* the section 546(a) deadline and/or *after* a statute of repose deadline if he reserved

the right to supplement his pleading with other transfers he might later discover; and (c) as for the

newly added state law causes of action, does Rule 15(c)(1)'s "relation back" concept save them

from a timeliness problem under section 108(a) and state law, and what relevance does the

"discovery rule" play in all of this—can the "discovery rule" help a bankruptcy trustee with a

timeliness problem, and does it matter at all if the litigation target (here, a law firm) was in a

fiduciary relationship with the debtor?   These issues arise in the context of the law

---

[2] Section 546(b) of the Bankruptcy Code, of course, only applies to the avoidance actions and not to the newly added state law causes of action, which would be governed by section 108(a) of the Bankruptcy Code and state law limitations periods.

[3] Fed. R. Civ. Proc. 15 applies in this Adversary Proceeding pursuant to Fed. R. Bankr. Proc. 7015.

firm's/Defendant's pending Rule 12(b) motion to dismiss.[4]  The court is ultimately granting in part and denying in part the Defendant's motion to dismiss.

## II.      Undisputed Facts

By way of background, for many years an individual named Mr. Mark Plummer ("Plummer") sold unregistered, private placement interests in various oil and gas drilling joint ventures ("Ventures"). Texas E & P Operating, Inc. (the "Debtor")—which changed names several times during its existence—was the purported operator-entity for his Ventures. The Debtor purportedly conducted and had full control of drilling operations for each of the Ventures and paid upfront expenses in such development and operations. Under operating agreements, the joint Ventures (i.e., the investors therein) agreed to reimburse the Debtor for their respective share of the operating expenses.

By mid-2017, these Ventures and various affiliated businesses, including the Debtor (collectively, the "Plummer Entities') were suffering from, among other things, losses from two expensive and unsuccessful oil wells in Anderson County, Texas; the weight of dozens of lawsuits by creditors and investors; and the 2016 expulsion of Plummer from the Financial Industry Regulatory Authority ("FINRA"). Facing increasing financial stress and rapidly accumulating litigation, the Debtor (but not affiliated Plummer Entities) filed for bankruptcy under chapter 11 of the Bankruptcy Code (the "Bankruptcy Case") on **November 29, 2017 (the "Petition Date")**. Less than two months later—on **January 18, 2018**—the late Jason Searcy ("Searcy") was appointed chapter 11 trustee of the Debtor, at the request of the Official Committee of Unsecured Creditors ("UCC") that was appointed in the case (the UCC had expressed concern that Plummer had conflicts of interest).  A few months later, Searcy moved to convert the Bankruptcy Case to a

---

[4] Fed. R. Civ. Proc. 12 applies in this Adversary Proceeding pursuant to Fed. R. Bankr. Proc. 7012.

chapter 7 (citing no prospects for a reorganization), and Searcy, thereafter, served as the chapter 7 trustee following conversion on **July 27, 2018**. Unfortunately, Searcy died during the Bankruptcy Case **(on January 16, 2018)**, and Robert Yaquinto, Jr. was thereafter appointed the successor trustee on **January 23, 2019**.

For many years in the past, including the four-year period before the Petition Date (i.e., from **November 29, 2013** until **November 28, 2017**), the Defendant, K&J, provided legal services for the Plummer Entities.

*A. The Original Complaint*

On the eve of the expiration of the Bankruptcy Code's statute of limitations for bringing avoidance actions (i.e., the applicable section 546(a) deadline)—on **November 27, 2019**—the Trustee filed this Adversary Proceeding, originally seeking to avoid and recover **21 payments** totaling **$472,158.42** which were made by the Debtor to the Defendant in the roughly 34 months leading up to the Debtor's Petition Date.  These payments were defined in the Original Complaint as "Transfers," for purposes of one or more of the following statutes: 11 U.S.C. §§ 544, 547, 548 and 550, and TEX. BUS. & COMM. CODE §§ 24.005(a)(1) and (a)(2).[5]   The following Transfers (the "Original Transfers") were identified on an Exhibit A attached to the Original Complaint:

---

[5] TEX. BUS. & COMM. CODE § 24.001 *et seq*., otherwise referred to as the Texas Uniform Fraudulent Transfer Act, shall hereinafter be referred to as "TUFTA."

| Date | | Transfer Amount |
|---|---|---|
| 1/19/2015 | $ | 23,961.07 |
| 1/29/2015 | $ | 12,674.31 |
| 2/26/2015 | $ | 12,473.12 |
| 3/10/2015 | $ | 50,000.00 |
| 3/26/2015 | $ | 23,335.95 |
| 7/27/2015 | $ | 44,000.00 |
| 8/17/2015 | $ | 16,034.47 |
| 11/11/2015 | $ | 49,679.50 |
| 12/30/2015 | $ | 10,000.00 |
| 4/15/2016 | $ | 50,000.00 |
| 6/1/2016 | $ | 25,000.00 |
| 11/9/2016 | $ | 25,000.00 |
| 12/9/2016 | $ | 25,000.00 |
| 3/17/2017 | $ | 5,000.00 |
| 4/27/2017 | $ | 20,000.00 |
| 5/31/2017 | $ | 10,000.00 |
| 7/7/2017 | $ | 10,000.00 |
| 9/1/2017 | $ | 20,000.00 |
| 9/26/2017 | $ | 20,000.00 |
| 11/6/2017 | $ | 10,000.00 |
| 11/6/2017 | $ | 10,000.00 |
| Total | $ | 472,158.42 |

The Trustee sought to avoid and recover these Transfers under any and all of the following statutes that might be applicable:

**Count 1**: Actual Fraudulent Transfer – TEX. BUS. & COMM. CODE § 24.005(a)(1) through 11 U.S.C. § 544

**Count 2**: Constructive Fraudulent Transfer – TEX. BUS. & COMM. CODE § 24.005(a)(2) through 11 U.S.C. § 544

**Count 3**: Actual Fraudulent Transfer – 11 U.S.C. § 548(a)(1)(A)

**Count 4**: Constructive Fraudulent Transfer – 11 U.S.C. § 548(a)(1)(B)

**Count 5**: Preferences – 11 U.S.C. § 547

The Trustee reserved "the right to (i) supplement the information regarding the Transfers and any additional transfers, and (ii) seek recovery of such additional Transfers."[6]

---

[6] Original Complaint, ¶ 16.

B.    *The First Amended Complaint*

Almost three years later, on **October 12, 2022**, the Trustee filed a motion for leave to amend the Original Complaint, pursuant to Fed. R. Civ. Proc. 15(a).  Among other things, the Trustee represented that he had not been able to obtain certain hard copy records from the Defendant until **June of 2021** (allegedly due to the COVID pandemic) and now, based on his investigations, he had certain new claims to add.  The Trustee noted that he had obtained a tolling agreement in **January 2022** with regard to any limitations that had not yet expired as of that date.  The Trustee also noted that in **February 2022**, the parties had entered into a series of agreed motions to abate the Adversary Proceeding as they explored settlement. The court notes also that, on **June 9, 2022**, Plummer was indicted by a grand jury in Collin County, Texas for theft, money laundering, and securities fraud in connection with three drilling Ventures—due to evidence suggesting that, from May 1, 2015 through September 18, 2020, Plummer engaged in a "scheme and continuing course of conduct" to defraud more than 170 investors out of more than $10 million.

This court granted leave to amend the Original Complaint, by an order dated December 6, 2022.  On **December 9, 2022**, the Trustee filed his First Amended Complaint, which, as earlier noted, morphed to 60 pages in length (not counting attachments—which included the criminal indictments) and added numerous ***additional transfers*** (aggregating to an ***additional*** **$517,736.50).**  Some of these newly identified transfers had allegedly occurred within two years of the Petition Date, and some had occurred between two years and four years before the Petition Date.  In other words, some might be actionable under section 548 of the Bankruptcy Code, and some might be actionable under TUFTA (in each case, assuming there would be no timeliness problem under Bankruptcy Code section 546 or TUFTA).  The revised list of payments is set

forth below (which was set forth in a new Exhibit 2 attached to the First Amended Complaint).

To be clear, in the First Amended Complaint, the Trustee was for the first time—approximately

five years after the Petition Date—seeking the avoidance and recovery of **$989,894.92** of total

Transfers (*54 Transfers in all*)—up from the original **$472,158.42** Transfers (i.e., *21 Transfers*)

identified in the Original Complaint.  Perhaps more significantly, the Trustee added four new

state law causes of action that certainly altered the entire tone of the Adversary Proceeding.  The

First Amended Complaint, in stark contrast to the Original Complaint (which was all about

alleged chapter 5 avoidable transfers), contained this highly charged narrative:

> Importantly, Plummer did not act alone in harming Debtor. This specific
> lawsuit arises out of the fact that, at all relevant times, the law firm of Krage &
> Janvey charged Debtor for legal "services" that ultimately helped Plummer
> perpetuate his fraud and ensure Debtor's bankrupt fate. Over the years, Krage &
> Janvey was put on repeated notice that: (1) Plummer's fundraising activities were
> fraudulent; and (2) Plummer was setting up the increasingly insolvent Debtor to
> be holding the bag of debt at the end. . . . Krage & Janvey, who acted as a de
> facto general counsel for Plummer, was aware of it all and represented Plummer,
> Debtor, and the Ventures in most of it (and almost always at Debtor's expense).
> By November 2013, Krage & Janvey would have (or should have) known that
> Plummer was not running a legitimate oil and gas business and, therefore, was
> using Debtor to incur costs Plummer knew would not be repaid. . . .  To be clear,
> Krage & Janvey was not a random, arms-length vendor for Plummer or the
> Ventures. Krage & Janvey was a critical part of Plummer's inner circle and,
> through its decade-long representation of Plummer and the Ventures, had more
> knowledge about Plummer's actions than arguably any person or entity other than
> Plummer himself. In other words, Krage & Janvey was much too close for far too
> long to credibly feign ignorance now. [7]

Set forth below is the amended list of Transfers, including **$517,736.50** worth of newly

identified transfers (the "Newly Identified Transfers"), and the newly added state law causes of

action ("Newly Identified State Law Causes of Action"):

---

[7] First Amended Complaint, ¶¶ 3-5; 8.

# EXHIBIT 2

**Transfers from Debtor to Krage & Janvey**

| Check Date | Check # | Payment Amount | Invoice # |
|---|---|---|---|
| 12/20/2013 | 4519 | $26,163.60 | 25839 |
| 12/20/2013 | 4519 | $2,610.00 | 25840 |
| 1/24/2014 | 4689 | $33,920.60 | 25906 |
| 1/24/2014 | 4689 | $3,470.00 | 25907 |
| 2/24/2014 | 4850 | $29,755.00 | 25938 |
| 2/24/2014 | 4850 | $2,750.00 | 25939 |
| 2/24/2014 | 4850 | $2,200.00 | 25940 |
| 4/4/2014 | 5055 | $34,015.00 | 25996 |
| 4/4/2014 | 5055 | $550.00 | 25997 |
| 4/25/2014 | 5186 | $34,841.00 | 26059 |
| 5/27/2014 | 5349 | $58,969.50 | 26109 |
| 6/26/2014 | 5477 | $41,043.17 | 26159 |
| 7/28/2014 | 5594 | $31,320.61 | 26212 |
| 8/25/2014 | 5714 | $33,817.21 | 26265 |
| 8/25/2014 | 5714 | $4,950.00 | 26266 |
| 10/23/2014 | 5971 | $40,000.00 | 26326 |
| 11/25/2014 | 6201 | $20,605.33 | 26326 |
| 12/23/2014 | 6350 | $24,185.74 | 26381 |
| 12/23/2014 | 6350 | $55.00 | 26380 |
| 1/19/2015 | 6466 | $15,381.07 | 26436 |
| 1/19/2015 | 6466 | $8,580.00 | 26435 |
| 1/29/2015 | 6510 | $12,124.31 | 26493 |
| 1/29/2015 | 6510 | $550.00 | 26492 |
| 2/26/2015 | 6624 | $8,073.12 | 26559 |
| 2/26/2015 | 6624 | $4,400.00 | 26560 |
| 3/26/2015 | 6738 | $18,735.95 | 26613 |
| 3/26/2015 | 6738 | $4,600.00 | 26612 |
| 6/25/2015 | 7018 | $18,674.19 | 26673 |
| 6/25/2015 | 7018 | $5,635.00 | 26672 |
| 6/25/2015 | 7018 | $575.81 | 26724 |
| 6/25/2015 | 7018 | $115.00 | 26723 |
| 8/17/2015 | 7193 | $16,034.47 | 26773 |
| 8/26/2015 | 7306 | $20,303.24 | 26821 |
| 8/26/2015 | 7306 | $28,720.47 | 26724 |
| 8/26/2015 | 7306 | $15,279.53 | 26773 |
| 11/11/2015 | 7663 | $22,384.23 | 26872 |
| 11/11/2015 | 7663 | $18,675.00 | 26926 |
| 11/11/2015 | 7663 | $4,982.90 | 26871 |
| 11/11/2015 | 7663 | $2,267.37 | 26924 |
| 11/11/2015 | 7663 | $1,370.00 | 26925 |

| | | | |
|---|---|---|---|
| 12/30/2015 | 7915 | $9,975.02 | 26927 |
| 12/30/2015 | 7915 | $24.98 | 26987 |
| 3/10/2016 | 37050 | $16,970.77 | 28989 |
| 3/10/2016 | 37050 | $16,912.50 | 26988 |
| 3/10/2016 | 37050 | $16,116.73 | 26990 |
| 4/15/2016 | 37593 | $39,736.93 | 27028 |
| 4/15/2016 | 37593 | $10,263.07 | 26990 |
| 6/1/2016 | 38650 | $9,925.08 | 27087 |
| 6/1/2016 | 38650 | $7,135.00 | 27029 |
| 6/1/2016 | 38650 | $4,922.50 | 27085 |
| 6/1/2016 | 38650 | $1,744.92 | 27028 |
| 6/1/2016 | 38650 | $1,272.50 | 27086 |
| 7/26/2016 | 39795 | $7,211.50 | 072616 |
| 11/9/2016 | 10054 | $18,196.99 | 27139 |
| 11/9/2016 | 10054 | $6,803.01 | 27140 |
| 12/9/2016 | 9973 | $24,701.86 | 27185 |
| 12/9/2016 | 9973 | $298.14 | 27030 |
| 1/10/2017 | 10156 | $10,000.00 | 27186 |
| 3/17/2017 | 10920 | $5,000.00 | 27186 |
| 4/27/2017 | 539 | $20,000.00 | 27646 |
| 5/26/2017 | 1071 | $6,315.00 | 27234 |
| 5/26/2017 | 1071 | $3,685.00 | 27646 |
| 5/31/2017 | 1091 | $9,385.00 | 27235 |
| 5/31/2017 | 1091 | $615.00 | 27646 |
| 7/7/2017 | 467 | $10,000.00 | 27233 |
| 9/1/2017 | 614 | $20,000.00 | 27233 |
| 9/26/2017 | 10583 | $4,495.29 | 26987 |
| 9/26/2017 | 39930 | $15,504.71 | 27087 |
| 11/8/2017 | 662 | $8,876.64 | 27287 |
| 11/8/2017 | 662 | $935.86 | 27233 |
| 11/8/2017 | 662 | $187.50 | 27232 |
| 11/8/2017 | 10656 | $10,000.00 | 27288 |
| 12/21/2017 | 39941 | $20,000.00 | 27444 |

| | |
|---|---|
| **Total Transfers** | **$989,894.92** |
| **Transfers Within 1 Year of Petition Date** | **$170,000.00** |

As with the original Transfers, the Trustee sought to avoid and recover these Newly

Identified Transfers under any and all of the following statutes that might be applicable:

**Count 1**: Actual Fraudulent Transfer – TEX. BUS. & COMM. CODE § 24.005(a)(1) through 11 U.S.C. §§ 541 and 544

**Count 2**: Constructive Fraudulent Transfer – TEX. BUS. & COMM. CODE § 24.005(a)(2) through 11 U.S.C. §§ 541 and 544

**Count 3**: Actual Fraudulent Transfer – 11 U.S.C. § 548(a)(1)(A)

**Count 4**: Constructive Fraudulent Transfer – 11 U.S.C. § 548(a)(1)(B)

**Count 5**: Preferences – 11 U.S.C. § 547

**Count 6:** Recovery of Avoided Transfers – 11 U.S.C. § 550

The following are the Newly Identified State Law Causes of Action:

> **Count 7:** Money Had and Received / Unjust Enrichment (obtained by fraud, duress, or the taking of an undue advantage of Debtor)
>
> **Count 8:** Aiding and Abetting / Knowing Participation in Plummer's Breach of Fiduciary Duty to Debtor
>
> **Count 9:** Professional Negligence/Malpractice
>
> **Count 10:** Negligent Retention/Supervision

The Trustee stated that:

> At the time of filing his Original Complaint, Trustee's investigation to uncover potential claims against Krage & Janvey related to Krage & Janvey's representation of Debtor was in its infancy. This Amended Complaint is a result of the development of that investigation, including documents that were obtained by Trustee in the course of informal discovery, such as Debtor's hard copy files from Krage & Janvey.
>
> \*\*\*
>
> In effect, Krage & Janvey operated like an outside general counsel for Plummer and the Ventures, handling a constant mix of litigation, regulatory matters, and business matters—basically anything and everything Plummer wanted Krage & Janvey to do. This included advising Plummer on new offerings in the Ventures and reviewing and revising offering documents. However, no matter what Krage & Janvey did, it always prioritized Plummer's individual interests in order to help Plummer achieve his "long-term objectives."[8]

The Trustee also, for the first time in the First Amended Complaint, refers to the Defendant as an "insider."[9]

The Trustee states that "Debtor has suffered losses in the millions that were proximately caused by Krage & Janvey 's wrongful conduct described herein." The Trustee also seeks punitive damages against the Defendant.

---

[8] *Id.* at ¶¶ 27 & 38.
[9] *Id.* at ¶¶ 109-110; 118; 126; 134; 141.

In summary, the Adversary Proceeding has morphed, in three-plus years, from a $472,158.42 avoidance action suit into a multi-million-dollar lawsuit, essentially seeking to hold the Debtor's former law firm accountable for representing a troublesome client—i.e., one they allegedly had reason to know was a fraudster.

*C. The Significance (Possibly) of Another Adversary Proceeding:  the Plummer Adversary Proceeding*

On the same day back in November 2019 that the Trustee initiated this Adversary Proceeding, he also initiated another adversary proceeding—this one against Plummer individually (the "Plummer Adversary"), Adv. No. 19-03237. In his original complaint in the Plummer Adversary (the "Plummer Complaint"), Plaintiff stated that:

(i)      an investigation by the State of Texas Securities Board had culminated in an order in January 2012 respecting the Debtor or its predecessor for use of false and misleading investment marketing materials [Plummer Complaint, ¶ 33],

(ii)     in July 2015, FINRA had commenced an investigation into Plummer and one of his entities concerning misconduct relating to the sale of oil and gas joint venture interests [Plummer Complaint, ¶ 40],

(iii)    in December 2016, a FINRA hearing panel issued a decision expelling a Plummer entity from FINRA and forbidding Plummer from associating with any FINRA member [Plummer Complaint, ¶ 41],

(iv)    the United States Securities and Exchange Commission had filed a complaint in June 2019, accusing Plummer and his entities of defrauding investors by misappropriating investor funds involving a "Salmon 2W" well and the "Texas 2H" project [Plummer Complaint, ¶ 49 and 51],

(v)     for the four years prior to the Petition Date, Debtor was insolvent, having negative equity for years 2014 through 2017, and was unable to pay creditors timely during that four-year period [Plummer Complaint, ¶ 63, 64, 66],

(vi)    Plummer, in his operation of the Debtor and oversight of matters relating to other Plummer Entities that impacted the Debtor, engaged in fraud and a course of action which led to significant losses to investors and creditors [Plummer Complaint, ¶ 72], and

(vii)   Plummer had used Debtor's funds to pay the operating expenses of other Plummer Entities [¶ 73].

Then, about six months later, on April 27, 2020, the Trustee filed an amended complaint in the Plummer Adversary (the "Amended Plummer Compliant"). In the Amended Plummer

Complaint, the Trustee **specifically mentioned Defendant K&J,** describing Plummer's "extravagant spending…on sporting events, travel, conferences, personal expenses such as college tuition, **and large amounts to a Dallas law firm for work which was for Plummer's personal benefit** [Amended Plummer Complaint, ¶ 3] (emphasis added). The Trustee stated therein that:

(i)     The law firm of K&J was paid in excess of $1.3 million during the four-year period prior to the Bankruptcy Case [Amended Plummer Complaint, ¶ 74].

(ii)    Based on a review of the proof of claim of K&J[10] and other information obtained from Debtor's books and records, it appears that K&J routinely provided legal services to Plummer and the Affiliates, and not Debtor. This use of Debtor funds to pay K&J for work unrelated to Debtor is a misappropriation of Debtor funds [Amended Plummer Complaint, ¶ 74].

(iii)   All amounts paid to K&J other than those related to Debtor's business and operations constitute an improper transfer of funds by Debtor. The Trustee does not have all of K&J's invoices, however it appears over $200,000 was paid by Debtor related to the personal defense of Plummer in the 2016 FINRA enforcement actions during the eight-month period from January 2016 to August 2016. Because the Trustee does not have the invoices from K&J for other periods, he reserves the right to assert a claim for additional amounts [Amended Plummer Complaint, ¶ 74].

(iv)    In connection with other amounts paid by Debtor, Debtor paid for a whole host of services, including legal services and advertising and management but it was not reimbursed by [other Plummer Entities] or the individual joint ventures. Debtor paid for the services of all the law firms that provided services to it and other entities [Amended Plummer Complaint, ¶ 94].

D.      *The Relevant Timeline for this Adversary Proceeding.*

As with many disputes, timelines can be significant.  In this Adversary Proceeding, it is especially true.  Set forth are some of the pivotal dates that impact the court's analysis:

**November 29, 2017:** the Bankruptcy Case was filed.

**December 12, 2017:**  Ad Hoc Committee of Trade Creditors filed an agreed motion to take Plummer's 2004 Examination (Agreed Order entered December 14, 2017, contemplating a December 19, 2017 examination).

---

[10] K&J timely filed a proof of claim in the Bankruptcy Case [Claim # 102] on February 6, 2018, in the amount of $682,643, with approximately 70 pages worth of attached invoices.

**December 28, 2017:**  UCC formally appointed (it hired same counsel as Ad Hoc Committee of Trade Creditors). BK Docs 68 & 82).

**January 11, 2019:**  UCC filed an emergency motion to appoint a Chapter 11 Trustee (citing conflicts of Plummer).  Debtor unopposed. BK Doc 80.

**January 19, 2018:**  Chapter 11 Trustee appointed (Searcy).

**July 27, 2018:**  Case converted to Chapter 7 (upon motion of Chapter 11 Trustee/Searcy). Searcy stayed on in the capacity of Chapter 7 Trustee.

**September 21, 2018:**  Trustee filed application to employ same counsel that represented UCC as special counsel to pursue claims. Engagement letter attached is dated **August 17, 2018**. Order approving dated **November 2, 2018**. BK Docs 236 & 248.

**January 16, 2019:**  Searcy unexpectedly died.

**January 23, 2019:**  Plaintiff was appointed as successor trustee.

**September 18, 2019**:  Plaintiff moved to employ same counsel that had represented UCC and Searcy.[11]

**November 27, 2019:**  this Adversary Proceeding was filed (just shy of the two-year anniversary of the Petition Date).  The Plaintiff filed this Adversary Proceeding using himself as counsel.  On this same date, the Plummer Adversary was also filed, using the special counsel that had represented the UCC and Searcy.[12]

**November 29, 2019**:  Deadline under section 546(a) for avoidance actions here; deadline under section 108(a) for state law causes of action here (unless state law provides a later deadline).

---

[11] The individual attorney (the court will used initials "RU") had moved to a different firm by this point in time.

[12] Again, the individual attorney was RU.

**December 2, 2019**: Court's original scheduling order was issued, setting trial docket call for June 8, 2020.[13] BK Doc. 3.

**April 27, 2020**:   The Plummer Adversary (which had been filed the same day as this Adversary Proceeding) was amended to mention K&J's role in representing Plummer Entities. Again, same counsel that originally represented UCC and Searcy was representing Plaintiff.

**October 15, 2020:**   Plaintiff filed an application to employ a different special counsel to represent him in connection with this Adversary Proceeding ("New Special Counsel").   Court granted this application on November 18, 2020.  BK Docs 350 & 360.

**June of 2021:** Plaintiff conducted an in-person review of Defendant's hardcopy books and records for the first time; this examination of the hard-copy documents had been repeatedly delayed, purportedly due to the COVID pandemic.

**January 31, 2022:** the parties agreed to toll any limitations that had not yet expired.

**February 2022:**   Plaintiff and Defendant filed a series of agreed motions to abate the Adversary Proceeding in order to further explore out-of-court resolution [Doc 18, 21, 24].

**August 31, 2022:**  Expiration of tolling agreement.  [Doc 25]

**October 12, 2022**: Plaintiff, through New Special Counsel, filed his Trustee's Motion for Leave to Amend [Doc 27], seeking leave to file the First Amended Complaint. Defendant vehemently objected.   This court granted leave to amend, citing Rule 15's liberal approach to allowing pleading amendments, in an order entered December 6, 2022 [Doc 39].

**December 9, 2022**: Plaintiff filed Trustee's First Amended Complaint, through New Special Counsel.

---

[13] The Scheduling Order was subsequently amended three times due largely to the COVID-19 pandemic, ultimately continuing trial docket call to January 2022. Beginning in February 2022, the court (at the request of the parties) entered three orders abating this Adversary Proceeding to August 31, 2022. *See* Doc 8, 12, 15, 19, 20, 22 and 25.

Pursuant to Fed R. Civ. Proc. 12(b)(6), the Defendant now moves for dismissal of (i) the Newly Identified Transfer Claims; and (ii) the Newly Identified State Law Causes of Action, arguing failure to state claims upon which relief can be granted. In sum, Defendant contends that: (a) the causes of action based on the Newly Identified Transfers are time-barred by the terms of section 546(a) of the Bankruptcy Code, and, in the case of TUFTA claims, also due to the expiration of TUFTA's statute of repose, TEX. BUS. & COMM. CODE § 24.010; and (b) the Newly Identified State Law Causes of Action are time-barred based on the Texas state law limitations applicable to each of them.

Plaintiff argues that the avoidance actions relating to the Newly Identified Transfers in the First Amended Complaint relate back to the filing of the Original Complaint because the claims in the First Amended Complaint arise out of the same operative facts as the claims in the Original Complaint, namely Defendant's representation of the Debtor, Plummer, and the Ventures. And, with regard to the Newly Identified State Law Causes of Action, Plaintiff argues that the discovery rule and equitable tolling principles should apply to any applicable limitations period (citing *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998) (holding the discovery rule shifts the date of the "legal injury" from the time the wrongful action occurred to the time when "[plaintiff] knew or, exercising reasonable diligence, should have known of the facts giving rise to a cause of action")).

Plaintiff represents that he was not able to discover the facts giving rise to the four state law claims until June 2021, when Plaintiff was able to review Debtor's hard copy legal files that were solely maintained at K&J's offices ("Due to the pandemic and Krage & Janvey's unwillingness to provide electronic copies of the legal files, Plaintiff did not discover (and could not discover) the state law claims until June 2021.")  First Amended Complaint, at ¶ 202.

15

### III.    Legal Analysis and Discussion

*A.    Jurisdiction, Venue, Constitutional Authority, and Applicable Procedural Rule*

Bankruptcy subject matter jurisdiction exists in this Adversary Proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B), (C), (F), (H) and (O); thus, the court has statutory authority to enter final orders and judgments. In addition, venue is proper in this court pursuant to 28 U.S.C. §§ 1408 and 1409. Finally, Defendant filed a proof of claim in the main Bankruptcy Case, in the amount of $682,643.31, for unpaid legal services dating back to year 2016 [Claim # 102]—this removes any doubt regarding the bankruptcy court's constitutional authority to enter final orders and judgments in this Adversary Proceeding.

Rule 12(b)(6) mandates dismissal of any complaint that fails "to state a claim upon which relief can be granted." Untimely complaints that are barred as a matter of law are properly subject to dismissal under Federal Rule 12(b)(6). *Jones v. Bock,* 549 U.S. 199, 215 (2007) (finding dismissal appropriate under Federal Rule 12(b)(6) if relief is barred by the applicable statute of limitations).

In order to determine whether or not avoidance of the ***Newly Identified Transfers*** is time-barred, we first look to see whether section 546(a) of the Bankruptcy Code and/or TUFTA's statute of repose preclude avoidance at this late juncture.  We consider, in the process, whether either the "relation back" concept in Fed. R. Civ. Proc. 15(c) or perhaps a "discovery rule" save the Trustee from what otherwise might be a timeliness problem.  In order to determine whether or not the ***Newly Identified State Law Causes of Action*** are time-barred, we look to whether section 108(a) and the applicable state law statute of limitations preclude assertion of them—and, once again, we

consider in the process whether either the "relation back" concept in Fed. R. Civ. Proc. 15(c) or a "discovery rule" save the Trustee from what otherwise might be a timeliness problem.

B. *Newly Identified Transfers*

### i.    Section 546(a)—Bankruptcy Code's Statute of Limitations for Avoidance Actions

Section 546(a) of the Bankruptcy Code, entitled "Limitations on avoiding powers," bars commencement of an action "under section 544, 545, 547, 548, or 553" of the Bankruptcy Code after (as applicable, here) the ***later*** of: (A) two years after entry of an order for relief (i.e., two years after the November 29, 2017 order for relief, which would be November 29, 2019); or (B) one year after the appointment or election of the first trustee if such appointment or election occurs before the expiration of the period specified in subparagraph (A)[14] (here, the first trustee was appointed on January 19, 2018—before November 29, 2019—so January 19, 2019 would be the operative date).    The computation here results in a deadline of **November 29, 2019** for commencing avoidance actions.

Section 546(a) is, of course, the Bankruptcy Code's statute of limitations for bringing avoidance actions (not to be confused with the reach-back periods that substantively define avoidable transfers—e.g., two years for fraudulent transfers under section 548; 90-days and one-year for section 547 preferences; and four years for fraudulent transfers under TUFTA).    Thus, as noted above, under a strict reading of section 546(a), Plaintiff was required to commence an action bringing all avoidance action claims, including those under TUFTA (via section 544), within two years following the Petition Date, i.e., by November 29, 2019. In the present case, Plaintiff filed his First Amended Complaint to assert the Newly Identified Transfers on December 9, 2022. As a result, Defendant argues—not surprisingly—that Plaintiff missed his deadline to assert these

---

[14] *See* 11 U.S.C. § 546(a)(1).

claims and, thus, the avoidance actions based on the Newly Identified Transfers are barred by section 546 of the Bankruptcy Code.

Plaintiff contends that under Fed. R. Civ. Proc. 15(c), the Newly Identified Transfers are **not** barred because they relate back to the date of the Original Complaint (i.e., November 27, 2019). Rule 15(c) provides the following with regard to relation-back of pleadings:

> (1) *When an Amendment Relates Back.* An amendment to a pleading relates back to the date of the original pleading when:
>
> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> > (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> >
> > (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.[15]

In support of his position, Plaintiff points to Judge Isgur's holding in *In re Uplift Rx., LLC*, in which the trustee sought leave to amend an original complaint to add fraudulent transfer causes of action based on thirteen newly identified transfers.[16] Judge Isgur held that the relation-back doctrine can apply to fraudulent transfer claims, and, if the additional transfer claims satisfy the relation-back requirements of Rule 15(c)(1)(B), the claims are not time-barred by 11 U.S.C. § 546(a):

---

[15] FRCP 15(c).
[16] *In re Uplift RX, LLC*, 625 B.R. 364, 375-376 (Bankr. S.D. Tex. 2021).

Claims that are the "natural offshoot" or part of the same "basic scheme" arise from the same "conduct, transaction, or occurrence" pleaded in the original complaint. New avoidance claims are generally treated as separate, distinct transactions that do not relate back under Rule 15(c). However, just as claims arising from the same "basic scheme" relate back, so too do newly pleaded avoidance claims that arise from the same "course of conduct" pleaded in the original complaint. Consequently, the Additional Transfer claims will relate back if: (1) the Amended Complaint alleges that the Additional Transfers were part of a course of conduct alleged in the Original Complaint; and (2) the Original Complaint notified the parties, against whom the Additional Transfer claims are asserted, that the Trustee could pursue avoidance of the Additional Transfers associated with the course of conduct alleged in the Original Complaint.[17]

This court agrees with this analysis. Sometimes newly added transfers claims will, indeed, "relate back" pursuant to Rule 15 and not be time barred by section 546, but sometimes they will not. One has to look to the allegations in the original complaint and determine if the newly identified transfers fit within the conduct described and notice given therein. It will not always be an easy analysis. Plaintiff argues that the transfers in the First Amended Complaint occurred during the same identified period of time (November 2013-November 2017), are the "natural offshoot" of the same "basic scheme" as alleged in the Original Complaint, and arose from the same "conduct, transaction or occurrence" (i.e., the ongoing provision of legal services in exchange for ongoing payments).

This court agrees that the Newly Identified Transfers relate back to the Original Complaint under Rule 15(c) and are, therefore, *not* barred by section 546(a). Here, the First Amended Complaint alleges additional enumerated transfers that were part of the same course of conduct alleged in the Original Complaint. A "course of conduct," upon which the relation back of avoidance claims may be predicated, has sometimes been held to refer to a scheme with a

---

[17] *Id.* at 376 (internal citations omitted).

fraudulent purpose.[18] The Original Complaint, while lean, does seem to adequately identify a "course of conduct" from which the Newly Identified Transfer claims arose, and K&J received notice of this course of conduct.[19] Further, the Original Complaint did signal the existence of an ongoing investigation focused on uncovering additional transfers linked to a common course of conduct. *See In re Bernard L. Madoff Inv. Sec. LLC,* 468 B.R. 620, 633 (Bankr. S.D.N.Y. 2012) (" [A]llegations in the Original Complaint ... gave reasonable notice that the Trustee was still uncovering additional transfers ....").

      **But this is not the end of the analysis**. Why?  Because some of the Newly Identified Transfers are targeted for avoidance pursuant to Bankruptcy Code section 548 (which has a two-year prepetition reach back period).[20] But others, of the Newly Identified Transfers, are targeted for avoidance under TUFTA (which has a four-year prepetition reach back). And, significantly, **TUFTA implicates a new timeliness wrinkle**. Essentially, one has to layer on top of the section 546/Rule 15 analysis certain important TUFTA provisions—i.e., TUFTA's so-called statute of repose—when it comes to analyzing the timeliness of attacking a transfer under TUFTA.

**ii.**      **TUFTA's Statute of Repose**

      As just noted, the Trustee seeks to avoid certain of the Newly Identified Transfers under not just section 548 (where applicable—in the event of a Transfer that occurred within two years before the Petition Date)—but also under TUFTA section 24.005(a)(1) (actual fraudulent

---

[18]*Id. See also Adelphia Recovery Trust v. Bank of America, N.A.,* 642 F. Supp.2d 292, 333-34 (S.D.N.Y. 2009) (finding that new fraudulent transfer claims related back because they were part of the same financial fraud scheme alleged in the original complaint).

[19] *See In re M. Fabrikant & Sons, Inc.,* 447 B.R. 170, 181 (Bankr. S.D.N.Y. 2011), *aff'd*, 480 B.R. 480 (S.D.N.Y. 2012), *aff'd*, 541 Fed. Appx. 55 (2d Cir. 2013) (quoting I*n re Chaus Sec. Litig.,* 801 F. Supp. 1257, 1264 (S.D.N.Y. 1992) ("The principal inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party by the general fact situation alleged in the original pleading." (internal quotation marks omitted)).

[20] This two-year prepetition reach-back under section 548(a)(1) (i.e., an element of the fraudulent transfer cause of action) should not be confused with the two-year post-petition deadline in section 546 (i.e., the statute of limitations for the post-petition bringing of avoidance actions).

transfers) or TUFTA section 24.005(a)(2) (constructive fraudulent transfers)—which would be the only avoidance tool here for Transfers that occurred between two years and four years before the Petition Date.  Herein lies the wrinkle for the Trustee:  section 24.010(a) of TUFTA provides that a cause of action with respect to a fraudulent transfer under section 24.005(a)(1) and (a)(2) is *extinguished* unless it is brought within four years after the transfer was made, or with regard to claims under TUFTA section 24.005(a)(1) [i.e., actual fraudulent transfers], within one year after the transfer was or could reasonably have been discovered by the claimant. The statute's exact wording is as follows:

> Sec. 24.010.  EXTINGUISHMENT OF CAUSE OF ACTION.  (a)  Except as provided by Subsection (b) of this section [not applicable here], a cause of action with respect to a fraudulent transfer or obligation under this chapter is extinguished unless action is brought:
>
> (1)   under Section 24.005(a)(1) of this code [i.e., actual fraudulent transfers], within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant;
>
> (2)   under Section 24.005(a)(2) or 24.006(a) of this code [constructive fraudulent transfers], within four years after the transfer was made or the obligation was incurred; or
>
> (3)   under Section 24.006(b) of this code [i.e., transfer to an insider for an antecedent debt, when debtor was insolvent and the insider had reason to know],[21] within one year after the transfer was made.

The Texas Supreme Court has stated that section 24.010 of TUFTA "is a statute of repose, rather than a statute of limitations." *Nathan v. Whittington*, 408 S.W.3d 870, 874 (Tex. 2013). Unlike a statute of limitations, a statute of repose not only "procedurally bar[s] an untimely claim,

---

[21] Section 24.006(b) is essentially TUFTA's preference statute.  The Trustee did not bring any cause of action under section 24.006(b).

it substantively 'extinguishes' the cause of action." *Id.*[22]   The United States Supreme Court has

explained the difference between a statute of limitations and statute of repose as follows:

> Although there is substantial overlap between the policies of the two types of statute, each has a distinct purpose and each is targeted at a different actor. Statutes of limitations require plaintiffs to pursue diligent prosecution of known claims. Statutes of limitations promote justice by preventing surprises through plaintiffs' revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. Statutes of repose also encourage plaintiffs to bring actions in a timely manner, and for many of the same reasons. But the rationale has a different emphasis. Statutes of repose effect a legislative judgment that a defendant should be free from liability after the legislatively determined period of time. Like a discharge in bankruptcy, a statute of repose can be said to provide a fresh start or freedom from liability. Indeed, the Double Jeopardy Clause has been described as "a statute of repose" because it in part embodies the idea that at some point a defendant should be able to put past events behind him.

*CTS Corp. v. Waldburger*, 573 U.S. 1, 8-9 (2014).

Bankruptcy courts and courts presiding over federal receiverships have repeatedly held that

TUFTA section 24.010(a) is a statute of repose.[23] So, to be clear, this is very significant. A statute

of repose is substantive law unlike a statute of limitations—which is merely procedural. "While

statutes of limitation are primarily instruments of public policy and of court management, statutes

of repose make the filing of suit within a specified time a substantive part of the plaintiff's cause

of action."[24]   Under Texas law, a statute of repose provides an absolute affirmative defense.[25] It is

not subject to being over-ridden by a procedural rule such as Rule 15; a relation-back doctrine

---

[22] *See also Taylor v. Trevino*, 569 F. Supp. 3d 414, 425 (N.D. Tex. 2021).

[23] *E.g., O'Cheskey v. CitiGroup Global Markets, Inc. (In re American Housing Foundation)*, 543 B.R. 245, 256-58 (Bankr. N.D. Tex. 2015); *Taylor*, 569 F.Supp.3d 414; *Litzler v. Cooper (In re Margaux Texas Ventures, Inc.)*, 545 B.R. 506, 526 (Bankr. N.D. Tex. 2014) (concurring that section 24.010 "operates as a statute of repose").

[24] *American Housing*, 543 B.R at 255.

[25] *Trevino*, 569 F.Supp.3d at 424-26; *Margaux Texas Ventures*, 545 B.R. at 526 (recognizing that statutes of repose operated to bar suit when time thereunder has expired); *Katchadurian v. NGP Energy Cap. Management, LLC (In re Northstar Offshore Group, LLC)*, 616 B.R. 695, 726-27 (Bankr. S.D. Tex. 2020) (TUFTA § 24.010 "provide[s] a fixed amount of time, after which point a party is free from potential liability"). *See also CTS Corp. v. Waldburger*, 573 U.S. at 8-9 (recognizing that statute of repose bars suits after specified time from date of last culpable act, regardless of resulting injury or accrual of action, and is a cutoff, i.e., an absolute bar, on defendant's liability).

under either federal or state law cannot be invoked to save a late-filed and, thus, extinguishes claim. [26]    And statutes of repose are not subject to equitable tolling.[27] The only thing akin to a "discovery rule" that might apply with regard to TUFTA fraudulent transfer claims is in the last sentence of section 24.010(a)(1)— allowing pursuit of **actual** fraudulent transfers more than four years after they occurred "within one year after the transfer or obligation was or could reasonably have been discovered by the claimant."[28]

While Plaintiff admits that TUFTA section 24.010(a) is a statute of repose (and substantive state law) that generally serves to bar avoidance claims that are not brought within four years of the transfer, he points out that the Fifth Circuit recognizes that "[f]ederal law will override state law under the Supremacy Clause when . . . state law conflicts with federal law or its purposes."[29] Plaintiff argues that, because section 544(b)(1) is a federally created cause of action authorizing a trustee to avoid any transfer of an interest of the debtor in property that is voidable under applicable law (i.e. state law), a court—when determining whether a newly added claim under section 544(b) is timely made under section 546(a)—should apply the relation back test set forth in Rule 15(c). Thus, Plaintiff contends that § 544(b) effectively preempts application of Texas law, allowing the added claims to relate back to the Original Complaint. Plaintiff does not have it quite right here. Yes, it is true and well established that section 544(b), as a strong-arm power, allows a trustee to stand in the shoes of an unsecured creditor who was in existence when the case was filed, who

---

[26] *American Housing*, 543 B.R. at 258.

[27] *Trevino*, 569 F. Supp.3d at 425.

[28] As Judge Robert Jones noted in *American Housing*, the notion of a "discovery rule" in the context of a statute of repose seems oxymoronic, but nevertheless a one-year discovery rule seems to exist under TUFTA for actual fraudulent transfers.

[29] *Frank v. Delta Airlines Inc.*, 314 F.3d 195, 197 (5th Cir. 2002); *see also H.S. Stanley, Jr. v. Trinchard*, 579 F.3d 515, 519 (5th Cir. 2009) (holding bankruptcy law takes precedence over state laws pursuant to the Supremacy Clause of the U.S. Constitution).

could have avoided transfers under applicable state law.[30] And yes, it is true that section 546 of

the Bankruptcy Code essentially gives a trustee (in most contexts) a two-year window after the

case is filed to assert those strong-arm powers (thus, overriding a statute of repose for two years).

But a trustee (despite this federally created ability to step into the shoes of creditors and despite

this federally created two-year statute of limitations) is generally subject to ***any*** defenses available

under either federal or applicable state law that could be lodged against the unsecured creditor.[31]

With respect to claims asserted under TUFTA, these defenses include the statute of repose under

TUFTA section 24.010.[32]

How is this all sorted out?  Courts have typically held that the effect of any "relation back"

provided by Rule 15(c), a federal procedural pleading rule, is ***not*** to revive claims that have been

extinguished. Because Rule 15 is a ***procedural*** rule, it cannot abrogate a statute of repose such as

section 24.010(a) of TUFTA when the time frame under the statute has expired.[33]  A federal

---

[30] *Genter v. Reed (In re Genter)*, 2020 WL 3129637, at *2 (N.D. Tex. June 12, 2020) (trustee steps into shoes of creditor who may avoid transfer under applicable state law); *ASARCO, LLC v. Americas Mining Corp.*, 404 B.R. 150, 156 (N.D. Tex. 2009) ("Trustees ... use § 544(b) as a conduit to assert state-law-based fraudulent-transfer claims in bankruptcy."); *Thomas v. Hughes*, 2017 WL 8161010 at *4-5 (W.D. Tex., April 24, 2017).

[31] *Matter of IFS Financial Corp.*, 669 F.3d 255, 261 (5th Cir. 2012) ("The trustee's successor rights arise under federal law, but the extent of those rights depends entirely on applicable state law."), citing *Matter of Moore*, 608 F.3d 253, 260 (5th Cir. 2010); *Moser, as Plan Trustee of the Trust Under the Amended Joint Plan of Liquidation of Tango Transport, LLC, et al., v. Navistar International Corporation*, 2019 WL 13212421 (E.D. Tex., Jan. 25, 2019) ("When asserting a state-law fraudulent transfer claim under § 544(b)(1), both the relevant federal and state statutes of limitations apply."); *Smith v. Am. Founders Fin., Corp.*, 365 B.R. 647, 675 (S.D. Tex. 2007) ("The trustee is subject to both federal bankruptcy-law limitations periods and the state-law limitations periods applicable to fraudulent-avoidance actions.").

[32] *Compare H.S. Stanley, Jr.*, 579 F.3d at 515.

[33] *See Sjunde AP-Fonden*, 417 F.Supp.3d 379, 391-92 (S.D.N.Y. 2019) (concluding that Rule 15(c) could not save unasserted claims otherwise barred by statute of repose); *In re Lehman Bros. Securities and ERISA Litigation*, 800 F.Supp.2d 477, 483 (S.D.N.Y. 2011) (Rule 15(c) does not apply to statutes of repose); *Hogan v. Pilgrim's Pride Corp.*, 2021 WL 1534602 at *7-8 (D. Colo., April 16, 2021) (rejecting application of Rule 15(c) since it would violate the Rules Enabling Act and abridge defendant's substantive rights under statute of repose); *Barilli v. Sky Solar Holdings Ltd.*, 389 F.Supp.3d 232, 263-64 (S.D.N.Y. 2019) (same); *RTC v. Olson*, 768 F.Supp. 283, 285 (D.Ariz. 1991) (Rule 15(c) does not apply to deadline established by statute of repose); *JRS Partners, GP v. Leech Tishman Fuscaldo & Lampl, LLC*, 2022 WL 2793340 at *8-9 (M.D. Tenn, July 14, 2022) (rejecting application of 15(c) to save claims barred by statute of repose as it would violate the Rules Enabling Act); *Boyce v. AIM Management, Inc.*, 2007 WL 7117575 (S.D. Tex., 2017) (Rules Enabling Act prevented use of Rule 15(c) to defeat statutory limit on damage recovery).

procedural rule cannot "revive," "save," or "resurrect" claims already extinguished by a state's substantive law, i.e., TUFTA's statute of repose.[34] To be clear, most of the cases that have reached this result fall back on the well-known truism (embodied in a federal statute) that substantive laws trump federal procedural rules, which have no power to abridge, enlarge, or modify any substantive right. 28 U.S.C. § 2072(b).

In summary, Plaintiff's argument that section 544(b) takes precedence is an argument that the court fails to find persuasive. Section 546 essentially gives a bankruptcy trustee a two-year extension on bringing a TUFTA fraudulent transfer claim that might otherwise extinguish under substantive state law—period.  That's it.  Beyond that, a trustee may not use the procedural tool of Rule 15 to preserve or revive a claim that substantive state law dictates is extinguished. Moreover, the tolling agreement here (entered into in January of 2022) and abatements of the Adversary Proceeding (February 2022-August 2022) were of no consequence.  As noted earlier, statutes of repose are not subject to equitable tolling.[35]

Moreover, even accepting Trustee at his word that he could not have "discovered" some of the Newly Identified Transfers until June 2021 when he for the first time looked at hard copy records of Defendant K&J (see timeline set forth earlier), the Plaintiff did not move to amend his Original Complaint to add the Newly Identified Transfers until October 2022.  And the only thing akin to a "discovery rule" that might apply with regard to TUFTA fraudulent transfer claims is in the last sentence of section 24.010(a)(1)— allowing pursuit of actual fraudulent transfers more than four years after they occurred "within one year after the transfer or obligation was or could reasonably have been discovered by the claimant."  The Plaintiff is simply out-of-luck in being able to assert TUFTA causes of action as to the Newly Identified Transfers.

---

[34] *Id*.
[35] *Trevino*, 569 F. Supp.3d at 425.

### iii.    Section 548

However, Plaintiff is not out-of-luck with regard to the Newly Identified Transfers in the
First Amended Complaint that occurred between two and four years before the Petition Date that
he seeks to avoid under section 548 of the Bankruptcy Code.

Section 548(a)(1)(A), of course, allows a trustee to avoid a transfer when a debtor "made
such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity
to which the debtor was or became, on or after the date that such transfer was made or such
obligation was incurred, indebted." And section 548(a)(1)(B), of course, allows (in pertinent
part) a trustee to avoid a transfer for which the debtor received less than reasonably equivalent
value and was insolvent or rendered insolvent thereby.   Such transfers can be avoided if they
were "made or incurred on or within 2 years before the date of the filing of the petition."

Here, the Trustee added certain Newly Identified Transfers which were dated between
November 29, 2015 (two years prior to the bankruptcy filing) and the Petition Date (the ones
added are highlighted below):

| 12/30/2015 | 7915 | $9,975.02 | 26927 |
| 12/30/2015 | 7915 | $24.98 | 26987 |
| 3/10/2016 | 37050 | $16,970.77 | 28989 |
| 3/10/2016 | 37050 | $16,912.50 | 26988 |
| 3/10/2016 | 37050 | $16,116.73 | 26990 |
| 4/15/2016 | 37593 | $39,736.93 | 27028 |
| 4/15/2016 | 37593 | $10,263.07 | 26990 |
| 6/1/2016 | 38650 | $9,925.08 | 27087 |
| 6/1/2016 | 38650 | $7,135.00 | 27029 |
| 6/1/2016 | 38650 | $4,922.50 | 27085 |
| 6/1/2016 | 38650 | $1,744.92 | 27028 |
| 6/1/2016 | 38650 | $1,272.50 | 27086 |
| 7/26/2016 | 39795 | $7,211.50 | 072616 |
| 11/9/2016 | 10054 | $18,196.99 | 27139 |
| 11/9/2016 | 10054 | $6,803.01 | 27140 |
| 12/9/2016 | 9973 | $24,701.86 | 27185 |
| 12/9/2016 | 9973 | $298.14 | 27030 |
| 1/10/2017 | 10156 | $10,000.00 | 27186 |
| 3/17/2017 | 10920 | $5,000.00 | 27186 |
| 4/27/2017 | 539 | $20,000.00 | 27646 |
| 5/26/2017 | 1071 | $6,315.00 | 27234 |
| 5/26/2017 | 1071 | $3,685.00 | 27646 |
| 5/31/2017 | 1091 | $9,385.00 | 27235 |
| 5/31/2017 | 1091 | $615.00 | 27646 |
| 7/7/2017 | 467 | $10,000.00 | 27233 |
| 9/1/2017 | 614 | $20,000.00 | 27233 |
| 9/26/2017 | 10583 | $4,495.29 | 26987 |
| 9/26/2017 | 39930 | $15,504.71 | 27087 |
| 11/8/2017 | 662 | $8,876.64 | 27287 |
| 11/8/2017 | 662 | $935.86 | 27233 |
| 11/8/2017 | 662 | $187.50 | 27232 |
| 11/8/2017 | 10656 | $10,000.00 | 27288 |

Obviously, these Newly Identified Transfers do not have the overlay of TUFTA's statute of repose burdening them—**to the extent the Trustee seeks to avoid them under section 548**. There is nothing like a statute of repose embodied in sections 546 and 548. Because the court has already concluded that Rule 15's "relation-back" concept would generally apply here with regard to the Newly Identified Transfers—solely with regard to the section 546 statute of limitations— the Trustee may go forward in his effort to prove up fraudulent transfers under section 548 with regard to the Newly Identified Transfers that occurred between two and four years before the Petition Date.

*A. Newly Identified State Law Causes of Action*

   **i.    Legal Injury Rule**

Defendant additionally has moved for dismissal of Plaintiff's four Newly Identified State Law Causes of Action for negligence/professional malpractice; negligent supervision/retention;

money had and received/unjust enrichment; and aiding and abetting breach of fiduciary duty—
stating that it is undeniable that these causes of action are barred by applicable state statutes of
limitations. Under applicable Texas law, which no party disputes would apply here, the TEX. CIV.
PRAC. & REMS. CODE, at section 16.003 (and as further interpreted by case law) provides for a *two*-
year statute of limitations on all but one of the Newly Identified State Law Causes of Action (i.e.,
all but the aiding and abetting breach of fiduciary duty claim, which pursuant to the TEX. CIV.
PRAC. & REMS. CODE, at section 16.004(a)(5) (and as further interpreted by case law) is governed
by a *four*-year statute of limitations).[36] Notably, there is no statute of repose implicated here.
Additionally, while the parties have not discussed it, section 108(a) of the Bankruptcy Code is
meaningful in this analysis.  Section 108(a) operates with regard to a trustee's assertion of state
law causes of action in a manner similar to how section 546(a) operates with regard to avoidance
actions.  Section 108(a) essentially gives a trustee a new two-year window that a debtor would not
have had:  It extends any statute of limitation for commencing an action by the debtor for two
years after the date of the order for relief, unless it would expire later under state law.[37]

A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from
the plaintiff's pleadings that the action is barred, and the pleadings fail to raise some basis for
tolling.[38]

---

[36] Under applicable Texas law the applicable statutes of limitations are as follows: **legal malpractice**: two years, TEX. CIV. PRAC. & REM. CODE § 16.003(a), *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154, 156 (Tex. 1991); **negligent supervision or retention**: two years, *Alcan Aluminum Corp. v. BASF Corp.*, 133 F.Supp.2d 482, 505 (N.D.Tex. 2001) (negligence claims subject to two-year statute of limitations); **money had and received/unjust enrichment**: two years, *Terra Nova Sciences, LLC v. JOA Oil & Gas Houston, LLC*, 738 F.Supp.2d 689, 697-98 (S.D.Tex. 2010), *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 885 (Tex. 1998); **aiding and abetting breach of fiduciary duty**: four years, TEX. CIV. PRAC. & REM.CODE ANN. §16.004(a)(5).
[37] 11 U.S.C. § 108(a) (Under section 108(a), if applicable nonbankruptcy law "fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of – (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or (2) two years after the order for relief.").
[38] *USPPS, Ltd. v. Avery Dennison Corp.*, 326 F. App'x 842, 846 (5th Cir. 2009).

So, section 108(a) would dictate that the Trustee had two years after the order for relief to bring these Newly Identified State Law Causes of Action, unless state law would dictate a longer time. As noted earlier, state law—here TEX. CIV. PRAC. & REMS. CODE sections 16.003 and 16.004—speak in terms of bringing a cause of action within two or four years "after the day the cause of action accrues." While in some instances, the date of accrual is defined in Texas statutes (for example, for a wrongful death cause of action, the date of accrual is defined as accruing "on the death of the injured person"; see TEX. CIV. PRAC. & REMS. CODE at sections 16.003(b)), in most situation the definition of "accrual" is not prescribed in statute and, thus, has been left to the courts. The Texas courts have generally held that a cause of action "accrues" when a wrongful act causes some "legal injury," even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred. As it is sometimes phrased, a cause of action is deemed to accrue, and the statute of limitations begins to run, upon the occurrence of the underlying facts that authorize a claimant to seek a judicial remedy.[39] This is what is sometimes called the "legal injury" rule, and it applies unless somehow the "discovery rule" is deemed to apply (as discussed below).[40] Under the "legal injury" rule, a cause of action accrues when the tort is completed—that is, when the act is committed and the damage is suffered.[41] To be clear, under this rule, the date of the legal injury is **not** the time it is discovered or the date when the extent of actual damage is fully ascertained.[42]

---

[39] *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 514 (Tex. 1998); *SV v. RV*, 933 S.W.2d 1, 4 (Tex. 1996); *Trinity River Auth. V. URS Consultants, Inc.*, 889 S.W.2d 259, 262 (Tex. 1994).

[40] *Tate v. Goins, Underkofler, Crawford & Langdon*, 24 S.W.3d 627, 636 (Tex. App.—Dallas 2000, pet. denied).

[41] *Id. See also Cantu v. Schmidt (In re Cantu)*, 784 F.3d. 253, 260 (5th Cir. 2015), stating "as a rule ... a cause of action accrues when a wrongful act causes *some* legal injury, even if the fact of injury is not discovered until later, and *even if all resulting damages have not yet occurred*" (emphasis added) (citing *Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex.1997), quoting *S.V. v. R.V.,* 933 S.W.2d 1, 4 (Tex.1996)); *State Farm Life Ins. Co. v. Swift (In re Swift)*, 129 F.3d 792, 795-96 (5th Cir.1997) ("But, it is not necessary to know immediately the type and extent of [the] injury. All that is needed is a specific and concrete risk of harm to the party's interest.").

[42] *Id*.

Here, interestingly, the Plaintiff takes the position that the alleged injury is ***Debtor's insolvency and resulting bankruptcy***, which Plaintiff specifically argues was caused in part by Defendant's alleged conduct (its provision of legal services to Debtor).[43] Plaintiff alleges that the injury suffered by Debtor at the hands of Plummer, and with the help of Defendant, includes "causing the bankruptcy of Debtor" and that Defendant's conduct allegedly "resulted in Debtor's Bankruptcy."[44] This injury would have occurred during the employment of Defendant by Debtor, which terminated on the Petition Date (November 29, 2017).

Accepting all of the allegations in the First Amended Complaint as true, even the longest period of limitations (four years—the one applicable to aiding and abetting breach of fiduciary duty) would have expired, at the latest, under state law, on November 29, 2021 (i.e., four years after the Petition Date). Notably, this was a full two months before the tolling agreement came into effect on January 31, 2022—thus, the tolling agreement preserved nothing. Plaintiff filed the Newly Identified State Law Causes of Action in his First Amended Complaint on December 9, 2022. Thus, these claims would be untimely under the "legal injury" rule, as they were added well past the deadlines set by the applicable statute of limitations.

### ii.    Application of the Discovery Rule

Plaintiff responds by arguing that under the "discovery rule," the Newly Identified State Law Causes of Action are not time-barred. The "discovery rule" is an exception to the general "legal injury" rule described above that has evolved in Texas jurisprudence. When it applies, a cause of action does not accrue until the plaintiff "knew or in the exercise of reasonable diligence

---

[43] Doc. 41, p. 3 ¶3, n.4; p.7 ¶6.
[44] Doc. 41, p.49 ¶159; Doc. 41 at 53, p.51 ¶166.

should have known of the ***wrongful act and resulting injury***."[45] The discovery rule is a murky

rule to apply. As the Texas Supreme Court noted in the *HECI Exploration* case:

> Historically, the reasoning that supported this Court's decisions to apply the
> discovery rule in particular cases was "diverse, somewhat inconsistent, and often
> overly broad." *S.V. v. R.V.*, 933 S.W.2d 1, 5–6 (Tex.1996). We attempted to bring
> predictability and consistency to our jurisprudence in this area in *Altai*, 918 S.W.2d
> at 455–56, and *S.V. v. R.V.*, 933 S.W.2d at 5–6. In those decisions, we articulated
> two unifying principles that generally apply in discovery rule cases. They are that
> ***the nature of the injury must be inherently undiscoverable and that the injury***
> ***itself must be objectively verifiable***.[46]

Here, Plaintiff argues that the discovery rule applies on a categorical basis to the Newly

Identified State Law Causes of Action.[47] Plaintiff notes that the Texas Supreme Court has

recognized that, when a fiduciary relationship exists (including an ***attorney-client relationship***)

the discovery rule applies.[48] This is because a person to whom a fiduciary duty is owed is either

unable to inquire into the fiduciary's actions or unaware of the need to do so.[49] As a result, Texas

courts have held that the discovery rule categorically applies to: (1) claims in which a fiduciary

relationship exists[50]; (2) claims for professional negligence[51] and (3) claims for money had and

---

[45] *Janvey v. Suarez*, 978 F. Supp. 2d 685, 708 (N.D. Tex. 2013) (emphasis added); *Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 834 (Tex. 2018) (quoting *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996)); *Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex. 1997); *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998) (holding the discovery rule shifts the date of the "legal injury" from the time the wrongful action occurred to the time when "[plaintiff] knew or, exercising reasonable diligence, should have known of the facts giving rise to a cause of action").

[46] *HECI Exploration,* 982 S.W.2d at 886 (emphasis added) (citing *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex.1996); *S.V. v. R.V.*, 933 S.W.2d at 6).

[47] *HECI Exploration*, 982 S.W.2d at 886.

[48] *See, e.g., Altai, Inc.*, 918 S.W.2d at 456; *S.V. v. R.V.*, 933 S.W.2d at 8; *Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex.1988) (holding that fiduciary duty justified the discovery rule).

[49] *S.V. v. R.V.*, 933 S.W.2d at 8.

[50] *See Willis v. Maverick*, 760 S.W.2d at 645 (holding that fiduciary duty justified the discovery rule); *Slay v. Burnett Trust*, 143 Tex. 621, 187 S.W.2d 377, 394 (Tex.1945) (holding in suit by trust beneficiary against trustee that running of limitations was deferred until the beneficiary knew of the acts of the trustee).

[51] *Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 120–21 (Tex. 2001) (Acknowledging that "the discovery rule applies to legal-malpractice cases, so that in such cases, limitations does not begin to run until the client discovers or should have discovered through the exercise of reasonable care and diligence the facts establishing the elements of a cause of action.") (citing *Willis v. Maverick*, 760 S.W.2d at 644).

received.[52] As Defendant was Debtor's attorney during the time period in which these claims arose, Defendant and Debtor had a fiduciary relationship and, Trustee argues, the discovery rule applies.

Plaintiff elaborates that he could not have learned of Defendant's alleged participation in a breach of fiduciary duty to Debtor or Defendant's alleged professional negligence ***until Plaintiff was able to review the legal files in person***. As previously mentioned, Plaintiff represents that he was unable to review the legal files possessed by Defendant in person until June of 2021, due to the COVID pandemic. Given this, he contends that the Newly Identified State Law Causes of Action set forth in his First Amended Complaint should not be dismissed as time barred. They were brought approximately 18 months (in December 2022) after he could have discovered "in the exercise of reasonable diligence . . . the ***wrongful act and resulting injury,***"[53] and the facts regarding ***Defendant's*** knowing participation in Plummer's breach of fiduciary duty or professional negligence.

For purposes of the pending Rule 12(b)(6) motion, whether the discovery rule applies to the Newly Identified State Law Causes of Action is not at issue, as the Defendant ***assumes*** that the discovery rule applies to the causes of action. Here, the issue is whether the Newly Asserted State Law Causes of Action are barred by limitations ***even assuming the discovery rule applies***.[54] To be clear, Plaintiff asserts that "discovery" did not occur until Plaintiff eventually reviewed the Debtor's legal files in June 2021.

The Trustee's position on when/how the discovery rule operated here is problematic.  As noted earlier, the Texas Supreme Court has stated that the "two unifying principles that generally

---

[52] *Taylor v. Trevino*, 569 F. Supp. 3d at 443 (discovery rule applied to money had and received claim).
[53] *Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d at 834 (quoting *S.V. v. R.V.*, 933 S.W.2d at 4); *Murphy v. Campbell*, 964 S.W.2d at 270.
[54] *Irma Blas v. Rosen*, 2019 WL 5199284 (W.D. Tex. July 16, 2019) (burden on motion to dismiss is either proving the discovery rule does not apply or proving that the statute of limitations applies in spite of the discovery rule).

apply in discovery rule cases" are "that the nature of the injury must be inherently undiscoverable and that the injury itself must be objectively verifiable."[55]   As noted earlier, interestingly, the Plaintiff takes the position that the "legal injury" was the bankruptcy filing.  Obviously, this was not "inherently undiscoverable."  And "[o]nce a claimant learns of a wrongful injury, the statute of limitations begins to run *even if the claimant does not yet know 'the specific cause of the injury; the party responsible for it; the full extent of it; or the chances of avoiding it* (emphasis added).'"[56]   Thus, one possible conclusion here is that the discovery rule operates such that the statute of limitations for the four Newly Identified State Law Causes of Action started to run on the Petition Date (i.e., the date of the "legal injury"—which Plaintiff says was the bankruptcy filing).  This is potentially a logical result since it would seem to be compatible with section 108(a)—which generally starts the clock running for bringing state law causes of action at the date of the order for relief—unless state law provides for a longer time.  But we have to explore fully here whether state law (Texas jurisprudence) provides for a longer time.

In this regard, one might reasonably wonder if it is appropriate to use the "Petition Date" for purposes of starting the clock under the Texas discovery rule when the Plaintiff was not even appointed in the case yet (he was not appointed for another 14 months).  Assuming it is not appropriate, then what date should be used?  Turning, again, to language of the Texas Supreme Court, it has stated that "[d]iscovery occurs when a plaintiff has knowledge of such facts, conditions, or circumstances as would cause a reasonably prudent person to make an inquiry that

---

[55] *HECI Exploration,* 982 S.W.2d at 886 (emphasis added) (citing *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex.1996); *S.V. v. R.V.*, 933 S.W.2d at 6).
[56] *CellTex Site Servs. v. Kreager Law Firm*, No. 04-12-00249-CV, 2012 WL 6720663, at *5-6 (Tex. App.—San Antonio Dec. 28, 2012, pet. denied) (mem. op.) (citing *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 207 (Tex. 2011) (quoting *PPG Indus., Inc. v. JMB/Houston Ctrs. Partners, Ltd. P'ship*, 146 S.W.3d 79, 93–94 (Tex. 2004)).

would lead to discovery of the cause of action."[57] It is clear from the record that Plaintiff had knowledge of facts, conditions, or circumstances as would cause a reasonably prudent person to make an inquiry that would lead to discovery of the cause of action ***long before*** any review of legal filed in June 2021.

First, Plaintiff was appointed the successor trustee in the Bankruptcy Case on ***January 23, 2019***—a full ten months before the he filed this Adversary Proceeding (on ***November 27, 2019***) and approximately 14 months before the COVID pandemic was recognized in the United States (in March 2020). Notably, the Plaintiff/Trustee hired the same special counsel that had represented: (a) an ad hoc committee of trade creditors at the very beginning of the Bankruptcy Case; (b) then the UCC (which took Rule 2004 discovery of Plummer and then immediately moved for a Chapter 11 trustee); and (c) then the first trustee, Searcy. Plaintiff had counsel that was literally involved gathering information from the very beginning of the Bankruptcy Case.   And Plaintiff acknowledged in the First Amended Complaint that the investigation of the potential claims against Defendant was ongoing at the time of the filing of this Adversary Proceeding (i.e., on ***November 27, 2019)***:

> At the time of filing his Original Complaint, ***Trustee's investigation to uncover potential claims against Krage & Janvey related to Krage & Janvey's representation of Debtor was in its infancy*** (emphasis added). This Amended Complaint is a result of the development of that investigation, including documents that were obtained by Trustee in the course of informal discovery, such as Debtor's hard copy files from Krage & Janvey.[58]

Thus, in the Original Complaint itself, Plaintiff acknowledged that he ***knew*** of potential claims to hold K&J liable (for the "legal injury" of bankruptcy) at least by November 27, 2019, and was, in fact, investigating Defendant as a potentially responsible party.

---

[57] *Estate of Jobe v. Berry*, 428 S.W.3d 888, 898-99 (Tex. App.—Texarkana 2014, no pet.) (quoting *Trousdale v. Henry*, 261 S.W.3d 221, 234 (Tex.App.-Houston [14th Dist.] 2008, pet. denied)).
[58] Doc. 41, p. 8 ¶27.

Moreover, the Plummer Complaint that initiated the Plummer Adversary[59] that was filed November 27, 2019, set forth (in 104 pages of material) a laundry list of the Debtor's and Plummer's alleged bad acts and attached: (a) a FINRA disciplinary order, expelling Plummer from association with any FINRA member for Plummer's or his entities' various misdeeds (Ralph Janvey of K&J was copied on this Order—see Exh. B of Plummer Complaint, at p. 35); and (b) an SEC complaint and a July 1, 2019 Final Judgment of Judge Joe Fish in favor of the SEC outlining penalties being imposed on Plummer for misdeeds. In the Plummer Complaint, **_Plaintiff states that Plaintiff "learned of a June 2019 Securities and Exchange ('SEC') investigation related to 2015-2017 events in early July 2019._**" Plummer Complaint at 7¶.

Additionally, it is noteworthy that on <u>**April 27, 2020**</u>, the Trustee filed an amended complaint in the Plummer Adversary (the "Amended Plummer Compliant"). In the Amended Plummer Complaint, the Trustee **_specifically mentioned Defendant K&J,_** describing Plummer's "extravagant spending…on sporting events, travel, conferences, personal expenses such as college tuition, **_and large amounts to a Dallas law firm for work which was for Plummer's personal benefit_** [Amended Plummer Complaint, ¶ 3] (emphasis added). The Trustee stated therein that:

    (i)      The law firm of K&J was paid in excess of $1.3 million during the four-year period prior to the Bankruptcy Case [Amended Plummer Complaint, ¶ 74].

   (ii)      Based on a review of the proof of claim of K&J[60] and other information obtained from Debtor's books and records, it appears that K&J routinely provided legal services to Plummer and the Affiliates, and not Debtor. This use of Debtor funds to pay K&J for work unrelated to Debtor is a misappropriation of Debtor funds [Amended Plummer Complaint, ¶ 74].

  (iii)      All amounts paid to K&J other than those related to Debtor's business and operations constitute an improper transfer of funds by Debtor. The Trustee does not have all of K&J's invoices, however it appears over $200,000 was paid by Debtor related to the personal defense of Plummer in the 2016 FINRA enforcement actions during the eight-month period from January

---

[59] Adv. No. 19-03237.

[60] K&J timely filed a proof of claim in the bankruptcy case [Claim # 102] on February 6, 2018, in the amount of $682,643, with approximately 70 pages worth of attached invoices.

2016 to August 2016. Because the Trustee does not have the invoices from K&J for other periods, he reserves the right to assert a claim for additional amounts [Amended Plummer Complaint, ¶ 74].

(iv) In connection with other amounts paid by Debtor, Debtor paid for a whole host of services, including legal services and advertising and management but it was not reimbursed by [other Plummer Entities] or the individual joint ventures. Debtor paid for the services of all the law firms that provided services to it and other entities [Amended Plummer Complaint, ¶ 94].

Clearly, at least as of April 27, 2020, when this Amended Plummer Complaint was filed, the Plaintiff had for some significant length of time been on notice of facts, conditions, and circumstances as would have caused a reasonably prudent person to make inquiries and investigate further.

The fact that Plaintiff (through his New Special Counsel, retained in October 15, 2020) did not review Defendant's hard copy files as part of that ongoing investigation and did not determine that Defendant was allegedly responsible for the "legal injury" until much later (June 2021) cannot plausibly be interpreted as an appropriate point in time to start the limitations clock running. As explained in the above cited cases, "discovery" is not postponed until Plaintiff knew the specific *cause* of the injury, the party responsible for it, the full extent of it, the chances of avoiding it, the grounds for a lawsuit, or the allegedly tortious behavior.

A similar case to the one now before this court was *Baxter v. Gardere Wynne Sewell LLP*.[61] In that case, the court addressed whether the discovery rule delayed accrual of various causes of action until plaintiffs knew or should have known of a law firm's alleged involvement with fraud committed by one of the firm's clients. The plaintiffs became aware of their injury when the law firm's client financially failed and the Securities and Exchange Commission obtained a federal court order freezing the client's assets and appointing a special master. Plaintiffs eventually sued

---

[61] *Baxter v. Gardere Wynne Sewell LLP* 182 S.W.3d 460, 463 (Tex. App.—Dallas 2006) (*review denied*, May 26, 2006).

the law firm for, among other claims, alleged common law aiding and abetting securities violations and aiding and abetting/conspiracy to commit fraud and conversion. Like in the present situation, the plaintiffs in *Baxter* asserted that it was not possible for them to discover the law firm's involvement in the client's misconduct until the law firm made the client's documents available.[62] The court of appeals rejected this argument and affirmed judgment in favor of the law firm based on limitations, explaining that even if plaintiffs did not know of the law firm's existence until later, they undoubtedly knew or should have known that the client had legal counsel and that counsel was assisting the client with setting up the client's business entities. Moreover, the court noted, the firm did not conceal its identity, or the fact that it had client documents, or that it had withheld certain documents—although there was a dispute regarding the number and nature of certain documents withheld. Accordingly, the court held that "discovery" of the firm's involvement was not impossible because, with minimal investigation, the plaintiffs could have discovered the firm's existence, the firm's representation of the failed client, and that the firm had potentially relevant client documents.[63]

Like in *Baxter*, the fact that Plaintiff did not review hard copies of relevant documents until June of 2021 is clearly not enough to delay the running of the statute of limitations. The question is whether a plaintiff has knowledge of such facts, conditions, or circumstances ***as would cause a reasonably prudent person to make an inquiry*** that would lead to discovery of the cause of action.[64]

So, applying the "discovery rule" under Texas jurisprudence, when do we start the clock for the Newly Identified State Law Causes of Action?  The Petition Date (which would essentially

---

[62] *Id*. at 464.

[63] *Id*.

[64] *Estate of Jobe v. Berry*, 428 S.W.3d 888, 898-99 (Tex. App.—Texarkana 2014, no pet.) (quoting *Trousdale v. Henry*, 261 S.W.3d 221, 234 (Tex.App.-Houston [14th Dist.] 2008, pet. denied)).

apply section 108(a), without any suspension of time)?   The date of the filing if the Original

Complaint in this Adversary Proceeding (November 27, 2019)? A date in early July 2019 (which

is when Plaintiff represented that he learned of the SEC investigation in the Plummer Adversary

Complaint)? Perhaps September 18, 2019—the date that Plaintiff retained the same counsel that

had represented Searcy and, before that the UCC and, even before that, an ad hoc committee of

trade creditors?   Perhaps January 23, 2019—the date of Plaintiff's appointment as successor

trustee?   Perhaps we go back even further to the date that the previous trustee, Searcy, filed an

application to employ special counsel to pursue claims (in other words, essentially impute his

knowledge to the current Trustee)?   BK. Doc. 236. K&J timely filed a proof of claim in the

Bankruptcy Case [Claim # 102] on February 6, 2018, in the amount of $682,643, with

approximately 70 pages worth of attached invoices—perhaps that is the date that the previous

trustee should have been on full inquiry notice (and we impute that to the Plaintiff)? Perhaps we

go back to the date of conversion to Chapter 7 (July 27, 2018)?

This is difficult.  The court is reminded of the words of the Texas Supreme Court, that

historically the reasoning of the "discovery rule" jurisprudence has been "diverse, somewhat

inconsistent, and often overly broad."  ***The fact is that, using any of the dates in the preceding***

***paragraph results in three of the four Newly Identified State Law Causes of Action being***

***dismissed.***  Even using the latest date that one could reasonably use (which, in this court's

estimation is __**November 27, 2019**__—the date of the filing of this Adversary Proceeding and the

Plummer Adversary—where alleged shenanigans were spelled out over 104 pages), more than two

years elapsed from that date to the date of the tolling agreement on January 31, 2022.  Thus, all of

the Newly Identified State Law Causes of Action with two-year statutes of limitations under Texas

state law (i.e., all except the claim of aiding and abetting breach of fiduciary duty) must be

dismissed.  But aiding and abetting breach of fiduciary duty has a four-year statute of limitations. Given the tolling agreement from January 31, 2022-August 31, 2022, if we use any of the dates set forth in the prior paragraph, other than **the November 29, 2017 Petition Date** or the **February 6, 2018** date when K&J filed its proof of claim, then the fiduciary duty claim is ***not*** time-barred. On balance, the court does not believe it is appropriate to use either of these two dates—given that the Plaintiff was not yet appointed in these cases at the time and the original trustee, Searcy (if his knowledge should be imputed to Plaintiff), was only appointed less than two months after the Petition Date and had only been in place for about 18 days when the K&J proof of claim was filed.

This court is not unsympathetic to the difficulties caused by the COVID pandemic and the unexpected death of the original trustee in this case. Undoubtedly, such events made Plaintiff's investigation much more challenging. However, Plaintiff could have attempted to obtain a tolling agreement much sooner than he did or asked the court's help in compelling discovery. This did not happen; the parties only entered a tolling agreement January 31, 2022.  This was too late to preserve the Newly Identified State Law Causes of Action, except for aiding and abetting breach of fiduciary duty.

### iii.    Relation-Back Doctrine

Lastly, Plaintiff argues that the Newly Identified State Law Causes of Action in the First Amended Complaint should "relate back" to the filing of the Original Complaint. Can this "relation back" doctrine save the three Newly Identified State Law Causes of Action that the court ruled were not saved by the "discovery rule" in the previous section?  No.

As earlier discussed, under federal law (Rule 15(c) and cases interpreting it), an amendment to a pleading relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set

out—in the original pleading."[65] This standard is met if the original and amended complaints allege the same "general conduct" and "general wrong."[66] Under Texas law, the relation back doctrine provides that new facts or claims relate back to timely-filed pleadings "***unless*** the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence."[67] "'[I]f a plaintiff seeks to correct a technical difficulty, state a new legal theory of relief, or amplify the facts alleged in a prior complaint, then relation back is allowed.'"[68]

Here, Plaintiff argues that under both Texas and federal law, the Trustee's Newly Identified State Law Causes of Action relate back to the Original Complaint, as they arise out of the same transaction, conduct, or occurrence as the Original Complaint and are not based on a wholly new, distinct, or different transaction. Specifically, Plaintiff states the new claims are rooted in:

- the legal services Defendant provided to Debtor from November 29, 2013 through November 28, 2017;

- the payments Debtor made to Defendant for the legal services; and

- the lack of value of the legal services (including whether those services and actions actually harmed Debtor).

Plaintiff concludes that the Newly Identified State Law Causes of Action share the same actors and the same underlying operative facts and occur during the same time period as the allegations in the Original Complaint. Plaintiff argues that the First Amended Complaint clarifies that the legal services provided to Debtor during the same time period not only lacked reasonably equivalent value for Debtor, but were negligently performed, amounted to knowing participation

---

[65] *Murthy*, 847 F. Supp. 2d at 979–80 (citing FED. R. CIV. P. 15(c)(1)(B)).
[66] *Durand v. Hanover Ins. Grp., Inc*., 806 F.3d. 367, 375 (6th Cir. 2015) (internal quotation marks and citation omitted).
[67] *Murthy*, 847 F. Supp. 2d at 979–80 (citing TEX. CIV. PRAC. REM. CODE § 16.068 (emphasis added).
[68] *Flores v. Cameron County*, Tex. 92 F.3d 258, 273 (5th Cir. 1996) (quoting *F.D.I.C. v. Conner*, 20 F.3d 1376, 1386 (5th Cir.1994)).

in Plummer's breach of fiduciary duty to Debtor, and support a claim for money had and received. Therefore, Plaintiff maintains these added claims relate back and thus are not untimely.

Citing to the *American Housing* case (discussed earlier), Defendant argues that the Newly Identified State Law Causes of Action ***do not*** relate back under Rule 15(c)(1) to the alleged facts, conduct, transactions or occurrences set forth, or attempted to be set forth in the Original Complaint.[69] As the court explained in *American Housing*, "[t]he test is whether the original complaint apprised the [defendant] of the ... claims set forth in the ... amended complaint."[70] "Accordingly, claims that 'assert[ ] a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth' do not relate back."[71] Applying this test, the *American Housing* court held that claims asserted in that case in a bankruptcy trustee's amended complaint did not relate back to earlier complaints under circumstances that closely mirror those presented here.

As in this case, the nature of the trustee's earlier complaints in *American Housing* was to avoid and recover transfers.[72] In the amended complaint, however, the trustee attempted to assert a new ground for relief through facts that the court viewed as differing in both time and type from those in the original pleading—specifically, claims seeking to avoid certain allegedly fraudulent obligations. Because the original allegations provided no notice of the newly asserted claims, the amended complaint was held not to relate back to the earlier filing.

This court agrees with the analysis in *American Housing* and applies it to the facts in this Adversary Proceeding. The Newly Identified State Law Causes of Action here "'assert[ ] a new ground for relief supported by facts that differ in both time and type from those the original

---

[69] *American Housing,* 543 B.R. at 262-64 (citing TEX. CIV. PRAC. REM. CODE § 16.068) (emphasis added).

[70] *Id*. at 262 (quoting *McGregor v. La. State Univ. Bd. of Supervisors*, 3 F.3d 850, 864 (5th Cir.1993)).

[71] *Id*. (quoting *Mayle v. Felix*, 545 U.S. 644, 650 (2005)).

[72] *Id.* at 262.

pleading set forth' [and, thus,] do not relate back."[73] A key inquiry here would seem to be: "[w]as the opposing party put on notice of the new claim[s] in the original pleading?" To resolve this question, the focus is on the facts alleged in the original filing. [74] The test is whether the original complaint appraised the Defendant of the claims set forth in the First Amended Complaint.[75] "[T]he underlying facts presented carry the day: relation back will be permitted where the conduct alleged in the amended complaint refers to substantially the same conduct addressed in the original complaint. Stated simply, parties may amend and elaborate on original facts and grounds for relief but may not go beyond what is alleged in the original complaint."[76]

Under this test, the fraudulent transfer claims asserted in this Adversary Proceeding in the Original Complaint clearly did not place Defendant on notice of the Newly Identified State Law Causes of Action that were asserted three years later. The Original Complaint did not allege *any* wrongdoing on the part of Defendant. All that was alleged was that Defendant had been paid legal fees. In fact, no conduct by Defendant is even alleged in the Original Complaint, wrongful or otherwise—the allegations in the Original Complaint that the transfers were fraudulent was not based on any alleged conduct by Defendant, but instead, only on the allegedly fraudulent scheme perpetrated by Debtor, which Plaintiff argued made the transfers fraudulent as a matter of law.

According to Plaintiff, it is sufficient for relation back purposes that the Newly Identified State Law Causes of Action present facts occurring within the same time period as the original fraudulent transfers and involving related actions. However, it matters here that the factual allegations differ dramatically in nature or *type* from the Original Complaint's simple description

---

[73] *Id*. (quoting *Mayle v. Felix*, 545 U.S. 644, 650 (2005)).
[74] *Id*. at 264.
[75] *See id*., citing *McGregor v. La. State Univ. Bd. of Supervisors*, 3 F.3d 850, 864 (5th Cir. 1993).
[76] *Beshears v. McCool (In re McCool)*, 2019 WL 4781338, at *16 (Bankr. N.D. Tex. Sept. 30, 2019) (emphasis added) (citing *Johnson v. Crown Enters*., 398 F.3d 339, 343 (5th Cir. 2005)).

of a law firm that received Transfers for legal services that might not have benefited the Debtor. Thus, they cannot did not relate back.[77] To be clear, the Original Complaint did not allege any conduct, wrongful or otherwise, on the part of Defendant, nor did it give Defendant notice of or allege any facts that would support the newly asserted Newly Identified State Law Causes of Action. A claim does not relate back if it is based on a different action that is only "loosely derivative of the same occurrence and transaction."[78] Therefore, the Newly Identified State Law Causes of Action differ in type from the original claims and do not relate back to the Original Complaint.

### IV.    Conclusion

For the reasons set forth above:

A. **As to the Newly Identified Transfers**, this court grants Defendant's Motion to Dismiss with respect to the Newly Identified Transfers added in the First Amended Complaint that are targeted under TUFTA. The following Newly Identified Transfers are time-barred from avoidance and recovery:

---

[77] *In re American Housing*, at 262.
[78] *Duzich v. Marine Office of America Corp.*, 980 S.W.2d 857, 873 (Tex.App. - Corpus Christi 1998, pet. denied).

| Check Date | Check # | Payment Amount | Invoice # |
|---|---|---|---|
| 12/20/2013 | 4519 | $26,163.60 | 25839 |
| 12/20/2013 | 4519 | $2,610.00 | 25840 |
| 1/24/2014 | 4689 | $33,920.60 | 25906 |
| 1/24/2014 | 4689 | $3,470.00 | 25907 |
| 2/24/2014 | 4850 | $29,755.00 | 25938 |
| 2/24/2014 | 4850 | $2,750.00 | 25939 |
| 2/24/2014 | 4850 | $2,200.00 | 25940 |
| 4/4/2014 | 5055 | $34,015.00 | 25996 |
| 4/4/2014 | 5055 | $550.00 | 25997 |
| 4/25/2014 | 5186 | $34,841.00 | 26059 |
| 5/27/2014 | 5349 | $58,969.50 | 26109 |
| 6/26/2014 | 5477 | $41,043.17 | 26159 |
| 7/28/2014 | 5594 | $31,320.61 | 26212 |
| 8/25/2014 | 5714 | $33,817.21 | 26265 |
| 8/25/2014 | 5714 | $4,950.00 | 26266 |
| 10/23/2014 | 5971 | $40,000.00 | 26326 |
| 11/25/2014 | 6201 | $20,605.33 | 26326 |
| 12/23/2014 | 6350 | $24,185.74 | 26381 |
| 12/23/2014 | 6350 | $55.00 | 26380 |
| 6/25/2015 | 7018 | $18,674.19 | 26673 |
| 6/25/2015 | 7018 | $5,635.00 | 26672 |
| 6/25/2015 | 7018 | $575.81 | 26724 |
| 6/25/2015 | 7018 | $115.00 | 26723 |
| 8/26/2015 | 7306 | $20,303.24 | 26821 |
| 8/26/2015 | 7306 | $28,720.47 | 26724 |
| 8/26/2015 | 7306 | $15,279.53 | 26773 |
| **12/21/2017** | **39941** | **$20,000.00** | **27444** |

[79]

In contrast and for the aforementioned reasons, the following Newly Identified Transfers are ***not*** time-barred from avoidance and recovery and may go forward:

---

[79] The 12/27/2017 transfer is a postpetition transfer. Section 549 was never pleaded as a cause of action, so this transfer should be dismissed.

| 12/30/2015 | 7915 | $9,975.02 | 26927 |
| 12/30/2015 | 7915 | $24.98 | 26987 |
| 3/10/2016 | 37050 | $16,970.77 | 28989 |
| 3/10/2016 | 37050 | $16,912.50 | 26988 |
| 3/10/2016 | 37050 | $16,116.73 | 26990 |
| 4/15/2016 | 37593 | $39,736.93 | 27028 |
| 4/15/2016 | 37593 | $10,263.07 | 26990 |
| 6/1/2016 | 38650 | $9,925.08 | 27087 |
| 6/1/2016 | 38650 | $7,135.00 | 27029 |
| 6/1/2016 | 38650 | $4,922.50 | 27085 |
| 6/1/2016 | 38650 | $1,744.92 | 27028 |
| 6/1/2016 | 38650 | $1,272.50 | 27086 |
| 7/26/2016 | 39795 | $7,211.50 | 072616 |
| 11/9/2016 | 10054 | $18,196.99 | 27139 |
| 11/9/2016 | 10054 | $6,803.01 | 27140 |
| 12/9/2016 | 9973 | $24,701.86 | 27185 |
| 12/9/2016 | 9973 | $298.14 | 27030 |
| 1/10/2017 | 10156 | $10,000.00 | 27186 |
| 3/17/2017 | 10920 | $5,000.00 | 27186 |
| 4/27/2017 | 539 | $20,000.00 | 27646 |
| 5/26/2017 | 1071 | $6,315.00 | 27234 |
| 5/26/2017 | 1071 | $3,685.00 | 27646 |
| 5/31/2017 | 1091 | $9,385.00 | 27235 |
| 5/31/2017 | 1091 | $615.00 | 27646 |
| 7/7/2017 | 467 | $10,000.00 | 27233 |
| 9/1/2017 | 614 | $20,000.00 | 27233 |
| 9/26/2017 | 10583 | $4,495.29 | 26987 |
| 9/26/2017 | 39930 | $15,504.71 | 27087 |
| 11/8/2017 | 662 | $8,876.64 | 27287 |
| 11/8/2017 | 662 | $935.86 | 27233 |
| 11/8/2017 | 662 | $187.50 | 27232 |
| 11/8/2017 | 10656 | $10,000.00 | 27288 |

B. **As to the Newly Identified State Law Causes of Action** for negligence/professional malpractice, negligent supervision/retention, and money had and received/unjust enrichment, for the reasons set forth above, Defendant's Motion to Dismiss is granted but as to the Newly Identified State Law Cause of Action for aiding and abetting breach of fiduciary duty, this court denies Defendant's Motion to Dismiss.


**IT IS SO ORDERED.**


**### END OF MEMORANDUM OPINION AND ORDER ###**