**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| IN RE:<br><br>TEXAS E & P OPERATING, INC.,<br><br>            Debtor. | CASE NO.: 17-34386-SGJ-7<br><br>CHAPTER 7 |
| ROBERT YAQUINTO, JR.,<br><br>            Trustee,<br><br>v.<br><br>KRAGE & JANVEY, LLP,<br><br>            Defendant. | ADV. PROC. NO.: 19-03231-SGJ |

Dated: March 22, 2024

Respectfully submitted,

*/s/ Michael J. Lang*
Michael J. Lang
Texas State Bar No. 24036944
mlang@cwl.law
Alexandra J. Ohlinger
Texas State Bar No. 24091423
aohlinger@cwl.law
Dallas Flick
Texas State Bar No. 24104675
dflick@cwl.law
CRAWFORD, WISHNEW & LANG PLLC
1700 Pacific Avenue, Suite 2390
Dallas, Texas 75201
Telephone:  (214) 817-4500
Facsimile:   (214) 602-6551
***Attorneys for Trustee***

**CERTIFICATE OF SERVICE**

The undersigned certifies that, on March 22, 2024, a true and correct copy of this document was served on all counsel of record via electronic filing.

*/s/ Michael J. Lang*
Michael J. Lang

**TRUSTEE'S RESPONSE TO DEFENDANT'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Robert Yaquinto, Jr., as Chapter 7 Trustee ("Trustee" or "Plaintiff") of Texas E&P Operating, Inc. ("Debtor"), files this *Response* (the "Response") to *Defendant's Motion for Partial Summary Judgment on Plaintiff's Claim for Aiding and Abetting/Knowing Participation in Plummer's Breach of Fiduciary Duty to Debtor and on Plaintiff's Constructive Fraudulent Transfer Claims* [*Janvey* Adv. DE 62, 63] (the "Motion"). In support thereof, Trustee respectfully shows the Court as follows:

## I.   BACKGROUND

A detailed procedural history is set forth in Trustee's response brief [*Janvey* Adv. DE 47] to Defendant Krage & Janvey's ("Defendant") or ("K&J") *Motion to (1) Strike Portions of Amended Complaint Pursuant to Fed.R.Civ.P. 12(f) and Fed.R.Bankr.P. 7012 and (2) Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6) and Fed.R.Bankr.P. 7012* (the "Motion to Dismiss") [*Janvey* Adv. DE 45, 46], which is incorporated in this Response by reference.

## II.   ARGUMENTS & AUTHORITIES

**A.   KNOWING PARTICIPATION IN BREACH OF FIDUCIARY DUTY**

*1. Relevant Court Rulings*

On February 29, 2024, this Court entered a judgment in the adversary proceeding *Yaquinto v. Plummer, et al.*, Adv. No. 19-03237 [*Plummer* Adv. DE 171] (the "Plummer Adversary") following Trustee's *Amended Motion for Entry of Judgment* (the "Motion for Entry") in the Plummer Adversary [Plummer Adv. DE 165]. Among the allegations in Trustee's Motion for Entry were allegations that Mark Plummer ("Plummer") breached his fiduciary duty to Debtor and:

> Under Plummer's watch, the Debtor's accounts payable went from $4,836.57 in 2014 to $9,417,266.80 on the Petition Date – a staggering increase of $9,412,4530.23. Thus, rather than paying creditors, Plummer used the Debtor's

1

funds to pay his personal expenses, ***including his personal legal fees and the legal fees of other entities***. Then after ***thoroughly looting the Debtor and saddling it with millions of dollars in debt belonging to other entities,*** Plummer placed the Debtor into bankruptcy. Neither Plummer nor any of his other entities filed for bankruptcy. To the contrary, Plummer continued to operate his predatory investment platform using different entities and names.[1]

Notwithstanding extensive litigation with creditors, ***the insolvency of the Debtor***, and the continuous losses on oil and gas operations, Plummer improperly used funds and misappropriated funds from the Debtor for various personal expenses. ***These improper expenses include*** expenses incurred by Plummer, his family members, ***payments to the law firm of Krage & Janvey, LLP for work not related to the Debtor,*** and extensive spending by Plummer on sporting events.[2]

***The law firm of Krage& Janvey, LLP (herein after referred to as "KJ") was paid in excess of $1.3 million during the four-year period prior to the Bankruptcy Case***. Based on a review of the proof of claim of KJ and other information obtained from the Debtor's books and records, it appears that KJ routinely provided legal services to Plummer and the Affiliates and not the Debtor. ***This use of Debtor funds to pay KJ for work unrelated to the Debtor is a misappropriation of Debtor funds***. All amounts paid to KJ other than those related to the Debtor's business and operations constitute an ***improper transfer of funds by the Debtor***.[3]

After an evidentiary hearing, the Court granted the Motion for Entry in the Plummer Adversary and entered its *Order Granting Trustee's Amended Motion for Entry of Judgment* [Plummer Adv. DE 171] (the "Plummer Adversary Judgment").

In the instant Motion, K&J seeks summary judgment on Trustee's claim for knowing participation in Plummer's breach of fiduciary duty to Debtor based on limitations, which is the same argument K&J put forth in its Motion to Dismiss. Once again, K&J alleges that Trustee's claims are barred by limitations, arguing: (1) the claim accrued when the Bankruptcy Case was filed;[4] (2) alternatively, the claim accrued when Jason Searcy, the prior Trustee, was appointed; (3)

---

[1] *See Plummer* Adv. DE 165 at ¶ 27 (emphasis added).
[2] *Id.* ¶ 30 (emphasis added).
[3] *Id.* (emphasis added).
[4] *Janvey* Adv. DE 63, at pp. 10-13.

2

the discovery rule does not apply; and (4) Trustee was on inquiry notice more than four years before the parties entered into a tolling agreement.

Notably, this Court has already rejected each of K&J's arguments and allegations in its *Memorandum Opinion and Order Granting in Part and Denying in Part Defendant Krage and Janvey, L.L.P.'s Rule 12(b)(6) Motion to Dismiss* (the "MTD Order"). The allegations K&J makes to the Court in the instant Motion are the same allegations K&J made previously in the Motion to Dismiss. In addition, the Court, in rendering the MTD Order, cited the same timeline of events that K&J sets forth in the instant Motion. As set forth below:

### 2.  The "Legal Injury Rule" / Accrual of the Claim

When Trustee's knowing participation claims accrued is a question of law.[5]

In the MTD Order, the Court asked and answered the question, "when do we start the clock for the [knowing participation claim]?"[6] Considering the same facts (which also form the basis for K&J's Motion now), this Court evaluated each of the following as possible dates for accrual of the knowing participation claim in the MTD Order:

- **November 19, 2017**: The Petition Date (which would essentially apply section 108(a), without any suspension of time);

- **February 6, 2018**: The date K&J filed a proof of claim in the Bankruptcy Case [Claim # 102] in the amount of $682,643, with approximately 70 pages worth of attached invoices—perhaps that is the date that the previous trustee should have been on full inquiry notice (and we impute that to the Plaintiff);

- **July 27, 2018**: The date of conversion to Chapter 7;

- **September 21, 2018**: The date that the previous trustee, Searcy, filed an application to employ special counsel to pursue claims (in other words, essentially impute his knowledge to the current Trustee);

---

[5] *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003) (citing *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990)).
[6] *In re: Texas E&P Operating, Inc.*, No. 17-34386-SGJ-7, 2023 WL 3012268, at *19 (Bankr. N.D. Tex. Apr. 19, 2023).

- **January 23, 2019**: The date of Plaintiff's appointment as successor trustee;

- **Early July 2019**: The date when Plaintiff represented that he learned of the SEC investigation in the Plummer Adversary Complaint;

- **September 18, 2019**: The date that Plaintiff retained the same counsel that had represented Searcy and, before that the UCC and, even before that, an ad hoc committee of trade creditors; and

- **November 27, 2019**: The date of the filing if the *Original Complaint* in this Adversary Proceeding.[7]

After a thorough analysis, the Court concluded that it was not appropriate to use either November 19, 2017 (the "Petition Date") or February 6, 2018 (the "K&J Proof of Claim Date").[8] The Court, applying the period that the case was abated by agreement, further found that Trustee's knowing participation claims were timely under any other date.[9]

Nevertheless, K&J persists in arguing that Trustee's knowing participation claim is untimely because it accrued on the Petition Date or, alternatively, on January 19, 2018 (the "Searcy Appointment Date"). Significantly, K&J does not ask the Court to reconsider its prior rulings or provide the Court with any new facts, nor does K&J defeat the discovery rule as a matter of law.

A defendant moving for summary judgment on the affirmative defense of limitations has the burden to establish that defense conclusively."[10] "Thus, the defendant must (1) conclusively prove when the cause of action accrued, and (2) negate the discovery rule, if it applies and has been pleaded or otherwise raised, by proving as a matter of law there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have

---

[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 195–96 (5th Cir. 2013).

discovered, the nature of its injury."[11] "When a plaintiff knew or should have known of an injury is generally a question of fact."[12]

As the Court is aware, the discovery rule is an exception to the general legal injury rule.[13] A claim does not accrue, and the statute of limitations does not begin to run, until the plaintiff "knew or in the exercise of reasonable diligence should have known of the ***wrongful act and resulting injury***."[14] In the fiduciary context, the nature of an injury is presumed to be inherently undiscoverable because "[f]iduciaries are presumed to possess superior knowledge."[15]

Here, the claims at issue are based upon Plummer's breach of fiduciary duty to the Debtor and K&J's (Debtor's fiduciary) knowing participation in those breaches. As a result, Trustee's knowing participation claim did not accrue until Trustee knew or could have known of __***both***__ the: (1) wrongful act; and (2) resulting injury from those claims. Each of K&J's arguments related to the accrual of the knowing participation claim fails.

***First***, K&J alleges that Trustee's claims accrued on the Petition Date because Trustee ultimately determined that bankruptcy was the wrongful injury. However, the statute of limitations in a bankruptcy is tolled until either: "the petition date __***or until the bankruptcy trustee could reasonably have discovered the cause of action***__."[16] In other words, the filing of a bankruptcy alone is not, *per se*, an injury and does not automatically give rise to a cause of action. Even in the case

---

[11] *Id.*

[12] *Cadle Co. v. Wilson*, 136 S.W.3d 345, 352 (Tex. App.—Austin, 2004, no pet.).

[13] *Taylor v. Trevino*, 569 F. Supp. 3d 414, 442–43 (N.D. Tex. 2021) (Fitzwater, J.).

[14] *Janvey v. Suarez*, 978 F. Supp. 2d 685, 708 (N.D. Tex. 2013) (emphasis added); *Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 834 (Tex. 2018) (quoting *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996)); *Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex. 1997); *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998) (holding the discovery rule shifts the date of the "legal injury" from the time the wrongful action occurred to the time when "[plaintiff] knew or, exercising reasonable diligence, should have known of the facts giving rise to a cause of action").

[15] *Comput. Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996).

[16] *See In re Juliett Homes, LP*, 07-36424, 2011 WL 6817928, at *6 (Bankr. S.D. Tex., Dec. 28, 2011) (emphasis added).

5

of a *ponzi* scheme, which (unlike a bankruptcy) is *per se* a fraudulent venture, the initiation of a receivership does not, on its own, trigger the statute of limitations.[17]

As a result, this Court has already properly ruled that limitations on Trustee's knowing participation claim did not begin to run on the Petition Date. The question is when did Trustee know (or when should he have known) that the bankruptcy was an ***injury***—and not just that a bankruptcy had been filed.[18]

***Second***, K&J claims that, at the latest, limitations began to run on the Searcy Appointment Date, suggesting that: (1) upon appointment, Searcy was ***immediately*** vested with knowledge of all facts regarding Plummer's fraudulent scheme; and (2) no trustee is given any grace period to determine whether the filing of the bankruptcy is an injury or what specific injuries may exist.

Again, even the appointment of an S.E.C. receiver in a *ponzi* scheme case (a known fraudulent scheme at the outset) does not, alone, trigger limitations. For example, in *Janvey v. Suarez*, the court rejected arguments that: (1) limitations on fraudulent transfer claims began to run on date the S.E.C. appointed Ralph Janvey ("Janvey") as a receiver to the *ponzi* scheme; and (2) the receiver's "mere access to available information" triggered the discovery period.[19] Instead, the *Janvey v. Suarez* court held that "[t]he crucial issue is when [the receiver, *i.e.*, Janvey] knew or could reasonably have known of the fraudulent nature of the transfers, not simply when he knew or could reasonably have known that the transfers had been made."[20] Similarly, here, the proper question is when Trustee knew (or should have known) that the bankruptcy was a wrongful injury, not just that a bankruptcy was filed.

---

[17] *Janvey v. Suarez*, 978 F. Supp. 2d 685, 704 (N.D. Tex. 2013).
[18] *Id.*
[19] *Id.*
[20] *Id.*

K&J have provided no support for their conclusion that the filing of a bankruptcy case (which can be filed for numerous reasons) is, *per se*, a wrongful injury, and K&J has failed to establish when any trustee (either Mr. Searcy or Trustee) knew or should have known that the "bankruptcy" itself was a wrongful injury. Moreover, K&J does not even address in its Motion when Trustee knew (or should have known) of the wrongful conduct by K&J (***the Debtor's fiduciaries***) that caused that injury.

## B.   CONSTRUCTIVE FRAUDULENT TRANSFER

K&J claims that the doctrine of collateral estoppel precludes Trustee's constructive fraudulent transfer claims because this Court found in *Yaquinto v. CBS Radio, Inc., et. al.*, Adv. No. 19-03226 (the "CBS Case") (involving an arms-length third party, not the ***Debtor's long-time attorney***) that: (1) in the CBS Case, Trustee did not meet his burden of showing that the transfers made to KRLD for advertising did not provide reasonably equivalent value to the Debtor;[21] and (2) the business model implemented by Plummer, Debtor, and its affiliated entities constituted a single business enterprise that acted in concert through their operations.[22] K&J alleges that the Court's finding in the CBS Case (that Plummer, Debtor, and its affiliated entities acted in concert through their operations) establishes, as a matter of law, that all the Transfers Debtor made to K&J for legal services K&J provided to Plummer and non-Debtor affiliates provided reasonably equivalent value to Debtor.[23]

However, after an evidentiary hearing in the Plummer Adversary, this Court subsequently entered the Plummer Adversary Judgment against Plummer and various affiliates, including Texas E&P Funding, Inc.; Texas E&P Partners, Inc.; Chestnut Well Service Group, Inc.; Texas E&P

---

[21] *In re Texas E&P Operating, Inc.*, No. 17-34386-SGJ-7, 2022 WL 2719472, at *14 (Bankr. N.D. Tex. July 13, 2022).
[22] *Janvey* Adv. DE 63 at p. 27.
[23] *Id.*

7

Well Service, LLC; Chestnut Lease Fund I, L.P.; and Chestnut Production Fund IV, L.P., for

breach of fiduciary duty and fraudulent transfer. While the Plummer Adversary Judgment was a

"default judgment, " "[a] sanctioned post-answer default judgment is considered a final judgment

on the merits for collateral estoppel purposes even when the defendant's pleadings are struck."[24]

This follows a generally recognized principle recognized by several federal circuits that "if a party

substantially participates in litigation prior to the entry of a default judgment, a federal court can

apply collateral estoppel and prevent that party from relitigating the issues decided by the

judgment."[25]

Notably, the Court has emphasized that the Plummer Adversary Judgment was ***not*** a routine

default judgment proceeding where the defendant either fails to appear or participate in the matter:

> Rather, this matter was ***vigorously litigated*** by the Defendants for over two years. Defendants filed motions to dismiss both the Original Complaint and the Amended Complaint (Docket Nos. 4 and 17). ***Extensive discovery was conducted in this case*** by the Trustee and ***extensive discovery disputes were presided over by this Court***. Mr. Plummer also sat for a deposition wherein he attempted to assert his Fifth Amendment privilege but did so improperly and contrary to this Court's order detailing how a Fifth Amendment privilege can be asserted in a civil proceeding (Docket No. 108). It was only after Defendants repeatedly failed to comply with this Court's orders compelling discovery that the Sanctions Order was entered. But until such time, ***Defendants robustly defended against the Trustee's claims***. Furthermore, ***as part of the Default Judgment Hearing, the Trustee presented substantial, detailed, and persuasive evidence in support of his claims***.[26]

---

[24] *In re Huffman*, No. 16-10344, 2017 WL 4621703, at *6–7 (Bankr. E.D. Tex. Oct. 13, 2017) (quoting *Guion v. Sims (In re Sims)*, 479 B.R. 415, 421 (Bankr. S.D. Tex. 2012) (citing *Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195, 1201 (5th Cir. 1996)).

[25] *Int'l Strategies Group, Ltd. v. Pomeroy (In re Pomeroy)*, 353 B.R. 371, 377 (Bankr. D. Mass. 2006) (citing, in addition to *Cornwell, Herbstein v. Bretman*, 32 Fed. Appx. 158 (7th Cir. 2002); *Wolstein v. Docteroff (In re Docteroff)*, 133 F.3d 210, 215 (3d Cir. 1997); *Bush v. Balfour Beatty Bahamas, Ltd.* (In re Bush), 62 F.3d 1319, 1324 (11th Cir. 1995) ("Where a party has substantially participated in an action in which he had a full and fair opportunity to defend on the merits, but subsequently chooses not to do so, and even attempts to frustrate the effort to bring the action to judgment, it is not an abuse of discretion for a district court to apply the doctrine of collateral estoppel to prevent further litigation of the issues resolved by the default judgment in the prior action."); *FDIC v. Daily (In re Daily)*, 47 F.3d 365, 367 (9th Cir. 1995) (default judgment as sanction for failure to provide discovery).

[26] *See Plummer* Adv. DE 171 at p. 6, ¶¶ H and I (emphasis added).

Based upon the "substantial, detailed, and persuasive" evidentiary record presented by Trustee, the Court found that Plumber breached his fiduciary duty to Debtor "by, among other things, misappropriating funds for his own personal use, ***causing the Debtor to pay millions of dollars of debt belonging to himself and entities that he owned and/or controlled for no consideration, saddling the Debtor with millions of dollars of debt belonging to himself and entities that he owned and/or controlled,*** using the Debtor to conduct fraudulent business activities and to defraud investors out of millions of dollars."[27]

Included in these "debts" that Plummer paid, for no consideration as determined by the Court, were payments made to ***K&J*** for Plummer and the non-Debtor affiliates. As described above, among the allegations in the Motion for Entry, which the Court granted after an evidentiary hearing, were allegations that Plummer breached his fiduciary duty to Debtor and:

- Plummer used Debtor to pay personal expenses, including personal legal fees and legal fees of non-Debtor entities;[28]

- Plummer looted the Debtor and "saddl[ed] it with millions of dollars in debt belonging to other entities," ultimately placing Debtor (and Debtor alone) into bankruptcy;[29]

- Plummer improperly used and misappropriated funds from Debtor, including payments to K&J for work not related to Debtor;[30]

- K&J was paid over $1.3 million in the four years preceding the Bankruptcy Case, and the use of Debtor's funds to pay K&J for work unrelated to Debtor was a misappropriation of funds;[31] and

- Payments of funds to K&J unrelated to Debtor's business and operations constitute an improper transfer.[32]

---

[27] *Id.* at p. 7, ¶ 4 (emphasis added).
[28] *See Plummer* Adv. DE 165 at ¶ 27.
[29] *Id.* at ¶ 27.
[30] *Id.*
[31] *Id.*
[32] *Id.*

Consequently, the Court found that: (1) Plummer was operating a fraudulent scheme;[33] and (2) payments Debtor made unrelated to Debtor's business and operations, including payments made to K&J, for Plummer or non-Debtor entities did not benefit Debtor, harmed Debtor, and were ***made for no consideration (i.e., value) to Debtor***.[34] Thus, K&J is not entitled to summary judgment on Trustee's constructive fraudulent transfer claims.

Moreover, K&J does not allege, much less demonstrate, how any Transfer at issue benefitted Debtor.[35] They did not. The actual and constructive fraudulent transfers the Trustee seeks to recover from K&J are for payments Debtor made to K&J for services unrelated to Debtor's business and operations, including payments provided to Plummer and non-Debtor entities for which Debtor did not receive any consideration.

### III.   CONCLUSION AND PRAYER FOR RELIEF

For the reasons stated herein, the Trustee requests that the Court deny K&J's Motion in full and award Trustee all other and further relief, at law or equity, to which he may be entitled.

---

[33] *See Plummer* Adv. DE 171 at p. 7, ¶ 4.

[34] *Id.*

[35] *See In re Pace*, 456 B.R. 253, 271 (Bankr. W.D. Tex 2011) ("In short '[a] payment made solely for the benefit of a third party, such as a payment to satisfy a third-party's debt, does not furnish reasonably-equivalent value to the debtor.' Courts have recognized that reasonably equivalent value may be found in transfers involving third parties if the debtor received some indirect benefit from the transfer. But such benefits must be 'fairly concrete.'") (internal citations omitted).