**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| IN RE:<br><br>TEXAS E&P OPERATING, INC.,<br><br>        Debtor. | CASE NO: 17-34386-SGJ-7<br><br>CHAPTER 7 |
| ROBERT YAQUINTO, JR.,<br><br>        Trustee/Plaintiff,<br><br>v.<br><br>KRAGE & JANVEY, LLP,<br><br>        Defendant. | ADV. PROC. NO: 19-03231-SGJ |

Dated: April 5, 2024

Respectfully submitted,

*/s/ Michael J. Lang*
**MICHAEL J. LANG**
Texas State Bar No. 24036944
mlang@cwl.law
**ALEXANDRA J. OHLINGER**
Texas State Bar No. 24091423
aohlinger@cwl.law
**DALLAS FLICK**
Texas State Bar No. 24104675
dflick@cwl.law
CRAWFORD, WISHNEW & LANG PLLC
1700 Pacific Avenue, Suite 2390
Dallas, Texas 75201
Telephone:  (214) 817-4500
Facsimile:  (214) 602-6551

***Attorneys for Trustee***

**CERTIFICATE OF SERVICE**

      The undersigned certifies that, on April 5, 2024, a true and correct copy of this document was served on all counsel of record via electronic filing.

*/s/ Michael J. Lang*
Michael Lang

1

**TRUSTEE'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON
CERTAIN AFFIRMATIVE DEFENSES**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Plaintiff Robert Yaquinto, Jr., as Chapter 7 Trustee ("Trustee" or "Plaintiff") of Texas E&P

Operating, Inc. ("Debtor") files this *Reply* (the "Reply") *in Support of Motion for Summary

Judgment on Certain Affirmative Defenses* (the "Motion") pursuant to Fed. R. Civ. P. 56 and Fed.

R. Bankr. P. 7056. In support thereof, Trustee respectfully shows the Court as follows:

**ARGUMENTS & AUTHORITIES**

The Court should grant summary judgment and dismiss Defendant Krage & Janvey, LLP's

("K&J") affirmative defense of attorney immunity because the defense does not apply to Trustee's

claims.[1] *First*, K&J's improper conduct underlying Trustee's claims occurred while K&J was

representing Debtor, thereby making Debtor a "client" and not subject to the defense.

*Second*, K&J participated in and advanced Plummer's fraudulent business schemes,

fraudulent transfers, and its resulting fiduciary breaches to Debtor—conduct that is categorically

excluded from the scope of the defense. Accordingly, the Court should summarily dismiss K&J's

attorney immunity defense.

A.    **The attorney immunity defense fails as a matter of law because K&J's improper
      conduct occurred while K&J was serving as Debtor's attorney, not opposing counsel.**

The attorney immunity defense promotes attorneys' zealous advocacy of *their clients* while

protecting from liability *against non-clients*. In *Haynes & Boone, LLP*, the Supreme Court of Texas

outlined the defense:

> [A]ttorney immunity protects an attorney against a *non-client's* claim when the
> claim is based on conduct that (1) constitutes the provision of "legal" services
> involving the unique office, professional skill, training, and authority of an attorney

---

[1]    In its Response, K&J concedes its affirmative defense of litigation privilege is not applicable in this matter. *See*
Janvey Adv. DE 72 at 8 n.9.

and (2) the attorney engages in to fulfill the attorney's duties in *representing the client within an adversarial context in which the client and the non-client do not share the same interests* and therefore *the non-client's reliance on the attorney's conduct is not justifiable.*"[2]

The distinction between clients and non-clients stems from Texas jurisprudence precluding claims against opposing counsel where the attorney had no duty of care for the claimant or where the parties were not in privity.[3] The requirement of an "adversarial context" understandably provides immunity from claims by opposing third parties in litigation or in non-litigation settings, such as arms-length transactions.[4] Not claims brought by an attorney's own client.

Here, Trustee's claims concern K&J's participation in and furtherance of Plummer's fraudulent business scheme, fraudulent transfers, and the resulting breaches of fiduciary duty to Debtor.[5] The underlying misconduct occurred during K&J's ongoing attorney-client relationship *with Debtor.*[6] Thus, in this timeframe, K&J and Debtor were unquestionably in privity, and Debtor was neither knowingly opposed to, nor in an adversarial relationship with, Plummer and the Ventures.

Shockingly, to hold on to this inapplicable defense, K&J: (1) willingly admits it knowingly acted in Plummer's best interests—to Debtor's detriment; and (2) contends that, because its attorney-client relationship with Debtor has now ended, Debtor is a "non-client" for purposes of

---

[2]     *Haynes & Boone, LLP v. NFTD, LLC*, 631 S.W.3d 65, 78 (Tex. 2021) (emphasis added).

[3]     *See id.* at 72-75 (analyzing jurisprudence for the defense, including requirement of privity for an attorney to be liable while representing other clients); *Barcelo v. Elliott*, 923 S.W.2d 575, 578-79 (Tex. 1996) ("[A]n attorney owes a duty of care only to his or her client, not to third parties who may have been damaged by the attorney's negligent misrepresentation of the client. Without this 'privity barrier,' the rationale goes, clients would lose control over the attorney-client relationship, and attorneys would be subject to almost unlimited liability."); *see also, e.g.*, *Renfroe v. Jones & Assoc.*, 947 S.W.2d 285, 287 (Tex. App.—Fort Worth 1997, writ denied) (affirming summary judgment dismissing claims against attorney because claimant lacked privity with attorney).

[4]     *See Haynes and Boone*, 631 S.W.3d at 79 ("[A]ttorney immunity applies to claims based on conduct outside the litigation context[.]"); *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 483-44 (Tex. 2015) ("[A]s a general rule, attorneys are immune from civil liability to non-clients for actions taken in connection with representing a client in litigation.") (internal citations omitted).

[5]     *See generally* Amended Complaint, Janvey Adv. DE 41, ¶¶ 8-9.

[6]     *See id.*

attorney immunity.[7] K&J misunderstands its own defense. The attorney-client relationship *at the time of K&J's misconduct* controls the analysis, not the present-day adversarial relationship between Debtor and K&J.[8]

K&J also muddies the waters by arguing an alter ego relationship between Plummer and Debtor "justifies" attorney immunity.[9] But K&J does not explain how or why such an alter ego allegation further justifies the defense. Regardless, an alter-ego relationship does not change the indisputable fact that K&J and Debtor had an attorney-client relationship. Moreover, it would all but confirm that Debtor was not *knowingly* adverse to Plummer and the Ventures, while K&J was helping Plummer work against Debtor's best interests.

**B.**    **The attorney immunity defense does not apply to K&J's participation in and furtherance of Plummer's fraudulent business scheme, fraudulent transfers, and the resulting breaches of fiduciary duty to Debtor.**

Even if this defense could apply in the context of K&J's relationship with Debtor—it cannot—K&J's attorney immunity defense separately fails because K&J's conduct is excluded from the scope of the defense.

In its Response, K&J argues that framing its conduct as "fraudulent or otherwise wrongful," cannot defeat the immunity defense.[10] Generally speaking, K&J is correct—fraud alone is not an exception to attorney immunity.[11] But the Supreme Court of Texas has held the attorney immunity defense does not apply when the alleged conduct advances a fraudulent business scheme or is in assistance of a client's fraudulent transfers.[12] Such conduct falls outside

---

[7]    *See* Janvey Adv. DE 72, ¶ 21.

[8]    *See Youngkin*, 546 S.W.3d at 683 (considering the type of conduct at issue and the existence of the attorney-client relationship at the time).

[9]    *See* Janvey Adv. DE 72 at 10 n.10.

[10]   *See id.*, ¶¶ 26-27.

[11]   *See Cantey Hanger*, 467 S.W.3d at 483-44.

[12]   *See Youngkin v. Hines*, 546 S.W.3d 675, 682-83 (Tex. 2018) (*citing Catney Hanger*, 467 S.W.3d at 482-83).

the scope of otherwise defensible discharge of an attorney's duties to their clients.[13] When such conduct falls outside the reach of the defense, courts need not interrogate whether the attorneys' conduct was part of their "loyal, faithful, and aggressive representation" of their clients.[14]

The Court has already established the underlying misconduct in the Plummer Adversary: Plummer breached his fiduciary duty to Debtor by, *inter alia*, fraudulently transferring millions of dollars to himself and entities he owned and/or controlled and using the Debtor to conduct fraudulent business activities.[15] K&J was directly involved in Plummer's fraudulent activities. Here, Trustee's allegations in this proceeding seek to hold K&J jointly and severally liable for its knowing participation in Plummer's fraudulent transfers and other fraudulent business activities which amounted to breaches of his fiduciary duty to Debtor. Specifically, the following are examples of Trustee's allegations concerning K&J's knowing participation and in furtherance of Plummer's conduct:[16]

- "[K&J] received a total of at least $989,894.92 of Debtor's funds from November 29, 2013 through November 28, 2017 (*i.e.*, the Transfers). Janvey Adv. DE 41, ¶ 75.

- "[A] substantial portion of the Transfers were for legal services provided to Plummer or entities in the Ventures *other than Debtor* . . . which ultimately: (1) facilitated the continuation of Plummer's fraud; and (2) bankrupted Debtor." *Id.*, ¶ 76.

- "[T]he "services" that [K&J] provided directly to Debtor in connection with trade creditor litigation were exclusively aimed at keeping trade creditors from going after the joint venture entities themselves . . . and delaying this Bankruptcy as long as

---

[13]   *See id; see also, e.g.*, *1st and Trinity Super Majority, LLC v. Milligan*, 657 S.W.3d 349, 369 (Tex. App.—El Paso 2022, no pet.) ("[T]he [Supreme Court of Texas] has identified "several nonexhaustive examples of conduct that may fall outside the reach of the attorney-immunity defense—participation in a fraudulent business scheme with a client, [and] knowingly helping a client with a fraudulent transfer to avoid paying a judgment[.]"); *McDill v. McDill*, No. 03-19-00162-CV, 2020 WL 4726634, at *9 (Tex. App.—Austin July 30, 2020, no pet.) (same); *Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 581 S.W.3d 306, 311 (Tex. App.—Dallas 2018), *aff'd*, 595 S.W.3d 651 (Tex. 2020) (same); *see also South Avis Realty, Inc. v. Neece*, No. 1:19-cv-206, 2020 WL 5028302, at *5 (S.D. Tex. Mar. 16, 2020) (same).

[14]   *See Youngkin*, 546 S.W.3d at 682.

[15]   *See Yaquinto v. Plummer, et al.*, Case No. 17-34386-SGJ-7, DE 171.

[16]   *See generally* Janvey Adv. DE 41, ¶¶ 156-168 (outlining claim for K&J's knowing participation in Plummer's breach of his fiduciary duty to Debtor, including detailing K&J's knowledge of and conduct supporting Plummer's fraudulent business schemes and fraudulent transfers).

possible while Plummer continued his fraudulent fundraising." *Id.*, ¶ 77.

- "[K&J] charged Debtor for services that allowed Plummer to protect both his ongoing fraud and his ability to set Debtor up as the debt scapegoat in this Bankruptcy." *Id.*, ¶ 82.

- "[P]lummer's goal (effectuated by [K&J's] 'representation' of Debtor) was simply to prolong (*but not prevent*) Debtor's bankruptcy so that Plummer could strap Debtor with unrepayable debt in his fraud against investors. Nonetheless, [K&J] charged Debtor (and Debtor paid [K&J]) approximately one million dollars for the privilege." *Id.*, ¶ 85.

- "Debtor was paying [K&J] for 'defense' of trade debt litigation, where it was clear that the money to pay [K&J] was money that would not be available for the creditors in this inevitable Bankruptcy." *Id.*, ¶ 111.

- "[K&J] charged Debtor to: (1) help Plummer continue the Ventures; and (2) assert baseless defenses and claims on behalf of Debtor, all of which only protected Plummer ad his fraudulent Ventures at Debtor's expense." *Id.*, ¶ 112.

- "[K&J] had knowledge that Plummer was breaching his fiduciary duty to Debtor and intended to (and did) substantially encourage, assist, and participate with Plummer in this action. For example, by 2013 . . . [K&J] knew or should have known that Plummer was obtaining funds from investors fraudulently and was misappropriating funds that were to be used to pay Debtor's creditors; and . . . [K&J] knew or should have known that Plummer was using Debtor as a shell company to be on the hook for unrepayable debt in connection with Plummer's fraudulent and failing oil and gas Ventures." *Id.*, ¶ 160.

Debtor's allegations go beyond "fraud or other misconduct"—they detail the type of conduct that the Supreme Court of Texas envisioned as beyond the scope of attorney immunity.

Nevertheless, K&J oddly insists the conduct complained of was done while discharging its professional duties to Plummer and the Ventures.[17] Paired with the Court's findings in the Plummer Adversary, K&J's admission all but confirms K&J knowingly participated in Plummer's fiduciary breach *to Debtor*. K&J cannot now hide behind the attorney immunity defense to avoid joint and several liability for its conduct.

---

[17]   *See generally* Janvey Adv. DE 72.

6

## CONCLUSION

K&J cannot satisfy the requirements for the attorney immunity defense. Debtor was a client of and in privity with K&J while K&J actively worked against Debtor's interests in favor of Plummer and the Ventures. Moreover, K&J's alleged misconduct—participating in and facilitating fraudulent transfers and other fraudulent business activities resulting in breaches of fiduciary duty to Debtor—falls outside the scope of the attorney immunity defense. Thus, the defense fails as a matter of law.

BASED ON THE FOREGOING, Trustee requests the Court grant the Motion in full and dismiss K&J's attorney immunity and litigation privilege affirmative defenses. Trustee further requests the Court to grant all other and further relief, at law or equity, to which he may be entitled.