

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed July 19, 2024**

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **TEXAS E&P OPERATING, INC.,** | § | **Case No. 17-34386-sgj7** |
|     Debtor. | § | **Chapter 7** |
| ——————————————— | § | |
| | § | |
| **ROBERT YAQUINTO, JR., as Chapter 7** | § | |
| **Trustee,** | § | |
|      Plaintiff, | § | |
| | § | |
| **v.** | § | **Adversary No. 19-03231-sgj** |
| | § | |
| **KRAGE & JANVEY, L.L.P.,** | § | |
|     Defendant. | § | |
| ——————————————— | § | |

## MEMORANDUM OPINION AND ORDER (I) DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S (A) CLAIM FOR AIDING AND ABETTING / KNOWING PARTICIPATION IN MARK PLUMMER'S BREACH OF FIDUCIARY DUTY AND (B) CONSTRUCTIVE FRAUDULENT TRANSFER CLAIMS; (II) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON CERTAIN AFFIRMATIVE DEFENSES; AND (III) GRANTING DEFENDANT'S MOTION FOR LEAVE TO DESIGNATE RESPONSIBLE THIRD PARTY [COLLECTIVELY ADDRESSING DE ## 61, 62, & 69]

## I.      <u>INTRODUCTION</u>

The above-referenced adversary proceeding ("Adversary Proceeding") involves a Chapter 7 bankruptcy trustee suing a law firm that previously represented a Chapter 7 debtor-company as well as insiders and affiliates of the debtor.  The plaintiff-trustee argues that the defendant-law firm received constructively fraudulent transfers from the debtor and also knowingly participated in breaches of fiduciary duty committed by the former principal of the Chapter 7 debtor.  This Memorandum Opinion and Order denies the defendant's request for partial summary judgment on these claims and also grants the trustee's motion for summary judgment on two of the defendant's affirmative defenses.  This Adversary Proceeding shall promptly proceed to a trial on the merits. Lastly, this Memorandum Opinion and Order additionally grants a procedural motion of the defendant-law firm: a motion to designate a responsible third party (the debtor's former owner) that might share in any ultimate liability imposed upon the law firm.

## II.      <u>UNDISPUTED FACTS AND PROCEDURAL HISTORY</u>

By way of background, for many years an individual named Mr. Mark Plummer ("Plummer") sold unregistered private placement interests in various oil and gas drilling joint ventures ("Ventures").  Texas E&P Operating, Inc. (the "Debtor")—which changed names several times during its existence—was the purported operator-entity for his Ventures.  The Debtor purportedly conducted and had full control of drilling operations for each of the Ventures and paid upfront expenses in such development and operations.  Under operating agreements, the joint Ventures (i.e., the investors therein) agreed to reimburse the Debtor for their respective share of the operating expenses.

By mid-2017, these Ventures and various affiliated businesses, including the Debtor (collectively, the "Plummer Entities") were suffering from, among other things, losses from two expensive and unsuccessful oil wells in Anderson County, Texas; the weight of dozens of lawsuits

by creditors and investors; and the 2016 expulsion of Plummer from the Financial Industry Regulatory Authority.  Facing increasing financial stress and rapidly accumulating litigation, the Debtor (but not affiliated Plummer Entities) filed for bankruptcy under Chapter 11 of the Bankruptcy Code (the "Bankruptcy Case") on **November 29, 2017 (the "Petition Date")**.

Less than two months later—on **January 18, 2018**—the late Jason Searcy ("Searcy") was appointed Chapter 11 trustee of the Debtor, at the request of the Official Committee of Unsecured Creditors ("UCC") that was appointed in the case (the UCC had expressed concern that Plummer had conflicts of interest).  Then a few months later, Searcy moved to convert the Bankruptcy Case to a Chapter 7 (citing no prospects for a reorganization), and Searcy, thereafter, served as the Chapter 7 trustee following conversion on **July 27, 2018**.    Unfortunately, Searcy died unexpectedly during the Bankruptcy Case (on **January 16, 2018**), and Robert Yaquinto, Jr. (the "Trustee" or the "Plaintiff") was thereafter appointed as successor trustee on **January 23, 2019**. For many years in the past, including the four-year period before the Petition Date (i.e., from **November 29, 2013** until **November 28, 2017**), the Defendant, the law firm of Krage & Janvey, L.L.P. ("K&J" or the "Defendant"), provided legal services for not just the Debtor but for the Plummer Entities more generally.

### A.  The Original Complaint

On the eve of the expiration of the Bankruptcy Code's statute of limitations for bringing avoidance actions (i.e., the applicable § 546(a) deadline)—on **November 27, 2019**—the Trustee filed this Adversary Proceeding, originally seeking to avoid and recover twenty-one payments totaling **$472,158.42** which were made by the Debtor to the Defendant in the roughly thirty-four months leading up to the Debtor's Petition Date.  These payments were defined in the Original Complaint as "Transfers," for purposes of one or more of the following statutes: 11 U.S.C. §§ 544,

547, 548 and 550, and the Texas Business and Commercial Code §§ 24.005(a)(1) and (a)(2).[1]  The Trustee sought to avoid and recover the Transfers under these statutes, and also reserved "the right to (i) supplement the information regarding the Transfers and any additional transfers, and (ii) seek recovery of such additional Transfers."[2]

### B.  The First Amended Complaint

Almost three years later, on **October 12, 2022**, the Trustee filed a motion for leave to amend the Original Complaint, pursuant to Federal Rule of Civil Procedure 15(a).  Among other things, the Trustee represented that he had not been able to obtain certain hard copy records from the Defendant until **June 2021** (allegedly due to the COVID pandemic) and now, based on his investigations, he had certain additional claims he wanted to pursue in this Adversary Proceeding. The Trustee noted that he had obtained a tolling agreement in **January 2022** regarding any limitations that had not yet expired as of that date.  The Trustee also noted that in **February 2022**, the parties had entered into a series of agreed motions to abate the Adversary Proceeding as they explored settlement.  The Court also notes that, on **June 9, 2022** (just four months before the Trustee moved to file the First Amended Complaint) Plummer was indicted by a grand jury in Collin County, Texas for theft, money laundering, and securities fraud in connection with three drilling Ventures—due to evidence suggesting that, from May 1, 2015 through September 18, 2020, Plummer engaged in a "scheme and continuing course of conduct" to defraud more than 170 investors out of more than $10 million.

---

[1] Tex. Bus. & Comm. Code § 24.001 et seq. (otherwise referred to as the Texas Uniform Fraudulent Transfer Act) [hereinafter TUFTA].
[2] Pl.'s Compl. 7, ¶ 16, ECF No. 1.

This Court granted leave to amend the Original Complaint in an order dated December 6, 2022. On **December 9, 2022**, the Trustee filed his First Amended Complaint, which morphed to sixty pages in length (not counting attachments—which included the Plummer criminal indictments) and added numerous ***additional transfers*** (aggregating to an ***additional*** **$517,736.50**). Some of these newly identified Transfers had allegedly occurred within two years of the Petition Date, and some had occurred between two years and four years before the Petition Date. In other words, some might be actionable under § 548 of the Bankruptcy Code, and some might be actionable under TUFTA (in each case, assuming there would be no timeliness problem under Bankruptcy Code § 546 or TUFTA).

To be clear, in the First Amended Complaint, the Trustee was for the first time—approximately five years after the Petition Date—seeking the avoidance and recovery of **$989,894.92** of total Transfers (***fifty-four Transfers in all***)—up from the original **$472,158.42** Transfers (i.e., ***twenty-one Transfers***) identified in the Original Complaint. Perhaps more significantly, ***the Trustee added four new state-law causes of action*** that certainly altered the entire tone of the Adversary Proceeding. The First Amended Complaint, in stark contrast to the Original Complaint (which was all about alleged Chapter 5 avoidable transfers), contained this highly charged narrative:

> Importantly, Plummer did not act alone in harming Debtor. This specific lawsuit arises out of the fact that, at all relevant times, the law firm of Krage & Janvey charged Debtor for legal "services" that ultimately helped Plummer perpetuate his fraud and ensure Debtor's bankrupt fate. Over the years, Krage & Janvey was put on repeated notice that: (1) Plummer's fundraising activities were fraudulent; and (2) Plummer was setting up the increasingly insolvent Debtor to be holding the bag of debt at the end. . . . Krage & Janvey, who acted as a de facto general counsel for Plummer, was aware of it all and represented Plummer, Debtor, and the Ventures in most of it (and almost always at Debtor's expense). By November 2013, Krage & Janvey would have (or should have) known that Plummer was not running a legitimate oil and gas business and, therefore, was using Debtor to incur costs Plummer knew would not be repaid. . . . To be clear, Krage & Janvey was not a

random, arms-length vendor for Plummer or the Ventures.  Krage & Janvey was a critical part of Plummer's inner circle and, through its decade-long representation of Plummer and the Ventures, had more knowledge about Plummer's actions than arguably any person or entity other than Plummer himself.  In other words, Krage & Janvey was much too close for far too long to credibly feign ignorance now.[3]

The new state-law claims were as follows: (1) money had and received and/or unjust enrichment (obtained by fraud, duress, or the taking of an undue advantage of the Debtor); (2) **aiding and abetting / knowing participation in Plummer's breach of fiduciary duty to the Debtor**; (3) professional negligence and/or malpractice; and (4) negligent retention and/or supervision.  The Trustee outlined the circumstances and allegations as follows:

> At the time of filing his Original Complaint, Trustee's investigation to uncover potential claims against Krage & Janvey related to Krage & Janvey's representation of Debtor was in its infancy.  This Amended Complaint is a result of the development of that investigation, including documents that were obtained by Trustee in the course of informal discovery, such as Debtor's hard copy files from Krage & Janvey.
>
> ***
>
> In effect, Krage & Janvey operated like an outside general counsel for Plummer and the Ventures, handling a constant mix of litigation, regulatory matters, and business matters—basically anything and everything Plummer wanted Krage & Janvey to do.  This included advising Plummer on new offerings in the Ventures and reviewing and revising offering documents.  However, no matter what Krage & Janvey did, it always prioritized Plummer's individual interests in order to help Plummer achieve his "long-term objectives."[4]

The Trustee also, for the first time in the First Amended Complaint, referred to the Defendant as an "insider."[5]

---

[3] Pl.'s First Am. Compl. 5–7, ¶¶ 3–5, 8, ECF No. 41.
[4] Pl.'s First Am. Compl. 10, ¶ 27; p. 13, ¶ 38, ECF No. 41.
[5] Pl.'s First Am. Compl. 42, ¶¶ 109–10; p. 44, ¶ 118; p. 45, ¶ 126; p. 47, ¶ 134; p. 49, ¶ 141, ECF No. 41.

The Trustee for the first time alleged that "Debtor has suffered losses in the millions that were proximately caused by Krage & Janvey 's wrongful conduct described herein." The Trustee also sought punitive damages against the Defendant. In summary, the Adversary Proceeding morphed, in three-plus years, from a $472,158.42 avoidance action into a multi-faceted, multi-million-dollar lawsuit, essentially seeking to hold the Debtor's former law firm accountable for representing a troublesome client—i.e., one that they allegedly had reason to know was a fraudster.

### C. This Court's Order Dated April 19, 2023, Granting in Part and Denying in Part Krage & Janvey's Motion to Dismiss

Last year, K&J filed a Rule 12(b)(6) motion to dismiss the First Amended Complaint. This Court ruled, in a forty-six-page Memorandum Opinion and Order, dated April 19, 2023 (the "Order on Rule 12(b)(6) Motion"), that some of the newly added avoidance actions against Defendant should survive, and some were time-barred.[6] The Court also ruled that three of the four newly added state-law claims should be dismissed as time-barred. Specifically, the Court allowed the "aiding and abetting / knowing participation in Plummer's breach of fiduciary duty to the Debtor" to survive. Accepting every allegation in the First Amended Complaint as true, the Court determined that the "discovery rule," as explained under Texas law, would potentially make the knowing participation claim still timely.

---

[6] Mem. Op. & Order Granting in Part & Den. in Part Def. Krage & Janvey, L.L.P.'s Rule 12(b)(6) Mot. Dismiss, *Yaquinto v. Krage & Janvey*, *(In re Tex. E&P Operating, Inc.)*, Ch. 7 Case No. 17-34386-sgj-7, Adv. No. 19-03231-sgj, 2023 WL 3012268 (Bankr. N.D. Tex. Apr. 19, 2023).

### D.  Previous Related Litigation:  The CBS Radio and Plummer Adversaries

There are two related adversary proceedings in the underlying bankruptcy case that are relevant here—only because both parties have made arguments that findings therein have collateral estoppel effect in this Adversary Proceeding.

*__The CBS Radio Adversary.__*  The first one is *Yaquinto v. CBS Radio, Inc.*, *(In re Tex. E&P Operating, Inc.)*, Ch. 7 Case No. 17-34386-sgj-7, Adv. No. 19-03226-sgj (Bankr. N.D. Tex.) (the "CBS Radio Adversary").  On November 26, 2019, the Trustee filed a complaint against CBS Radio, Inc. and affiliated entities (which was amended on July 14, 2020).  The theory of the CBS Radio Adversary was that Plummer solicited his potential investors, in part, through advertisements broadcasted on the KRLD radio station of CBS Radio.[7]  The Trustee sought to avoid payments made to CBS Radio for these advertising services by the Debtor as fraudulent transfers.[8]

The CBS Radio defendants were successful in that fraudulent transfer litigation after a four-day trial.  This Court held that the Trustee failed to meet his burden in proving his actual and constructive fraudulent transfer claims and denied all relief requested by the Trustee.[9]  K&J argues that the Court's reasoning set forth below in the CBS Adversary should have collateral estoppel effect with regard to the payments made to K&J:

---

[7] Pl.'s First Am. Compl. 2–3, ¶ 2, ECF No. 23, *Yaquinto v. CBS Radio, Inc.*, Adv. No. 19-03226-sgj.
[8] Pl.'s First Am. Compl. 2–3, ¶¶ 2–3, ECF No. 23, *Yaquinto v. CBS Radio, Inc.*, Adv. No. 19-03226-sgj.  The Trustee also sought to avoid the advertising services payments as preferential transfers, and also asserted a tort claim under state law for aiding and abetting / knowing participation in breach of fiduciary duty.  Those claims were voluntarily dismissed.
[9] *See* Findings of Fact, Conclusions of Law, & Order Granting Def.'s Rule 52(C) Mot. J. on Partial Findings, *Yaquinto v. CBS Radio, Inc.*, *(In re Tex. E&P Operating, Inc.)*, Ch. 7 Case No. 17-34386-sgj-7, Adv. No. 19-03226-sgj, 2022 WL 2719472, at *14–15 (Bankr. N.D. Tex. July 13, 2022).

The Debtor and Non-Debtor Affiliates worked in concert and each role served by one of the entities provided value to all of the entities involved. The Trustee has not provided evidence that the Debtor did not in some way benefit from the sale of joint venture interests in its enterprise or that revenue did not flow to the Debtor from these interests advertised on KRLD. The court had no way to put a dollar amount on the indirect benefit the advertising provided to the Debtor. In the absence of any evidence to the contrary, it seems apparent that the KRLD contracts were entered into at arm's length and at market rates and the investments generated from those advertisements indirectly benefited the Debtor. Accordingly, the court concludes that the Trustee has not met his burden in showing the transfers to KRLD were not for "reasonably equivalent value" to the Debtor.[10]

***The Plummer Adversary.***    The second related adversary proceeding is *Yaquinto v. Plummer (In re Tex. E&P Operating, Inc.)*, Ch. 7 Case No. 17-34386-sgj-7, Adv. No. 19-03237-sgj (Bankr. N.D. Tex.) (the "Plummer Adversary"). Back in November 2019, the Trustee filed a complaint against Plummer individually and his non-debtor affiliated entities. The Trustee asserted numerous causes of action under applicable bankruptcy and non-bankruptcy law.[11] Relevant here, one of the claims against Plummer was for breach of fiduciary duty under Texas state law. The Trustee originally requested a finding that the Debtor and its non-debtor affiliates operated as a single business enterprise.[12] But the Trustee voluntarily dismissed that requested relief when moving for an entry of judgment.[13]

Plummer originally defended the Plummer Adversary vigorously and answered the complaint. But eventually, after failure to comply with several court orders, Plummer effectively surrendered. The Trustee requested an entry of judgment which this Court granted on March 1,

---

[10] Findings of Fact, Conclusions of Law, & Order Granting Def.'s Rule 52(C) Mot. J. on Partial Findings, *Yaquinto v. CBS Radio, Inc.*, Adv. No. 19-03226-sgj, 2022 WL 2719472, at *14.
[11] *See* causes of action asserted and remedies requested in the Trustee's amended complaint at Pl.'s First Am. Compl. 49–73, ECF No. 35, *Yaquinto v. Plummer*, Adv. No. 19-03237-sgj.
[12] *See* "Count 9: Single Business Enterprise" at Pl.'s First Am. Compl. 63–64, ECF No. 35, *Yaquinto v. Plummer*, Adv. No. 19-03237-sgj.
[13] *See* Pl.'s Am. Mot. Entry J. 5, ECF No. 165, *Yaquinto v. Plummer*, Adv. No. 19-03237-sgj.

2024, and presented uncontested evidence at a hearing.[14]  In its ruling in the Plumer Adversary,

the Court emphasized that "this is not a routine default judgment proceeding where the defendant

either fails to appear or participate in the matter.  Rather, this matter was vigorously litigated by

the Defendants for over two years."[15]  As part of its findings of fact and conclusions of law, the

Court expressly held the following:

> Mark Plummer, as the Debtor's President, **owed the Debtor a fiduciary duty.  He
> breached that fiduciary duty** by: mismanaging the Debtor, paying himself
> excessive compensation, misappropriating funds for his own personal use, causing
> the Debtor to fraudulently transfer millions of dollars to himself and entities that he
> owned and/or controlled, causing the Debtor to pay millions of dollars of debt
> belonging to himself and entities that he owned and/or controlled for no
> consideration, saddling the Debtor with millions of dollars of debt belonging to
> himself and entities that he owned and/or controlled, using the Debtor to conduct
> fraudulent business activities and to defraud investors out of millions of dollars.
> Furthermore, professional fees incurred by the Trustee in this Bankruptcy Case and
> that the Debtor would not have incurred but for Plummer's breaches total
> $6,141,382.60.  Costs incurred by the Trustee total $287,470.94.  Therefore, as a
> result of Plummer's breaches of his fiduciary duties, the Debtor incurred damages
> in an amount of $36,741,116.38.[16]

Among other things, the Trustee alleged in his Amended Motion for Entry of Judgment

against Plummer that, "rather than paying creditors, Plummer used the Debtor's funds to pay his

personal expenses, including his **personal legal fees and the legal fees of other entities**.  Then

after thoroughly looting the Debtor and saddling it with millions of dollars in debt belonging to

other entities, Plummer placed the Debtor into bankruptcy."[17]  When entering judgment for the

Trustee, the Court found that "the Amended Motion was unopposed and all allegations contained

---

[14] *See* Order Granting Pl.'s Am. Mot. Entry J., ECF No. 171, *Yaquinto v. Plummer*, Adv. No. 19-03237-sgj.
[15] Order Granting Pl.'s Am. Mot. Entry J. 6, ¶ H, ECF No. 171, *Yaquinto v. Plummer*, Adv. No. 19-03237-sgj.
[16] Order Granting Pl.'s Am. Mot. Entry J. 7, ¶ 4, ECF No. 171, *Yaquinto v. Plummer*, Adv. No. 19-03237-sgj (emphasis added).
[17] Pl.'s Am. Mot. Entry J. 9, ¶ 27, ECF No. 165, *Yaquinto v. Plummer*, Adv. No. 19-03237-sgj.

therein are deemed admitted, true and correct, and established . . . ."[18]  The findings of fact and conclusions of law from the Plummer Adversary that are alleged to be relevant in this case can be summarized as: (1) Plummer is liable for over $36 million in damages for breach of fiduciary duty against the Debtor; and (2) the Debtor's assets were used to pay Plummer's personal legal expenses and those of other non-debtor entities.  There was no specific finding that the Plummer Entities operated as a common enterprise.

### III.    **JURISDICTION**

Bankruptcy subject-matter jurisdiction exists in this Adversary Proceeding pursuant to 28 U.S.C. § 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B), (C), (H) and (O); thus, the Court has statutory authority to enter final orders and judgments.  Finally, the Defendant filed a proof of claim in the main Bankruptcy Case, in the amount of $682,643.31, for unpaid legal services dating back to year 2016 [Claim # 102].  This removes any doubt regarding the Bankruptcy Court's constitutional authority to enter final orders and judgments in this Adversary Proceeding.

### IV.    **LEGAL STANDARDS**

The Court is presented with three motions that are each ruled on in this Memorandum Opinion and Order.

    (A) K&J moves for summary judgment on the Trustee's (i) constructive fraudulent transfer claims, as well as (ii) the surviving state-law aiding and abetting / knowing

---

[18] Order Granting Pl.'s Am. Mot. Entry J. 5, ¶ G, ECF No. 171, *Yaquinto v. Plummer*, Adv. No. 19-03237-sgj.

participation in breach of fiduciary duty claim.[19]    On the constructive fraudulent transfer claims, K&J argues that its legal services paid for by the Debtor provided reasonably equivalent value to the Debtor, based on undisputed facts.    On the state-law knowing participation claim, K&J re-urges a statute of limitations defense (that was extensively addressed in this Court's Order on Rule 12(b)(6) Motion), and also invokes attorney-immunity and litigation-privilege defenses.

(B)   The Trustee moves for summary judgment on K&J's attorney-immunity and litigation-privilege defenses.[20]

(C)   K&J requests leave to designate Plummer as a responsible third party under a state-law statute known as the Texas Proportionate Responsibility Statute (as later further defined)—to the extent the Trustee prevails in this Adversary Proceeding on its state-law knowing participation in breach of fiduciary duty claim.[21]

As for the timeliness argument made by K&J with respect to the state-law knowing participation claim, this Court revisits below, to some extent, the extensive analysis undertaken in its Order on Rule 12(b)(6) Motion issued April 19, 2023.    The Court will consider whether the summary judgment evidence should change in any way the conclusion the Court made earlier—to the effect that the discovery rule under applicable state law allows the Trustee's claims to survive from what otherwise might be a timeliness problem.

---

[19] *See* Def.'s Mot. Partial Summ. J. & Br. Supp., ECF Nos. 62, 63.  The Trustee's response, a sworn declaration (filed by the Trustee regarding the timeliness issues), and K&J's reply are docketed at ECF Nos. 73, 74, and 78, respectively.
[20] *See* Pl.'s Mot. Summ. J. on Certain Affirmative Defenses, ECF No. 61.  K&J's response and the Trustee's reply are docketed at ECF Nos. 72 and 77, respectively.
[21] *See* Def.'s Mot. for Leave to Designate Responsible Third Party & Br. Supp., ECF No. 69.  The Trustee's objection and K&J's reply are docketed at ECF Nos. 75 and 80, respectively.

As for adjudicating the two summary judgment motions more generally, Federal Rule of Civil Procedure 56 permits an entry of summary judgment[22] whenever a movant establishes that the pleadings, affidavits, and other evidence available to the court show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Supreme Court has instructed that Rule 56 "mandates the entry of summary judgment, after an adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.*

When a defendant moves for summary judgment on a plaintiff's claim, it may satisfy its summary-judgment burden in one of two ways. The defendant may (1) submit summary-judgment evidence that negates the existence of an essential element of the plaintiff's claim; or (2) show that no evidence supports an essential element of the plaintiff's claim. *Celotex*, 477 U.S. at 323–25. If the movant-defendant makes the required initial showing, the burden then shifts to the plaintiff to show there is a genuine dispute of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

Similarly, a plaintiff moving for summary judgment on a defendant's affirmative defense may satisfy its burden by (1) submitting evidence that negates an essential element of the defendant's defense; or (2) showing that the defendant's evidence is insufficient to establish an essential element of its defense. If the plaintiff meets this initial burden, the defendant must then

---

[22] A bankruptcy court may grant summary judgment under Federal Rule of Civil Procedure 56, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056.

raise a genuine dispute of material fact.  A genuine issue of material fact exists when the evidence

is such that a reasonable fact finder could return a verdict for the nonmovant.  *Id.* at 248.

When considering the summary judgment record, courts may not "weigh the evidence or

make credibility determinations."  *Hacienda Recs., L.P. v. Ramos*, 718 F. App'x 223, 234 (5th Cir.

2018).  However, the courts must decide what evidence warrants consideration.  In doing so, the

facts must be viewed "in the light most favorable to the nonmoving party," but "only if there is a

'genuine' dispute as to those facts."  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing Fed. R. Civ.

P. 56(c)).

Lastly, the mere existence of a factual dispute is not enough to create a *genuine* and

*material* dispute such that the nonmoving party may survive an otherwise properly supported

summary judgment motion.  *See id.* (citing *Liberty Lobby*, 477 U.S. at 247–48).  The main question

is "whether the nonmovant could, on the strength of the record evidence, carry the burden of

persuasion with a reasonable jury."  *Armstrong v. City of Dallas*, 997 F.2d 62, 66 n.12 (5th Cir.

1993) (citing *Liberty Lobby*, 477 U.S. at 251).

Finally, Chapter 33 of the Texas Civil Practice and Remedies Code[23] governs a motion to

designate a responsible third party.  Texas common law also may apply.

## V.    THE CONSTRUCTIVE FRAUDULENT TRANSFER CLAIMS

As noted earlier, the Defendant is a law firm that provided legal services to the Debtor and

to Debtor's insiders and affiliates.  The Plaintiff seeks to avoid payments made from the Debtor to

the Defendant for these legal services as constructively fraudulent transfers under TUFTA §

---

[23] *See* Tex. Civ. Prac. & Rem. Code §§ 33.001–33.017.

24.005(a)(2), via Bankruptcy Code § 544(b), and also under Bankruptcy Code § 548(a)(1)(B)

and—in either case—to recover the payments and/or their value under Bankruptcy Code § 550.

The Defendant has moved for summary judgment on the constructive fraudulent transfer claims,

but the Plaintiff has not.  As the movant, K&J bears the initial burden of showing that an essential

element of the Trustee's claim fails, or that the Trustee has provided no evidence to support an

essential element—after which the Trustee must raise a genuine dispute of material fact for his

claim to survive.

Section 548(a)(1)(B) permits a trustee to avoid a constructively fraudulent transfer, which

is one that occurs within two years of the petition date, where the debtor (1) received "less than a

reasonably equivalent value in exchange for such transfer or obligation;" and (2) "was insolvent

on the date that such transfer was made or such obligation was incurred . . . ."  TUFTA §§

24.005(a)(2) and 24.006 (again, available to the Plaintiff here under § 544(b)) require the same

elements for avoiding a constructively fraudulent transfer—but provide a four-year look back

period.[24]

"Reasonably equivalent value" is not defined in the Bankruptcy Code, but "value" is.

"Value" is defined as, among other things: "satisfaction or securing of a present or antecedent debt

*of the debtor* . . . ."[25]  Determining "reasonably equivalent value" is left to the courts.  The Supreme

Court has described "reasonably equivalent value" as "value that is substantially comparable to

the worth of the transferred property."  *BFP v. Resolution Tr. Corp.*, 511 U.S. 531, 548 (1994).  In

addition, under the "indirect benefit" rule, the debtor need not receive a benefit directly to

---

[24] Tex. Bus. & Comm. Code § 24.010(a)(1)–(2).
[25] 11 U.S.C. § 548(d)(2)(A) (emphasis added).

constitute value received.  *See Halperin v. Wills (In re Senior Care Ctrs., LLC)*, Ch. 11 Case No. 18-33967-sgj11, Adv. No. 20-03178-sgj, 2023 WL 7137097, at *14–16 (Bankr. N.D. Tex. Oct. 29, 2023) (collecting cases).

In this Adversary Proceeding, the issue boils down to this key undisputed fact.  The Debtor paid for legal services ***not simply provided to it but also provided to Plummer and other Debtor insiders or affiliates***.  K&J's contention that the Debtor received reasonably equivalent value for legal services is partially rooted in the argument that the Debtor received an indirect benefit from legal services provided to Plummer and his related non-debtor entities.

K&J asserts that it is entitled to summary judgment because the legal services provided to affiliated entities (non-debtor affiliates and Plummer) were within the Debtor's "common enterprise."  Thus, K&J asserts that payments were essentially made to reduce an antecedent debt of the Debtor to K&J.  If this is the correct analysis, then the Trustee may be unable to demonstrate that the Debtor did not receive reasonably equivalent value in the form of legal services—an essential element of his claim.  *See Jalbert v. Wessel GmbH (In re La. Pellets, Inc.)*, 838 F. App'x 45, 50 (5th Cir. 2020) ("When a debtor makes a payment on antecedent debt and receives a dollar-for-dollar reduction of that debt . . . the debtor by definition receives reasonably equivalent value—indeed, *exactly* equivalent value . . . ." (citation omitted)).

Interestingly, the findings of fact and conclusions of law ***in the prior litigation*** (i.e., the CBS Adversary and the Plummer Adversary) are ***the only summary judgment evidence offered by either K&J or the Trustee*** as to the constructive fraudulent transfers claims.  Both parties ask the Court to apply collateral estoppel in their favor.

Specifically, K&J argues that this Court's decision in the prior ***CBS Radio Adversary*** calls for the application of non-mutual defensive collateral estoppel.  In the CBS Radio Adversary

(where K&J was *not* a party), this Court held that the trustee (the same plaintiff-trustee here) failed to meet his burden of showing that certain payments to the KRLD radio station in exchange for advertising and airtime were actually or constructively fraudulent.[26]  On constructive fraud, the Court concluded that the Debtor received at least some indirect benefit for the payments made on behalf of its non-debtor affiliates, which payments were at market rates and based on arm's length transactions.  K&J requests a Rule 56(g)[27] finding that "(1) the Debtor and its affiliated entities constitute a single enterprise as they acted in concert; and (2) that the Debtor received value for the services K&J provided to the enterprise and any of its entities."[28]

Collateral estoppel is proper only when: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision."  *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 290 (5th Cir. 2005).  Whether a party was included (mutual) or not included (non-mutual) in the prior litigation is important in weighing these factors.

To defend against K&J's argument on this issue, the Trustee similarly asks the Court to apply collateral estoppel—but from the related ***Plummer Adversary*** where the Trustee obtained a judgment against Plummer and several of his oil and gas entities.  Yet K&J was not a party to that proceeding, and non-mutual offensive collateral estoppel is rarely permitted in the federal courts—especially when its use would be unfair to a defendant.  *See Parklane Hosiery Co. v. Shore*, 439

---

[26] Findings of Fact, Conclusions of Law, & Order Granting Def.'s Rule 52(C) Mot. J. on Partial Findings, *Yaquinto v. CBS Radio, Inc.*, Adv. No. 19-03226-sgj, 2022 WL 2719472, at *14.
[27] Federal Rule of Civil Procedure 56(g) provides:  "If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact—including an item of damages or other relief — that is not genuinely in dispute and treating the fact as established in the case."
[28] *See* Def.'s Br. Supp. Def.'s Mot. Partial Summ. J. 31, ECF No. 63.

U.S. 322, 330–31 (1979) (although permitting offensive use of collateral estoppel in that instance, generally discouraging its use where it would be unfair to a defendant because "offensive use of collateral estoppel does not promote judicial economy in the same manner as defensive use does").

Regardless, K&J correctly identifies that the issues in the Plummer Adversary were not fully litigated and determined as to K&J.  But in any event, the Court does not need to deeply analyze the Trustee's collateral estoppel assertion (as to the Plummer Adversary) which he makes in counter-argument to K&J's own collateral estopped argument.  This is because K&J's attempt to invoke the same doctrine (as to the CBS Radio Adversary) stretches the doctrine of collateral estoppel too far.  Moreover, K&J misstates this Court's findings in the CBS Radio Adversary to reach its desired result.

It should be noted that the Trustee's theory is that the Debtor received ***no consideration*** for legal services payments made for the benefit of its non-debtor affiliates ***and/or Mr. Plummer individually***.  In the CBS Radio Adversary, the Court did not conclusively determine that the Debtor and its affiliated non-debtor Plummer entities constituted a single enterprise—nor was the Court's ruling in the context of legal services.  The Court merely found that the Debtor received some indirect benefit from its payments for the advertising services, which was sufficient to defeat the plaintiff-trustee's constructive fraudulent transfer claims asserted there.  Nowhere in the opinion did this Court expressly state or imply that the Debtor, its affiliates, ***and Plummer*** constituted a common enterprise.  Moreover, advertising services, that were the subject of actual litigation in the CBS Radio Adversary, are far from identical to legal services (which would seem to be far more personalized to a specific client), so as to warrant collateral estoppel's application.

As for the Plummer Adversary, although the Trustee originally requested a finding in it that the Debtor and its affiliates operated as a single business enterprise, that relief was voluntary

dismissed before an entry of judgment.  Moreover, in the Trustee's original request for that relief, ***Plummer individually was not included.***  In any event, K&J does not argue that collateral estoppel should apply in its favor as to the Plummer Adversary—it only argues for the doctrine as to the CBS Radio Adversary.  In fact, K&J argues ***against*** collateral estoppel as to the Plummer Adversary (at least in the hands of the Trustee offensively).

This is all somewhat confusing but, to be clear, collateral estoppel does not apply here with regard to the findings from either the CBS Radio Adversary or the Plummer Adversary.  That said, just because collateral estoppel does not conclusively apply to either prior adversary proceeding does not mean that findings from the Plummer Adversary are inadmissible as evidence here.  The same goes for the CBS Radio Adversary.  Rejecting collateral estoppel's application merely requires re-litigation of those issues here, and both parties can use both cases to their advantage.  For instance, a fact finder in this Adversary Proceeding could consider the relevant findings from the Plummer Adversary as one piece of evidence when considering whether the Trustee has met his burden here.  Those conclusive findings, which were extensively litigated, include that Plummer caused the Debtor "to pay millions of dollars of debt belonging to himself and entities that he owned and/or controlled for no consideration, saddling the Debtor with millions of dollars of debt belonging to himself and entities that he owned and/or controlled."[29]  Those debts incurred by Plummer included personal legal fees and legal fees of non-debtor entities that were paid to K&J.[30]  These findings are admissible evidence here.  Thus, K&J's contention that the Trustee has failed to raise a genuine dispute as to a material fact necessary to defeat K&J's

---

[29] Order Granting Pl.'s Am. Mot. Entry J. 7, ¶ 4, ECF No. 171, *Yaquinto v. Plummer*, Adv. No. 19-03237-sgj.
[30] Pl.'s Am. Mot. Entry J. 9, ¶ 27, ECF No. 165, *Yaquinto v. Plummer*, Adv. No. 19-03237-sgj.

motion is not meritorious.  The Trustee has provided ample evidence in the form of prior findings that a fact finder could consider in this case.  Furthermore, even though K&J has not received the Rule 56(g) finding that it seeks herein, that does not resolve the issue regarding whether the Debtor received reasonably equivalent value in connection with the payments it made for legal services provided by K&J to Plummer individually.  At trial, K&J may be able to show that the Debtor received a direct or indirect benefit from all legal services payments made to K&J to defeat the required element (for which the Trustee bears the burden of proof at trial) that the Debtor received less than reasonably equivalent value for the transfers.  But the Trustee is entitled to his day in court based on the current record.

To be clear, K&J has offered no summary judgment evidence other than the Court's CBS Radio Adversary findings and conclusions to establish that it is entitled to judgment on the Trustee's constructive fraudulent transfer claims.  These do not establish that there is no genuine issue of disputed material fact such that it is entitled to judgment as a matter of law.  Accordingly, the Trustee's constructive fraudulent transfer claims will move forward to trial.

## VI.    THE STATE-LAW KNOWING PARTICIPATION IN BREACH OF FIDUCIARY DUTY CLAIM

As mentioned earlier, the First Amended Complaint (filed with leave on October 12, 2022), in contrast to the Original Complaint herein (filed November 27, 2019), asserted for the first time the state-law claim that K&J knowingly participated in Plummer's breach of fiduciary duty to the Debtor and that K&J is liable for injuries for the same.  As a reminder, the Original Complaint had only asserted avoidance actions (i.e., fraudulent transfer claims).

### A.  The Statute of Limitations Defense

In K&J's earlier motion to dismiss (which this Court ruled on in its forty-six-page Order on Rule 12(b)(6) Motion, dated April 19, 2023), K&J argued that this claim was time-barred as a

matter of law.  This Court extensively analyzed this argument, providing a detailed timeline of relevant dates, and ultimately decided the claim should not be deemed time-barred.  In short, the Court considered many factors, including that the original trustee in this bankruptcy case had unexpectedly died several months into his tenure; that the Trustee also was not given access to K&J's files for a lengthy period of time, due to COVID-19 closures; and that there was also a brief period with a tolling agreement in place.  In its analysis, this Court noted that § 108 of the Bankruptcy Code was of no particular relevance to the facts before the Court, and that Texas law would generally provide for a four-year statute of limitations, after the cause of action accrued, for bringing a claim for knowing participation in a breach of fiduciary duty.  *See* Tex. Civ. Prac. & Rem. Code § 16.004(a)(5).  Here, any tortious acts of K&J would have needed to occur during the employment of K&J by the Debtor, which employment terminated on the Petition Date (November 29, 2017).  Accepting all the allegations in the First Amended Complaint as true, the statute of limitations for knowing participation in a breach of fiduciary duty would seem to have expired, at the latest, under state law, on November 29, 2021 (i.e., four years after the Petition Date).  Notably, this was a full two months before a tolling agreement came into effect on January 31, 2022—thus, the tolling agreement preserved nothing—and Trustee filed the knowing participation claim on December 9, 2022.

At first blush, the claim would appear to have been untimely.  But this Court declined to dismiss the knowing participation claim in the Order on Rule 12(b)(6) Motion because the Trustee raised the "discovery rule" as applicable here.  Under this exception in Texas law, a cause of action does not accrue until the plaintiff "knew or in the exercise of reasonable diligence should have known of the wrongful act and resulting injury." *Janvey v. Suarez*, 978 F. Supp. 2d 685, 708 (N.D. Tex. 2013); *see also HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998) (holding the

discovery rule shifts the date of the "legal injury" from the time the wrongful action occurred to the time when "[plaintiff] knew or, exercising reasonable diligence, should have known of the facts giving rise to a cause of action").  The Trustee has noted that the Supreme Court of Texas has recognized that, when a fiduciary relationship exists (including an attorney-client relationship), the discovery rule applies.  *See, e.g.*, *Comput. Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996); *S.V. v. R.V.*, 933 S.W.2d 1, 8 (Tex. 1996); *Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex. 1988) (holding that fiduciary duty justified the discovery rule).  This is because a person to whom a fiduciary duty is owed is either unable to inquire into the fiduciary's actions or is unaware of the need to do so.  *S.V.*, 933 S.W.2d at 8.  As a result, Texas courts have held that the discovery rule categorically applies to claims in which a fiduciary relationship exists.  *See Willis*, 760 S.W.2d at 645.

In its Order on Rule 12(b)(6) Motion, this Court determined that application of the discovery rule here is difficult—as far as when the injury should have been discovered so as to start the time running on bringing a knowing participation claim.  The question is always whether a plaintiff had knowledge of "facts, conditions, or circumstances that would cause a reasonably prudent person to make an inquiry that would lead to discovery of the cause of action."  *Estate of Jobe v. Berry,* 428 S.W.3d 888, 898–99 (Tex. App.—Texarkana 2014, no pet.) (quoting *Trousdale v. Henry*, 261 S.W.3d 221, 234 (Tex. App.—Houston [14th Dist.] 2008, pet. denied)).  The Court determined in its Order on Rule 12(b)(6) Motion that there were several dates to which one might reasonably apply the discovery rule in this case—and that each of those dates occurred within four years of the filing of the First Amended Complaint.  Thus, the Court did not dismiss the knowing participation claim as time-barred.

Now, at this summary judgment stage, the Trustee has filed a sworn declaration regarding the records he inherited when he became successor trustee in the underlying Bankruptcy Case.[31] He describes how the prior trustee had obtained the Debtor's computer servers, but the Trustee was not able to gain access to all financial records and information on those servers for several months.  The declaration states that the files were ultimately voluminous, and it took months to realize that the bankruptcy itself was a "legal injury" resulting from a fraudulent scheme and Plummer's breach of fiduciary duty.  The Trustee avers that June 2021 was the first time, due to COVID-19, that K&J permitted the Trustee to review its files and, before that, K&J would not at least provide the Trustee with electronic files.

With this declaration, the Trustee has raised a material, disputed fact issue as to the application of the discovery rule and thus whether the knowing participation claim was timely.  Accordingly, K&J's motion for summary judgment on this claim must be denied as this claim is not deemed time-barred as a matter of law.

### B.  The Attorney-Immunity Defense

Next, having determined that the state-law knowing participation claim survives K&J's timeliness argument at this summary judgment stage, the Court turns to the Trustee's request for summary judgment, pursuant to Bankruptcy Rule 7056, on certain affirmative defenses asserted by K&J.  The Trustee seeks a declaration as a matter of law that K&J's attorney-immunity and litigation-privilege defenses do not apply to the knowing participation claim.  Notably, K&J is no

---

[31] *See* Yaquinto Decl., ECF No. 74.

longer pressing the litigation-privilege defense—it only argues under the attorney-immunity doctrine.[32]

K&J specifically claims that the attorney-immunity defense applies here to the Trustee's claims as a matter of law because K&J is comprised of licensed attorneys, which K&J contends gives it immunity from civil claims by other parties for any actions or omissions K&J took representing the Debtor and its affiliates (or Plummer).[33]   The Trustee argues that the attorney-immunity defense is unavailable when an attorney participates in a fraudulent business scheme with his client.[34]   In addition, the Trustee asserts that the attorney-immunity defense is inapplicable here because the Trustee is not in the role of a non-client third party.[35]   The Court agrees with the Trustee—the attorney-immunity defense is not available to K&J.

"Attorney immunity is an affirmative defense." *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015).   Texas common law originally developed the defense when attorneys were sued by non-clients under negligence theories in connection with the attorney's representation of a client.   *See Barcelo v. Elliott*, 923 S.W.2d 575, 577 (Tex. 1996) (reasoning that attorneys owe no professional duties to third parties who bring negligence suits for actions taken by the attorney while representing his or her client).   Texas courts have further developed the attorney-immunity doctrine to preclude liability to non-clients to broadly encourage "loyal, faithful, and aggressive

---

[32] In K&J's response to the Trustee's motion for summary judgment, it states that "Defendant does not contest Plaintiff's Summary Judgment Motion as to the litigation-privilege defense so long as Plaintiff is not claiming that Defendant has any liability to Plaintiff for any alleged defamatory or other statements or communications made by Defendant during or in connection with any judicial proceedings in which Defendant was representing Debtor, Plummer, or any of their affiliates."  Def.'s Resp. to Pl.'s Mot. Summ. J. 8 n.9, ECF No. 72.  The Trustee has stated no claim for defamation or related causes of action.

[33] *See* Def.'s Resp. to Pl.'s Mot. Summ. J. 2, ¶ 2, ECF No. 72.

[34] Pl.'s Mot. Summ. J. on Certain Affirmative Defenses 4, ¶ 12, ECF No. 61.

[35] *See* Pl.'s Mot. Summ. J. on Certain Affirmative Defenses 4, ¶ 13, ECF No. 61.

representation by attorneys employed as advocates."[36]  In developing the doctrine, the Supreme

Court of Texas stated the general rule that "attorneys are immune from civil liability to **non-clients**

'for actions taken in connection with representing a client in litigation.'"[37]  The doctrine has been

recently confirmed to include non-litigation representation as well.  *See Troice v. Greenberg

Traurig, L.L.P.*, 921 F.3d 501, 506 (5th Cir. 2019) (making an *Erie* guess that "the Supreme Court

of Texas would apply the attorney-immunity doctrine in the non-litigation context," because the

issue had yet to be decided by Texas' highest court); *Haynes and Boone, LLP v. NFTD, LLC*, 631

S.W.3d 65, 79 (Tex. 2021) (confirming that "attorney immunity applies to claims based on conduct

outside the litigation context").

The Supreme Court of Texas articulated the standard for attorney immunity in *Haynes and

Boone, LLP v. NFTD, LLC*.  The defense's scope is based on the "kind" of conduct that an attorney

engages in.

> [A]ttorney immunity protects an attorney against a non-client's claim when the
> claim is based on conduct that (1) constitutes the provision of "legal" services
> involving the unique office, professional skill, training, and authority of an attorney
> and (2) the attorney engages in to fulfill the attorney's duties in representing the
> client within an adversarial context in which the client and the non-client do not
> share the same interests and therefore the non-client's reliance on the attorney's
> conduct is not justifiable.[38]

But the attorney-immunity defense is not absolute.  "When an attorney personally

participates 'in a fraudulent business scheme with his client,' as opposed to on his client's behalf,

---

[36] *Byrd*, 467 S.W.3d at 481 (quoting *Mitchell v. Chapman*, 10 S.W.3d 810, 812 (Tex. App.—Dallas 2000, pet. denied)).
[37] *Id.* (emphasis added) (first quoting *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 405 (Tex. App.—Houston [1st Dist.] 2005, pet. denied); then citing *Toles v. Toles*, 113 S.W.3d 899, 910 (Tex. App.—Dallas 2003, no pet.); and then citing *Renfroe v. Jones & Assocs.*, 947 S.W.2d 285, 287–88 (Tex. App.—Fort Worth 1997, pet. denied)).
[38] *NFTD, LLC*, 631 S.W.3d at 78.

the attorney 'will not be heard to deny his liability' because 'such acts are entirely foreign to the duties of an attorney.'"  *NFTD, LLC*, 631 S.W.3d at 77; *see also Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 382 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (holding that attorneys were not immune from claims that they knowingly helped their clients evade a judgment through a fraudulent transfer).  Unsurprisingly, the Trustee argues for the former scenario while K&J argues that, at worst, this situation involves the latter—merely acting as a lawyer on its client's behalf.  Most attorney-immunity disputes turn on this distinction—the "kind" of conduct that the attorney engaged in, and whether that conduct was merely executed on his client's behalf (attorney immunity), as opposed to being an active participant in the fraud (no attorney immunity).

The Court does not need to expressly decide whether K&J participated in a fraudulent business scheme (as that term is legally defined) with its client.  This case does not turn on this determination.  Rather, the attorney-immunity defense is unavailable to K&J here because the Trustee stands in the shoes of a former client.  The defense does not apply to clients (including former clients), who may bring direct claims against their attorneys.[39]  The Trustee is not a third party—he stands in the shoes of the Defendant's former client, the Debtor, and is thus considered a former client as a matter of law with claims arising out of an attorney-client relationship.[40]

---

[39] *See id.* (noting the trial court's severance of "legal-malpractice claims asserted by their former client").

[40] The theory that the Trustee stands in the shoes of the Debtor, which has broad authority to address claims asserted by it or against it, is supported by the nature of derivative suits.  The Supreme Court in *Harrington v. Purdue Pharma L.P.* recently touched on derivative suits in bankruptcy in another context.  No. 23-124, 603 U.S. __ (June 27, 2024).  The Court stated that "[i]n a derivative action, the named plaintiff 'is only a nominal plaintiff.  The substantive claim belongs to the corporation.' [(citation omitted)].  And no one questions that [the debtor] may address in its own bankruptcy plan claims 'wherever located and by whomever held,' § 541(a)—including those claims derivatively asserted by another on its behalf, *see* § 1123(b)(3)."  603 U.S. at *12.

K&J argues that rejecting its attorney-immunity defense would require an exception to allow the Trustee to evade the defense.  Not so for two reasons.  First, the nature and role of the Chapter 7 trustee necessarily permits him to bring causes of action on behalf of the debtor for the bankruptcy estate's benefit.  There is a trustee in every Chapter 7 case.[41]  Once appointed, the Chapter 7 trustee (1) becomes the sole representative of the debtor's estate; (2) pursues all prepetition causes of action belonging to the debtors; and (3) pursues the trustee's own causes of action to recover money or property under the trustee's avoidance powers.  *See* 11 U.S.C. § 323 (role and capacity of trustee) ("(a) The trustee in a case under this title is the representative of the estate.  (b) The trustee in a case under this title has capacity to sue and be sued.").[42]  The Chapter 7 trustee is a fiduciary representing the interests of unsecured creditors and as custodian of the secured creditors' collateral.[43]  This is generally accomplished by collecting and reducing to money nonexempt property of the estate that is not subject to liens.  K&J concedes that "each client has its own independent right to bring direct claims against their attorney."[44]  But K&J provides no valid legal justification for disallowing a Chapter 7 trustee to bring claims belonging to the Debtor—K&J's former client—or the bankruptcy estate.

---

[41] *See* 11 U.S.C. § 701 (appointment of interim trustee by the United States Trustee); 11 U.S.C. § 702 (election of permanent trustee by creditors); 11 U.S.C. § 703 (successor trustee); 28 U.S.C. § 586(b) (United States Trustee appoints standing trustees subject to approval by the Attorney General).

[42] *See also Barber v. McCord Auto Supply, Inc. (In re Pearson Indus., Inc.)*, 178 B.R. 753, 761 (Bankr. C.D. Ill. 1995); *Mini-Miners, Inc. v. Lansberry (In re Lansberry)*, 177 B.R. 49, 55–56 (Bankr. W.D. Pa. 1995).

[43] *See In re Esco Mfg. Co.*, 33 F.3d 509, 514 (5th Cir. 1994) (describing the Chapter 7 trustee's fiduciary duty "to preserve the estate's assets in order to maintain the most advantageous liquidation of the estate for the interest of its creditors"), *withdrawn and superseded on rehearing on other grounds by* 50 F.3d 315 (5th Cir. 1995); *Pearson Indus.*, 178 B.R. at 761; *In re Arnold*, 176 B.R. 13, 15 (Bankr. E.D. Tex. 1995) (explaining the Chapter 7 trustee's duty to strive towards the desired result of a Chapter 7 case: distributions to creditors).

[44] Def.'s Resp. to Pl.'s Mot. Summ. J. 10, ¶ 24, ECF No. 72.

Second, the Supreme Court of Texas' requirement that the attorney asserting an immunity defense represents the client "within an adversarial context in which the client and the non-client do not share the same interests" is not met here.[45]   Even if the Court were to accept K&J's argument that the Trustee is or was not its client per se, because the Trustee stands in the Debtor's shoes, the Trustee is the Debtor's alter-ego in a sense.   To say that a Chapter 7 trustee does not share the same interests as a debtor in this context would create an irreconcilable paradox and violate basic principles of agency.   The underlying alleged misconduct occurred during K&J's ongoing attorney-client relationship with the Debtor.   Thus, in this timeframe, K&J and the Debtor were unquestionably in privity.   *See McCamish, Martin, Brown & Loeffler v. F.E. Appling Ints.*, 991 S.W.2d 787, 792 (Tex. 1999) (explaining that a lack of privity precludes attorneys' liability to non-clients for legal malpractice).   In addition, the focus should be on the Chapter 7 trustee suing on behalf of a debtor and the estate to work towards maximizing creditor payouts (by maximizing the bankruptcy estate) in exchange for the debtor's discharge.   With the bankruptcy estate as the focal point, a Chapter 7 trustee necessarily must be able to sue the debtor's law firm in tort and contract because it is the trustee that represents the estate—not the debtor in his individual capacity (at least for prepetition conduct).   With this in mind, achieving Congress' objectives under the Bankruptcy Code must supersede any rigid interpretation of countervailing state law.   *See Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000) (stating that conflicting state law cannot create an "obstacle to the accomplishment and execution of the full purposes and objectives of Congress."); *In re Davis*, 170 F.3d 475, 482 (5th Cir. 1999) (addressing a conflict between the

---

[45] *NFTD, LLC*, 631 S.W.3d at 78.

Bankruptcy Code and Texas law, stating that "preemption may be implied if state and federal laws conflict or a state law thwarts the 'accomplishment and execution' of congressional intent." (citing *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 204 (1983))).

K&J also attempts to skirt the issue by arguing that there is no fraud exception to the attorney-immunity defense, as the Supreme Court of Texas held in *Byrd*.[46]  Respectfully, K&J misses the mark again.  It assumes that the claims are asserted by a non-client third party who has or had an interest adverse to that of the Debtor.  Because the Trustee stands in the shoes of a former client as a matter of law, his claims against the Defendant are beyond the scope and purpose of attorney immunity.  No vigorous representation of clients is chilled by allowing the Trustee to recover damages for tortious conduct that a law firm committed against its own client.

For these reasons, the claims asserted by the Trustee on behalf of the former client Debtor are not subject to the attorney-immunity defense.  Again, K&J is no longer pressing the litigation-privilege defense.  With the only relevant (undisputed) fact being that the Debtor was K&J's former client, the Trustee has met his summary judgment burden of showing that neither the attorney-immunity nor the litigation-privilege defenses are available to K&J.  Accordingly, K&J's affirmative defenses discussed herein fail, and the Trustee's knowing participation claim for breach of fiduciary duty will proceed to trial.

---

[46] 467 S.W.3d at 480 (rejecting the non-client third-party plaintiff's argument that "the claims against [law firm] Cantey Hanger 'should be permitted because they involve fraudulent conduct'").

## VII.    KRAGE & JANVEY'S MOTION FOR LEAVE TO DESIGNATE MARK PLUMMER AS A "RESPONSIBLE THIRD PARTY"

The Court now addresses the third motion presented, which raises an issue pertaining to "proportionate responsibility" for tort liability under Texas law and how it might apply to the Trustee's state-law claim for knowing participation in breach of fiduciary duty. K&J asks the Court for leave to designate Mark Plummer as a "responsible third party" ("Motion to Designate") in this Adversary Proceeding with respect to this claim under Texas' Proportionate Responsibility Statute (the "Statute" or "Proportionate Responsibility Statute"), codified in Chapter 33 of the Texas Civil Practice and Remedies Code. The Statute reads in pertinent part as follows:

Sec. 33.002. APPLICABILITY. (a) This chapter applies to:
(1) any cause of action based on tort in which a defendant, settling person, or responsible third party is found responsible for a percentage of the harm for which relief is sought; or

*** 

Sec. 33.003. DETERMINATION OF PERCENTAGE OF RESPONSIBILITY. (a) The trier of fact, as to each cause of action asserted, shall determine the percentage of responsibility, stated in whole numbers, for the following persons with respect to each person's causing or contributing to cause in any way the harm for which recovery of damages is sought, whether by negligent act or omission, by any defective or unreasonably dangerous product, by other conduct or activity that violates an applicable legal standard, or by any combination of these:
(1) each claimant;
(2) each defendant;
(3) each settling person; and
(4) each responsible third party who has been designated under Section 33.004.

(b) This section does not allow a submission to the jury of a question regarding conduct by any person without sufficient evidence to support the submission.

Sec. 33.004. DESIGNATION OF RESPONSIBLE THIRD PARTY. (a) A defendant may seek to designate a person as a responsible third party by filing a motion for leave to designate that person as a responsible third party. The motion must be filed on or before the 60th day before the trial date unless the court finds good cause to allow the motion to be filed at a later date.

(b)   Nothing in this section affects the third-party practice as previously recognized in the rules and statutes of this state with regard to the assertion by a defendant of rights to contribution or indemnity.  Nothing in this section affects the filing of cross-claims or counterclaims.

\*\*\*

d)  A defendant may not designate a person as a responsible third party with respect to a claimant's cause of action after the applicable limitations period on the cause of action has expired with respect to the responsible third party if the defendant has failed to comply with its obligations, if any, to timely disclose that the person may be designated as a responsible third party under the Texas Rules of Civil Procedure.

\*\*\*

(f)   A court shall grant leave to designate the named person as a responsible third party unless another party files an objection to the motion for leave on or before the 15th day after the date the motion is served.

(g)   If an objection to the motion for leave is timely filed, the court shall grant leave to designate the person as a responsible third party unless the objecting party establishes:
(1)  the defendant did not plead sufficient facts concerning the alleged responsibility of the person to satisfy the pleading requirement of the Texas Rules of Civil Procedure;  and
(2)  after having been granted leave to replead, the defendant failed to plead sufficient facts concerning the alleged responsibility of the person to satisfy the pleading requirements of the Texas Rules of Civil Procedure.

(h)   By granting a motion for leave to designate a person as a responsible third party, the person named in the motion is designated as a responsible third party for purposes of this chapter without further action by the court or any party.

(i)   The filing or granting of a motion for leave to designate a person as a responsible third party or a finding of fault against the person:
(1)  does not by itself impose liability on the person; and
(2)  may not be used in any other proceeding, on the basis of res judicata, collateral estoppel, or any other legal theory, to impose liability on the person.

The Trustee asks the Court to deny K&J's Motion to Designate under a single theory: that

the Proportionate Responsibility Statute does not apply to its aiding and abetting / knowing

participation in breach of fiduciary duty claim.  The reason for the Trustee's resistance is obvious

from an economic standpoint—the Trustee would much prefer that K&J bear ***full responsibility***

for any liability and damages that this Court might ultimately determine, for any "knowing

participation" in a breach (or at least bear ***joint and several liability*** with Plummer)—and not

merely bear some reduced percentage of overall liability/damages.  This arguably begs the

question of whether the Statute overrides the concept of joint and several liability—simply because

it provides a mechanism for apportionment.  In any instance, the Court starts with the language of

the Statute, of course.  Its literal language appears to support granting K&J's Motion to Designate.

### A.  The Literal Language of the Statute

As set forth above, the Proportionate Responsibility Statute creates a mechanism for a

defendant to designate a third party as allegedly responsible in whole or in part for a tort.[47]

Assuming the statute applies to a particular tort, this type of motion should only be denied where

it is untimely or if some other statutory pleading requirement is not met.[48]  And granting a motion

to designate a responsible third party "does not by itself impose liability" on the third party, and

may not be used in a later proceeding by collateral estoppel.[49]  It merely designates a third party

that is potentially responsible to some proportionate degree, complying with notice and due

process demands.[50]  Again—assuming that knowing participation in breach of fiduciary duty is a

tort encompassed by the Statute (a subject addressed at length later, *infra* Section VII(B))—the

Court must grant K&J's Motion to Designate for two reasons.  First, courts lack discretion to deny

---

[47] Tex. Civ. Prac. & Rem. Code § 33.004(a).
[48] § 33.004(d) (timeliness requirements); § 33.004(g) (pleading requirements).
[49] § 33.004(i).
[50] *See* § 33.004(h).

these motions when the motion lacks a procedural defect as defined by the Statute.  And second, the current litigation is not yet in the apportionment of liability phase, so the Trustee's arguments are premature.

On the first point, the clear, mandatory language in the Statute dictates that this Court lacks discretion to deny a timely filed, properly pled motion to designate a responsible third party.  This was discussed by the Supreme Court of Texas in *In re Coppola*, 535 S.W.3d 506 (Tex. 2017).  In that case, two realtors were sued for fraud and deceptive trade practices in connection with a real estate transaction.[51]  The defendants made a timely request to designate their attorneys as responsible third parties, alleging that the attorneys breached their duty of care to their clients.  The court pointed to the mandatory language in the Statute:  The trial court "***shall*** grant leave to designate . . . a responsible third party" unless another party objects within fifteen days after service.[52]  The court articulated the procedure:

> Even with a timely filed objection, the court must allow the designation unless the objecting party establishes (1) the defendant did not plead sufficient facts concerning the person's alleged responsibility and (2) the pleading defect persists after an opportunity to replead.  The trial court may later strike the designation if, after adequate time for discovery, no legally sufficient evidence of responsibility exists.[53]

And even when a party objects, trial courts still must work towards procedural compliance, after which they must grant the motion.  *Coppola* stated that "[w]e need not determine whether the [defendants] pleaded sufficient facts regarding the attorneys' alleged responsibility, because even

---

[51] *Coppola*, 535 S.W.3d at 507.
[52] *Id.* at 508 (emphasis added) (citing Tex. Civ. Prac. & Rem. Code § 33.004(f)).
[53] *Id.* (citing Tex. Civ. Prac. & Rem. Code §§ 33.004(g) and (l)).

if a deficiency existed, the trial court lacked discretion to deny the motion to designate without affording them an opportunity to replead."[54]

In addition, the court reasoned that a trial court's erroneous denial of a timely filed motion to designate a responsible third party is an egregious error worthy of mandamus relief.[55]  Under Texas jurisprudence, mandamus relief is an extraordinary remedy that is appropriate only when there is no adequate remedy through the ordinary appellate process.[56]  "Allowing a case to proceed to trial despite erroneous denial of a responsible-third-party designation 'would skew the proceedings, potentially affect the outcome of the litigation, and compromise the presentation of [the realtors'] defense in ways unlikely to be apparent in the appellate record.'"[57]

*Coppola* did not address how the Proportionate Responsibility Statute might impact (or even abrogate) the notion of joint and several liability (likely due to the early stage of the litigation), but, notably, the case included fraud and fiduciary duty claims that could result in joint and several liability.  *See, e.g.*, *Reid v. El Paso Constr. Co.*, 498 S.W.2d 923, 925 (Tex. 1973) (affirming joint and several liability for fraud); *Critical Path Res., Inc. v. Huntsman Int'l, LLC*, No. 09-17-00497-CV, 2020 WL 1291327, at *1 (Tex. App.—Beaumont Mar. 19, 2020, no pet.) (mem. op.) (affirming joint and several liability for knowing participation in breach of fiduciary duty).  The Supreme Court of Texas apparently took no issue with the possibility that joint and

---

[54] *Id.* (first citing Tex. Civ. Prac. & Rem. Code § 33.004(g); and then citing *In re Smith*, 366 S.W.3d 282, 288 (Tex. App.—Dallas 2012, orig. proceeding) ("[T]he trial judge was statutorily required to give realtors an opportunity to replead before denying their motion, regardless of whether they made a specific request for time to replead.")).
[55] *Id.* at 509–10.
[56] *See id.* at 509.
[57] *Id.* (citing *In re CVR Energy, Inc.*, 500 S.W.3d 67, 81–82 (Tex. App.—Houston [1st Dist.] 2016, orig. proceeding mand. denied) (discussing and collecting authorities weighing benefits against detriments of mandamus review)).

several liability might attach to the torts involved when considering a motion to designate a responsible third party.[58]

K&J makes another important point. It asserts that the Trustee "puts the cart before the horse as the issue of apportionment is one for the fact finder at trial."[59] In essence, K&J argues that the Trustee's insistence that the Proportionate Responsibility Statute's apportionment of liability provisions do not apply to the knowing participation claim are prematurely asserted. The Court agrees with K&J. Related to this point, "ripeness" is a jurisdictional doctrine that bars adjudication of claims and issues that are not ready for review. *See Lopez v. City of Houston*, 617 F.3d 336, 341 (5th Cir. 2010). Although there is not a concrete ripeness issue here (i.e., a *cause of action* that is not ripe for review), similar ripeness principles apply to the Trustee's argument. The harm the Trustee alleges will occur to his case and manner of recovery if the Court grants K&J's Motion to Designate is not yet relevant because liability has not even been established yet.

K&J is correct in pointing out that the Statute leaves determinations of proportionate responsibility to the trier of fact.[60] The granting of K&J's Motion to Designate would merely be a procedural precursor to apportioning liability later at trial—after liability is found. Any potential harm to the Trustee's recovery efforts would not occur until liability is apportioned away from K&J later in the litigation. Moreover, as will be detailed later, a judicial determination that apportioning liability is impossible may occur after the evidentiary record is complete. If so, then

---

[58] *But cf. In re Xerox Corp.*, 555 S.W.3d 518, 520 (Tex. 2018) (denying mandamus relief in a case involving a civil-remedy action brought by the State of Texas under the Texas Medicaid Fraud Prevention Act where the trial court denied a motion to designate a responsible third party, holding "(1) the statutory remedy does not constitute 'damages' subject to apportionment under Chapter 33 and (2) an irreconcilable conflict exists between the proportionate-responsibility statute and the TMFPA's mitigation and fault-allocation scheme").

[59] Def.'s Reply to Pl.'s Obj. to Def.'s Mot. to Designate Responsible Third Party 2, ¶ 1, ECF No. 80.

[60] Tex. Civ. Prac. & Rem. Code § 33.003(a).

no harm will befall the Trustee in his endeavor to hold both Plummer and K&J jointly and severally liable for the breach of fiduciary duty and related aiding and abetting / knowing participation conduct.  *See Lopez*, 617 F.3d at 642 ("If the purported injury is 'contingent [on] future events that may not occur as anticipated, or indeed may not occur at all,' the claim is not ripe . . . ." (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985))).  Thus, the Trustee's arguments against the Motion to Designate are premature.

### B.  Viewing the Proportionate Responsibility Statute Within the Overall Context of Texas Tort Jurisprudence

To recap, the Court believes that (1) it lacks statutory discretion to deny K&J's timely filed Motion to Designate; and (2) it would be premature to deny it since no finding of knowing participation in a breach of fiduciary duty has even been determined yet.  For these reasons alone, the Court believes it must grant K&J's Motion to Designate.  That said, the Court is compelled to explore the Trustee's overarching claim that the Proportionate Responsibility Statute cannot be properly applied in the context of a "knowing participation" or "aiding and abetting" claim.

The Proportionate Responsibility Statute, by its literal terms, applies to "***any cause of action based on tort*** in which a defendant, settling person, or responsible third party is found responsible for a percentage of the harm for which relief is sought," as well as actions under Texas' Deceptive Trade Practices-Consumer Protection Act.[61]  The Proportionate Responsibility Statute only excludes claims under Texas workers' compensation statutes, claims for exemplary damages, and claims for damages related to the manufacture of methamphetamine.[62]  Despite this broad

---

[61] § 33.002(a)(1)–(2) (emphasis added).
[62] § 33.002(c).  Tort claims involving methamphetamine are addressed in Chapter 99 of the Texas Civil Practices and Remedies Code.  Notably, joint and several liability is prescribed by statute for those claims.  *See* Tex. Civ. Prac. & Rem. Code § 99.004.

wording, the Trustee argues that the Statute does not apply because joint and several liability must attach if K&J is found liable for knowing participation in Plummer's breach of fiduciary duty. The Trustee seems to suggest that joint and several liability is not a possible result if the Proportionate Responsibility Statute is utilized here. But the Statute contemplates the possibility of joint and several liability, when such liability is appropriate, and what to do when joint and several liability attaches. For example, § 33.013(a) ("Amount of Liability") of the Statute provides: "[A] liable defendant is liable to a claimant only for the percentage of the damages found by the trier of fact equal to that defendant's percentage of responsibility with respect to the personal injury, property damage, death, or other harm for which the damages are allowed." Notwithstanding that provision, the Statute only assigns joint and several liability to a defendant who is found to have caused "greater than 50 percent" of the harm.[63] The only other mechanism to attach joint and several liability by the Statute's terms is when the defendant engaged in certain enumerated criminal conduct in the Texas Penal Code.[64] The Statute quite obviously contemplates joint and several liability situations. Thus, it is difficult to say that the Statute does not apply simply because the Trustee alleges that joint and several liability should or will attach to K&J's alleged conduct.

The Statute also discusses indemnity and contribution rights. The Supreme Court of Texas has defined indemnity as "the payment of all of plaintiff's damage by one tortfeasor to another tortfeasor who has paid it to the plaintiff."[65] Similarly, the court has defined contribution as "the

---

[63] § 33.013(b).

[64] *See* § 33.013(b)(2) (enumerating certain crimes for which joint and several civil liability may attach when the defendant acts with specific intent).

[65] *Gen. Motors Corp. v. Simmons*, 558 S.W.2d 855, 859 (Tex. 1977) (citing Gus M. Hodges, *Contribution and Indemnity Among Tortfeasors*, 26 Tex. L. Rev. 150, 151 (1947)), *overruled on other grounds by Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414 (Tex. 1984), *superseded by statute*, Tex. Civ. Prac. & Rem. Code §§ 33.001–33.017.

payment by each tortfeasor of his proportionate share of the plaintiff's damages to any other tortfeasor who has paid more than his proportionate part."[66]  Contribution only applies to joint tortfeasors—that is, co-defendants who cause indivisible injury.[67]  The Statute provides instructions on how to manage contribution issues when a defendant is held jointly and severally liable.  When a defendant is found jointly and severally liable (e.g., when the trier of fact finds a defendant was responsible for more than fifty percent of the harm), the defendant "has a right of contribution for the overpayment against each other liable defendant to the extent that the other liable defendant has not paid the percentage of the damages found by the trier of fact equal to that other defendant's percentage of responsibility."[68]  Further, "[a]s among themselves, each of the defendants who is jointly and severally liable . . . is liable for the damages recoverable by the claimant . . . in proportion to his respective percentage of responsibility."[69]  To facilitate this process, when a defendant seeks contribution from a co-liable defendant, "[t]he trier of fact shall determine as a separate issue or finding of fact the percentage of responsibility with respect to each contribution defendant."[70]  Lastly, to ensure that contribution and indemnity rights are preserved and protected, the Statute mentions that "[n]othing in this section affects the third-party practice

---

[66] *Id.* (citation omitted); *see also* Bryan A. Garner, A Dictionary of Modern Legal Usage 140 (2d ed. 1995) ("Contribution is (1) the right to demand that another who is jointly responsible for injury to another contribute to the one required to compensate the victim, or (2) the actual payment by a joint tortfeasor of his share of what is due.  It may entail an equal sharing of loss, but in some jurisdictions entails a payment proportional to one's fault.").

[67] *See Pacesetter Pools, Inc. v. Pierce Homes, Inc.*, 86 S.W.3d 827, 831 (Tex. App.—Austin 2002, no pet.) ("Contribution is allowed in Texas only among joint tortfeasors.").

[68] § 33.015(a).

[69] § 33.015(b).

[70] § 33.016(c).

as previously recognized in the rules and statutes of this state with regard to the assertion by a defendant of rights to contribution or indemnity."[71]

At bottom, this Court is hard pressed to find a justification for the Trustee's argument that, because joint and several liability will attach (or so the Trustee hopes), the cause of action must be entirely outside the scope of the Statute.  The Statute contemplates situations where joint and several liability will be assigned, and then provides mechanisms to prevent one defendant from paying the entire judgment without recompense from other co-liable defendants.  To be clear, the Statute can assign joint and several liability, which allows the plaintiff to recover in full from a defendant, but it also ensures an equitable distribution of money judgment payments as between co-liable defendants.  To say that the Statute does not apply to situations involving joint and several liability is to ignore wide swaths of the Statute's provisions—particularly regarding the rights of co-defendants as between themselves.  And again, given that denial of a properly filed motion to designate a responsible third party constitutes error that will skew the proceedings and potentially affect the outcome of the litigation—an error so grave that mandamus relief is appropriate—this Court sees no facial merit in denying K&J's Motion to Designate on the suggestion that the Statute is entirely inapplicable.

The Court now turns to Texas jurisprudence regarding torts—particularly, a knowing participation claim—to see if it sheds any guidance here.  The Supreme Court of Texas long ago recognized a cause of action for knowing participation in another's breach of fiduciary duty in

---

[71] § 33.004(b).

*Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 514 (Tex. 1942).[72]  Lower Texas courts following *Kinzbach* referred to the cause of action as "aiding and abetting a breach of fiduciary duty."[73]  The Trustee has pled the cause of action (Count 8) as "Aiding and Abetting / Knowing Participation in Plummer's Breach of Fiduciary Duty to Debtor."[74]  *Kinzbach* did not establish specific elements for this aiding and abetting / knowing participation in breach of fiduciary duty cause of action, but its progeny has.  There are three elements:  "(1) a breach of fiduciary duty by a third party; (2) the aider's knowledge of the fiduciary relationship between the fiduciary and the third party; and (3) the aider's awareness of his participation in the third party's breach of its duty."[75]

------------------

[72] It should be noted that the Supreme Court of Texas has not determined whether a cause of action for aiding and abetting even exists in Texas.  *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 224 (Tex. 2017) ("[T]his Court has not expressly decided whether Texas recognizes a cause of action for aiding and abetting. However, the parties do not raise or brief the question of whether such a cause of action exists in Texas, so we will assume, without deciding, that it does." (citing *Juhl v. Airington*, 936 S.W.2d 640, 643 (Tex. 1996))).  Like Texas' highest court, this Court will also assume such a cause of action exists because neither party argues that it does not.

[73] *Kinzbach*, 160 S.W.2d at 514.  In addition, the United States District Court for the Northern District of Texas has noted the following:  "[Defendant] points out that courts have generally not used the phrase 'aiding and abetting' in the breach of fiduciary duty context, but have simply held that where a party knowingly participates in the breach of duty of a fiduciary, the party becomes a joint tortfeasor with the fiduciary.  Although the seminal and principally cited case in this area does not in fact employ the term 'aiding and abetting', *see Kinzbach*, 160 S.W.2d at 514 (cited for the proposition that '[i]t is settled as the law of this State that where a third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint tortfeasor with the fiduciary and is liable as such'), subsequent cases have construed the principle as recognizing an 'aiding and abetting' (or similarly worded) theory of liability." *Woloshen v. State Farm Lloyds*, No. 3:08-CV-0634-D, 2008 WL 4133386, at *2 n.3 (N.D. Tex. Sept. 2, 2008) (first citing *Hendricks v. Thornton*, 973 S.W.2d 348, 372 (Tex. App.—Beaumont 1998, pet. denied) (relying on *Kinzbach* to reject a party's contention that Texas law does not recognize a cause of action for aiding and abetting a breach of fiduciary duty); and then citing *Sw. Tex. Pathology Assocs., L.L.P. v. Roosth*, 27 S.W.3d 204, 208 (Tex. App.—San Antonio 2000, pet. dism'd) ("A third party who knowingly aids and assists in the breach of a fiduciary duty may also be liable.")).

[74] Pl.'s First Am. Compl. 50, ECF No. 41.

[75] *See* Nelson S. Edaugh, *The Liability*, 78 Tex. B.J. 362, 363 (2015) (discussing five tests for civil aiding and abetting in Texas, including breach of fiduciary duty); *Darocy v. Abildtrup*, 345 S.W.3d 129, 138 (Tex. App.—Dallas 2011, no pet.); *Kastner v. Jenkens & Gilchrist, P.C.*, 231 S.W.3d 571, 580 (Tex. App.—Dallas 2007, no pet.); *Cox Tex. Newspapers, L.P. v. Wootten*, 59 S.W.3d 717, 722 (Tex. App.—Austin 2001, pet. denied).  *Darocy* discussed these elements.  "A cause of action based on a contribution to a breach of fiduciary duty must involve the defendant's knowing participation in such a breach.  A claim that a defendant knowingly participated in a breach of fiduciary duty by a third party necessarily hinges on the existence of a fiduciary duty owed by the third party to the plaintiff.  In

Setting the knowing participation cause of action aside for a moment, the related concept of vicarious liability must be discussed.  "Vicarious liability is a common law doctrine that makes a party liable for another person's fault based solely on the relationship between the vicariously liable party and the culpable person."  *Guillory v. Dietrich*, 598 S.W.3d 284, 296 (Tex. App.—Dallas 2020, pet. denied) (citing *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 130 (Tex. 2018)).  In other terms, vicarious liability is a method of imputing "secondary liability" to an additional responsible party.  *See* Restatement (Third) of Torts: Apportionment of Liability § 13 ("A person whose liability is imputed based on the tortious acts of another is liable for the entire share of comparative responsibility assigned to the other, regardless of whether joint and several liability or several liability is the governing rule for independent tortfeasors who cause an indivisible injury.").[76]  The concept of vicarious liability has evolved to embrace a variety of tort theories, including aiding and abetting, conspiracy, and respondeat superior.[77]  *Pure* vicarious liability, which can be imputed due to a special relationship, attaches even without fault.[78]  In contrast, aiding and abetting requires a degree of fault—knowledge and participation.

Returning to the Texas knowing participation claim, *Kinzbach* stated "where a third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint

---

addition to the existence of a fiduciary duty, the plaintiff must show the defendant knew of the fiduciary relationship and was aware of his participation in the third party's breach of its duty."  345 S.W.3d at 138 (citations omitted).

[76] *See also* Stanley Pietrusiak, Jr., *Changing the Nature of Corporate Representation:  Attorney Liability for Aiding and Abetting the Breach of Fiduciary Duty*, 28 St. Mary's L.J. 213, 230–31 (1996).

[77] *See* William H. Kuehnle, *Secondary Liability Under the Federal Securities Laws—Aiding and Abetting Conspiracy, Controlling Person, and Agency: Common-Law Principles and the Statutory Scheme*, 14 J. Corp. L. 313, 320–21 (1988) (referencing the long-established common-law theory of joint tortfeasor liability that encompasses aiding and abetting and conspiracy, which have both been adopted by Restatement (Second) of Torts).

[78] *See, e.g.*, *Painter*, 561 S.W.3d at 130 ("Under the common-law doctrine of respondeat superior, or vicarious liability, 'liability for one person's fault may be imputed to another who is himself entirely without fault solely because of the relationship between them.'" (quoting *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 540 (Tex. 2002) (plurality op.)).

tortfeasor with the fiduciary and is liable as such."[79]  What does the second part of this statement

mean?  "'Joint tortfeasors' are defined as parties whose tortious conduct combines as a legal cause

of a single and indivisible harm to the injured party."[80] And "[j]oint and several liability is proper

when parties are in some way jointly liable."[81]

In sum, consistent with this logic, the Supreme Court of Texas created a parallel common-law rule

on joint and several liability known as the "indivisible injury rule" in *Landers v. E. Tex. Salt Water*

*Disposal Co.*, 248 S.W.2d 731 (1952).

> Where the tortious acts of two or more wrongdoers join to produce an ***indivisible***
> injury, that is, ***an injury which from its nature cannot be apportioned with***
> ***reasonable certainty to the individual wrongdoers***, all of the wrongdoers will be
> held jointly and severally liable for the entire damages and the injured party may
> proceed to judgment against any one separately or against all in one suit.[82]

In line with this reasoning, the Supreme Court of Texas has stated that "[t]he theories of vicarious

and joint and several liability are judicially created vehicles for enforcing remedies for wrongs

committed.  Justified on public policy grounds, they represent a deliberate allocation of risk."[83]

In sum, Texas common law has two rules controlling knowing participation claims and

joint and several liability that are relevant here.  One, *Kinzbach*, recognized knowing participation

in breach of fiduciary duty as a cause of action, attaching joint and several liability by default.

---

[79] 160 S.W.2d at 514.

[80] Theodore Z. Wyman, *§ 22 Joint Tortfeasors, Generally*, *in* Texas Jurisprudence (3d ed. 2024) (first citing *In re Sewell*, 413 B.R. 562 (Bankr. E.D. Tex. 2009) (applying Texas law); and then citing *Gilcrease v. Garlock, Inc.*, 211 S.W.3d 448 (Tex. App.—El Paso 2006)).

[81] Wyman, *§ 22 Joint Tortfeasors, Generally* (citing *Deaton v. United Mobile Networks, L.P.*, 926 S.W.2d 756 (Tex. App.—Texarkana 1996), writ granted, (Feb. 21, 1997), *judgment aff'd in part, rev'd in part on other grounds*, 939 S.W.2d 146 (Tex. 1997)).

[82] *Landers*, 248 S.W.2d at 734.

[83] *Dutcher v. Owens*, 647 S.W.2d 948, 950–51 (Tex. 1983) (first citing *Newspapers, Inc. v. Love*, 380 S.W.2d 582, 588–89 (Tex. 1964); then citing *Landers*, 248 S.W.2d at 733; and then citing William L. Prosser, Law of Torts, § 69 at 459 (4th ed. 1971)).

Two, *Landers*, held that if a party is found to be liable for harm that is "indivisible," defined as that liability that cannot be apportioned with reasonable certainty, then joint and several liability is judicially imposed.

The central question here is whether the Proportionate Responsibility Statute abrogates these common-law rules.  The answer is important because if the Statute replaces these rules, then the *only* way that a defendant can be held jointly and severally liable is by operation of the Statute—i.e., a finding that the defendant was responsible for more than fifty percent of the harm.  Contrarily, if the common-law rules still stand, then a defendant may be held jointly and severally liable for a knowing participation claim by default (*Kinzbach*), or if the injury is indivisible (*Landers*)—notwithstanding the statutory language requiring a finding of responsibility greater than fifty percent.  The Supreme Court of Texas has not decided whether *Kinbach* and *Landers* are still good law in light of the Proportionate Responsibility Statute—meaning to what extent the Statute does or does not apply to a knowing participation claim or whether joint and several liability can still attach under the indivisible injury rule.

### 1.  The *Landers* Question

The *Landers* question is easier to answer.  This was discussed in *Lakes of Rosehill Homeowners Association, Inc. v. Jones*, 552 S.W.3d 414 (Tex. App.—Houston [14th Dist.] 2018, no pet.).  In that case, the Houston, Texas Court of Appeals held that the Proportionate Responsibility Statute did *not* abrogate the common-law joint and several liability rule when an injury is indivisible.[84]  Together with the statutory text, the court relied on two decisions from the

---

[84] *Lakes of Rosehill*, 552 S.W.3d at 419.

Supreme Court of Texas:  *Kramer v. Lewisville Memorial Hospital*, 858 S.W.2d 397 (Tex. 1993),

and  *Amstadt v. United States Brass Corp.*, 919 S.W.2d 644 (Tex. 1996).    Both decisions

acknowledged the common-law rule of joint and several liability originally articulated in *Landers*.

The *Lakes of Rosehill* court summarized its holding as follows:

> Defendants have not explained why the 1987 version of Chapter 33 did not abrogate
> the *Landers* rule of joint and several liability for an indivisible injury, but the 1995
> or 2003 versions did.  Nor have we found any support for such a position.  Since
> Chapter 33 was amended in 2003, Texas courts of appeals have continued to
> recognize that if responsibility for a plaintiff's injury by its nature cannot be
> apportioned among wrongdoers with reasonable certainty, each defendant is jointly
> and severally liable under *Amstadt* or *Landers*.[85]

Again, apportionment of liability is made on a "reasonable certainty" standard—meaning

that liability must be apportioned among multiple defendants based on a reasonable certainty as to

the percentage of liability.  The *Lakes of Rosehill* court stated:  "If responsibility for the plaintiff's

injury cannot be apportioned with reasonable certainty among the defendants and other responsible

parties (as in *Landers* and *Amstadt*), then by definition the trier of fact cannot find any of them

'responsible for a percentage of the harm,' ***and Chapter 33 does not apply***."    552 S.W.3d at 420

(emphasis added) (first citing *White v. Zhou Pei*, 452 S.W.3d 527, 543–44 (Tex. App.—Houston

[14th Dist.] 2014, no pet.) (holding Chapter 33 inapplicable where there was no finding that

defendants were responsible for percentage of harm); then citing *Onyung v. Onyung*, No. 01-10-

00519-CV, 2013 WL 3875548, at *11 (Tex. App.—Houston [1st Dist.] July 25, 2013, pet. denied)

(mem. op.) (same); then citing *Barnett v. Home of Tex. & Warranty Underwriters Ins.*, Nos. 14-

09-01005-CV, 14-10-00197-CV, 2011 WL 665309, at *7 n.11 (Tex. App.—Houston [14th Dist.]

---

[85] *Id.* at 421.

Feb. 24, 2011, no pet.) (mem. op.) ("[C]hapter 33 generally governs cases involving 'proportionate responsibility' among liable parties, wherein persons are held responsible for percentages of the harm, and is generally not applicable to cases such as the present one wherein two defendants were held jointly and severally liable for the same damages"); and then citing *Tex. Cap. Sec., Inc. v. Sandefer*, 108 S.W.3d 923, 925–26 (Tex. App.—Texarkana 2003, pet. denied) ("[Defendants] were held jointly and severally liable; therefore, by its express terms, Chapter 33 is not applicable.")). To be clear, these courts reason that if two defendants are held jointly and severally liable for the same harm, then there is no need to apportion that liability among co-defendants because both defendants are liable for all the harm.

If forced to make an *Erie* guess,[86] this Court would likely agree with the *Lakes of Rosehill* court's holding that the *Landers* indivisible injury rule is still good law. The reasoning adheres to the Supreme Court of Texas' language from *Kramer*:

> The only exception we have recognized to our longstanding causation principles is where the inextricable combination of joint tortfeasors combines to cause harm in a manner where individual responsibility cannot be fixed. In these situations, liability is fastened only after a judicial determination that the claimant's injuries were caused by someone, but proof of that responsibility is impossible.[87]

This language is congruent with § 33.003(b) of the Proportionate Responsibility Statute, which provides that "[t]his section does not allow a submission to the jury of a question regarding conduct by any person without sufficient evidence to support the submission."

On a similar line, § 33.003(b) may apply when there is a judicial determination of impossibility as to apportioning fault because no jury could apportion responsibility with a

---

[86] *See Erie R.R. Co. v. Tomkins*, 304 U.S. 64 (1938).
[87] 858 S.W.2d at 405–06 (citing *Landers*, 248 S.W.2d at 734).

reasonable degree of certainty.  Unfortunately, this issue creates more problems than it solves.  The *Lakes of Rosehill* court noted that the Supreme Court of Texas has signaled that "the question whether proof of individual responsibility is impossible is a ***legal question for the court to determine***."[88]  This follows *Kramer*'s reference to a "judicial determination" that "proof of that responsibility is impossible."[89]  But when the *Lakes of Rosehill* court cited to *Kramer* in a footnote suggesting that the courts should make a *legal* determination of whether proof of individual responsibility percentages is impossible, the court also relied on the Restatement (Second) of Torts § 434(1)(b) (1965).  That section ("Functions of Court and Jury") reads:  "It is the function of the ***court*** to determine . . . whether the harm to the plaintiff is capable of apportionment among two or more causes." (emphasis added).  In contrast, the Restatement (Second) of Torts § 434(2) reads: "It is the function of the ***jury*** to determine, in any case in which it may reasonably differ on the issue, (a) whether the defendant's conduct has been a substantial factor in causing the harm to the plaintiff, and (b) the apportionment of the harm to two or more causes." (emphasis added).

To further complicate the matter, § 26 of the Restatement (Third) of Torts ("Apportionment of Liability When Damages Can Be Divided by Causation") replaced a portion of § 434 of the Restatement (Second) of Torts.[90]  Section 26 of the Restatement (Third) of Torts makes no mention of the ***courts*** making any determination—it only instructs the ***fact finder*** using a "reasonable basis" standard.[91]  The Proportionate Responsibility Statute does not mention the courts making

---

[88] 552 S.W.3d at 420 n.8 (emphasis added) (citations omitted).
[89] 858 S.W.2d at 405–06 (citation omitted).
[90] *See* Barry A. Lindahl, *Basis for Joint Liability—Single Indivisible Injury Rule*, *in* Modern Tort Law:  Liability and Litigation § 18:4 (2d ed. 2024).
[91] First, § 26 subpart (a) provides:  "When damages for an injury can be divided by causation, the factfinder first divides them into their indivisible component parts and separately apportions liability for each indivisible component part under Topics 1 through 4."  Then § 26 subpart (b) provides:  "Damages can be divided by causation when the

this type of determination either.  This Court has found no Supreme Court of Texas cases that discuss adopting § 26 of the Restatement (Third) of Torts—which is a logical source from which Texas common law would develop.  This may be because of the Proportionate Responsibility Statute's adoption (some twenty years after the Restatement (Second) of Torts—effectively supplanting portions of it), and the multiple statutory amendments to date.  However, Texas' highest court has referred to other apportionment of liability sections of the Restatement (Third) of Torts—most notably in the case of *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680 (Tex. 2007) (holding that the Proportionate Responsibility Statute applies to claims under Texas' Dram Shop Act).  *Duenez* will be analyzed later.

In sum, if an injury is indivisible—meaning responsibility cannot be apportioned with reasonable certainty, then it would appear that the apportionment provisions of the Proportionate Responsibility Statute cannot apply, and the defendant will be jointly and severally liable for all the harm.  And this is not a cause of action specific rule.  It can apply to any situation where the harm is indivisible—whatever the facts may be.  Unlike the *Kinzbach* issue discussed below, the *Landers* question is not one of abrogation *per se*.  The indivisible injury rule simply provides instructions to impose joint and several liability when the Proportionate Responsibility Statute's apportionment provisions ***cannot be applied with reasonable certainty***.  This is what the common law is for—to fill in statutory gaps.

---

evidence provides a reasonable basis for the factfinder to determine: (1) that any legally culpable conduct of a party or other relevant person to whom the factfinder assigns a percentage of responsibility was a legal cause of less than the entire damages for which the plaintiff seeks recovery and (2) the amount of damages separately caused by that conduct."  Finally, § 26 concludes with:  "Otherwise, the damages are indivisible and thus the injury is indivisible. Liability for an indivisible injury is apportioned under Topics 1 through 4."

## 2. The *Kinzbach* Question

The *Kinzbach* question is much more difficult to answer.  The Supreme Court of Texas has not spoken directly to whether *Kinzbach*'s default common-law rule that joint and several liability should attach to a knowing participation in breach of fiduciary duty claim survived the passage of the Proportionate Responsibility Statute.  But the court has discussed whether a cause of action is excluded from the Statute.  Although framed differently, this is precisely the issue that the Trustee raises here:  Whether a claim for knowing participation in breach of fiduciary duty is excluded from the Statute—or at least its liability apportionment provisions.  The reasoning from *F.F.P. Operating Partners, L.P. v. Duenez* provides helpful insight into what the Supreme Court of Texas might say about this.  In short, Texas' highest court would likely conclude that knowing participation claims are ***not*** excluded from the Proportionate Responsibility Statute—the issue of proportionate responsibility must be sent to the trier of fact for determination.

In *Duenez*, the Supreme Court of Texas addressed whether the Proportionate Responsibility Statute applies to tort claims arising under Texas' Dram Shop Act, which imposes liability on alcohol providers when their customers cause harm to others while intoxicated.  *Duenez* is particularly helpful because it contributes to the analytical framework needed to assess vicarious (or put differently, ***derivative***) liability and whether joint and several liability flows therefrom, despite the Proportionate Responsibility Statute.  In *Duenez*, the lower appellate court believed that a cause of action under the Dram Shop Act imposed vicarious liability on the alcohol provider.  The court of appeals thought that this vicarious liability made the provider jointly and severally liable for all the harm caused by the intoxicated person.  Thus, the court of appeals reasoned that the Proportionate Responsibility Statute could not apply.  *Duenez*, 237 S.W.3d at 688–89 (quoting the lower court, which stated that "a division of liability would be meaningless: the vicariously liable party is liable for the other party's actions, as though those actions were its own.").

The Supreme Court of Texas reversed, holding that the Proportionate Responsibility
Statute applies to claims under the Dram Shop Act and required that the issue of proportionate
responsibility be submitted to the trier of fact.  First, the court recognized that "a cause of action
against a provider of alcohol is a ***direct*** action for the wrongful conduct of the provider:
"[L]iability under [the Dram Shop Act] is premised on the conduct of the provider of the alcoholic
beverages—not the conduct of the recipient or a third party."[92]  Liability attaches ***directly***—not
vicariously—because "[t]he conduct for which the provider may be held liable is the same conduct
'whether the intoxicated individual injures himself or a third party.'"[93]

The Court will compare a direct cause of action under the Dram Shop Act to civil
conspiracy—a tort theory similar to aiding and abetting / knowing participation.  The Supreme
Court of Texas has declared that "civil conspiracy is a theory of vicarious liability and not an
independent tort."  *Agar Corp. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 142 (Tex. 2019)
("[A] proven civil conspiracy means 'each of [the] defendants in error is responsible for all acts
done by any of the conspirators in furtherance of the unlawful combination.'  This is a statement
of vicarious liability.  We have repeatedly called civil conspiracy a 'derivative tort,' meaning it
depends on some underlying tort or other illegal act." (first citing *State v. Standard Oil Co.*, 107
S.W.2d 550, 559 (1937); then citing *Carroll v. Timmers Chevrolet, Inc.*, 592 S.W.2d 922, 925–26
(Tex. 1979); then citing *Chu v. Hong*, 249 S.W.3d 441, 444–45 (Tex. 2008); and then citing *Tilton
v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996))); *see also Ernst & Young, L.L.P. v. Pac. Mut. Life*

---

[92] *Duenez*, 237 S.W.3d at 688 (emphasis added) (quoting Dram Shop Act precedent from *Smith v. Sewell*, 858 S.W.2d
350, 355 (Tex. 1993)).
[93] *Id.* at 689 (quoting *Sewell*, 858 S.W.2d at 355).

*Ins.*, 51 S.W.3d 573, 583 (Tex. 2001) ("Fraud is the unlawful purpose or means that forms the basis of [defendant's] conspiracy and 'aiding and abetting'").[94]

Why is civil conspiracy a method of imputing vicarious liability rather than an independent tort? Because "the damages that matter come from the underlying wrongful act, not the conspiracy itself."[95]  And because civil conspiracy is derivative, it is "connected to the underlying tort and survives or fails alongside it."[96]  That said, the Supreme Court of Texas has never expressly declared whether knowing participation in breach of fiduciary duty is a direct cause of action, or one that attaches liability vicariously (derivatively).

Returning to *Duenez*, at first glance, the distinction between a direct cause of action and a theory of derivative liability might seem important.  The Supreme Court of Texas discusses at length why the lower court was wrong to interpret the Dram Shop Act as imposing vicarious (and then by extension, joint and several) liability on the alcohol provider rather than recognizing that the cause of action is direct.  A meaningful portion of this debate over a knowing participation claim might appear to turn on this—that is, the manner in which liability is fastened—directly or derivatively.  But *Duenez* instructs otherwise.  The purpose of the Proportionate Responsibility Statute, interpreted from the text and underlying legislative intent, is what matters.

The Proportionate Responsibility Statute applies to "***any cause of action based on tort***." When *Duenez* concluded that the Statute applies to Dram Shop Act claims, it reasoned that "the

---

[94] The court also noted that "[b]ecause of our disposition, we do not consider whether Texas law recognizes a cause of action for 'aiding and abetting' fraud separate and apart from a conspiracy claim." *Ernst & Young, L.L.P.*, 51 S.W.3d at 583 n.7.
[95] *Agar Corp.*, 580 S.W.3d at 142 (first citing *Tilton*, 925 S.W.2d at 680–81; and then citing *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 856 (Tex. 1968)).
[96] *Id.* at 141.

broad coverage of the proportionate responsibility statute to tort claims is persuasive."[97]  The court referenced the limited exceptions listed in the Statute and stated that "[w]hen the Legislature has chosen to impose joint and several liability rather than proportionate liability, it has clearly said so."[98]  The court also recognized that holding alcohol providers vicariously liable for all the harm might be a good public policy reason to impose joint and several liability because it would deter serving obviously intoxicated patrons.[99]  Even still, although "[t]hat may influence the drafting of a statute, [] it says little about how to interpret the words of the Dram Shop and Proportionate Responsibility Acts."[100]  Moreover, "the statutes only hold providers responsible for their own conduct causing injury.  This is consistent with a fundamental tenet of tort law that an entity's liability arises from its own injury-causing conduct."[101]  The court emphasized that "[o]ur role . . . is not to second-guess the policy choices that inform our statutes or to weigh the effectiveness of their results; rather, our task is to interpret those statutes in a manner that effectuates the Legislature's intent."[102]

The court even addressed the risk of insolvency, which is directly relevant here in a bankruptcy proceeding.  *Duenez* stated:

> Even if this Court were to agree with the court of appeals that holding a provider vicariously liable for a patron's intoxication may be a legitimate public policy, we would still be constrained to faithfully apply the Legislature's statutory proportionate responsibility scheme.  **Imposing vicarious liability in dram-shop cases conflicts with the Proportionate Responsibility Act.**  The court of appeals suggested that the Legislature did not intend for an innocent third party to bear the

---

[97] 237 S.W.3d at 690.
[98] *Id.* at 691.
[99] *See id.* at 690.
[100] *Id.*
[101] *Id.*
[102] *Id.* (quoting *McIntyre v. Ramirez*, 109 S.W.3d 741, 748 (Tex. 2003)).

risk of an intoxicated patron's insolvency.  But, by enacting Chapter 33, the Legislature made the policy decision that an innocent third party, suing the intoxicated patron and the dram shop, could be burdened with the risk of a joint tortfeasor's insolvency.  A tortfeasor who was found less than fifty-one percent responsible does not have to pay the entire amount of damages, only his or her proportionate share.[103]

This point is critical.  The court is reasoning that ***it does not matter if the theory of liability is direct or derivative—the Statute still applies***.

Applying this logic from *Duenez* to a knowing participation claim, this Court believes that the Supreme Court of Texas would rely heavily on its precedent in *Duenez*.  The words "any cause of action based on tort" in the Statute are not ambiguous, so the plain meaning rule applies.  *See Tex. Dep't of Protective & Regul. Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 177 (Tex. 2004) ("If the statutory text is unambiguous, a court must adopt the interpretation supported by the statute's plain language unless that interpretation would lead to absurd results."); *Coppola*, 535 S.W.3d at 508 ("[S]tatutes are construed using a text-based approach that gives effect to the plain meaning of undefined terms, within the context of the statute as a whole, unless doing so produces an absurd result." (citing *El Paso Healthcare Sys., Ltd. v. Murphy*, 518 S.W.3d 412, 418 (Tex. 2017))); *see also Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there.").  Therefore, if and when this Court must make an *Erie* guess at trial, the Court would likely conclude that the Proportionate Responsibility Statute applies to a knowing participation in breach of fiduciary duty claim.  The liability's source—whether direct or derivative—is irrelevant.  This necessarily means that *Kinzbach*'s common-law rule imposing joint and several liability by default

---

[103] *Id.* at 689–90 (emphasis added).

for a knowing participation claim is abrogated by the Proportionate Responsibility Statute. Therefore, the issue of proportionate responsibility would need to be submitted to the trier of fact as the Statute commands.  The only exception to this is if the harm cannot be apportioned with reasonable certainty under *Landers*—which, again, fills in a statutory gap.  In contrast, *Kinzbach* directly conflicts with the Statute, so it cannot survive.

There are several cases and scholars that might disagree with this Court's view—or rather—prediction of what the Supreme Court of Texas might say about this.  A notable case is *Guillory v. Dietrich*, where the Dallas, Texas Court of Appeals held that Chapter 33 did *not* abrogate common-law rules imposing joint and several liability in the civil conspiracy context.[104] Although addressing civil conspiracy, the court rejected the general notion that Chapter 33 supersedes common-law rules imposing joint and several liability for vicarious liability theories.[105] For authority, *Guillory* first relied on its own precedent in *LandAmerica Commonwealth Title Co. v. Wido*.[106]  "*LandAmerica* holds that civil conspiracy remains a valid basis for joint and several liability even when Chapter 33's joint and several liability conditions are not satisfied."[107]  The court stated that its *LandAmerica* precedent was supported by *Agar Corp.*'s holding that civil conspiracy is a vicarious liability theory—not an independent tort.[108]  With these cases as authority, the *Guillory* court reasoned that "Chapter 33 does not address vicarious liability situations."  598 S.W.3d at 296 (first citing Tex. Civ. Prac. & Rem. Code §§ 33.001–33.017; then

---

[104] 598 S.W.3d at 296.
[105] *See id.* at 295–96.
[106] No. 05-14-00036-CV, 2015 WL 6545685, at *11 (Tex. App.—Dallas Oct. 29, 2015, no pet.) (mem. op.).
[107] *Id.*
[108] *Guillory*, 598 S.W.3d at 296 (citing *Agar Corp.*, 580 S.W.3d at 142).

citing Lyndon Bittle, *Conspiracy: Has Joint and Several Liability Been Supplanted by Proportionate Responsibility?*, 69 Baylor L. Rev. 378, 396 (2017) ("It is generally accepted that claims [for] purely vicarious liability . . . are not subject to the statute [Chapter 33]."); and then citing Carl David Adams, *The "Tort" of Civil Conspiracy in Texas*, 54 Baylor L. Rev. 305, 315 (2002) ("No portion of Chapter 33 speaks to or purports to modify any of the previously established common law rules of vicarious liability.")); *see also Stephens v. Three Finger Black Shale P'ship*, 580 S.W.3d 687, 719 (Tex. App.—Eastland 2019, pet. filed) ("[J]oint and several liability attaches to a civil conspiracy finding and is not affected by the proportionate responsibility statutes.").

Another case that would disagree with this Court's view is *Heat Shrink Innovations, LLC v. Medical Extrusion Technologies-Texas, Inc.*, No. 02-12-00512-CV, 2014 WL 5307191 (Tex. App.—Fort Worth Oct. 16, 2014, pet. denied) (mem. op.). That court dealt directly with a knowing participation in breach of fiduciary duty claim. There, a jury found that defendants Heat Shrink Innovations, LLC and Kevin Wolfe misappropriated trade secrets, that Kevin Wolfe breached his fiduciary duty, that Heat Shrink knowingly participated in Wolfe's breach of fiduciary duty, and that Kevin Wolfe, Deborah Wolfe, and Heath Shrink all conspired to damage the plaintiff.[109]  The trial court entered final judgment on the jury verdict and held certain defendants jointly and severally liable for some of the damages for lost profits and breach of fiduciary duty. On appeal, the defendant-appellants argued that the trial court erred in finding Heat Shrink jointly and severally liable for damages from Wolfe's breach of fiduciary duty through its knowing

---

[109] *Heat Shrink Innovations*, 2014 WL 5307191, at *2.

participation in Wolfe's breach. They argued that the trial court needed to have the jury determine proportionate responsibility under the Proportionate Responsibility Statute.

The Fort Worth, Texas Court of Appeals disagreed, holding that the trial court did not err in failing to apportion liability because knowing participation in breach of fiduciary duty results in joint and several liability.[110] The court began by stating that "[k]nowing participation or aiding and abetting, while a distinct cause of action, is not actionable unless a third party commits a tort."[111] The court reasoned that "the pleadings alleged and the jury found that Heat Shrink's liability for knowing participation was wholly dependent upon and wholly derived from Wolfe's breach of his fiduciary duty to METT." Because of this, the court reasoned that joint and several liability was appropriate.[112]

For authority, *Heat Shrink Innovations* relied on another Dallas, Texas Court of Appeals decision, that in turn relied on *Kinzbach*'s statement that "[w]hen a third party knowingly participates in the breach of a fiduciary duty, the third party becomes a joint tortfeasor and is liable as such."[113] The court concluded by stating that "[i]t is unnecessary to submit a question to the jury to apportion liability; Heat Shrink's liability is Wolfe's liability."[114] In essence, the *Heat Shrink Innovations* court relied directly on *Kinzbach*'s common-law rule that automatically

---

[110] *Id.* at *8.
[111] *Id.* (citing *W. Fork Advisors, LLC v. SunGard Consulting Servs., LLC*, 487 S.W.3d 917, 921 (Tex. App.—Dallas Aug. 5, 2014, no. pet. h.) ("[T]he supreme court has specifically dealt with aiding and abetting—as it has dealt with conspiracy—as a 'dependent' claim, which is 'premised on' an underlying tort. Thus, when an underlying tort fails, there can be [no] aiding and abetting claim related to that failed tort." (citing *Ernst & Young, L.L.P.*, 51 S.W.3d at 582–83)).
[112] *Id.*
[113] *Id.* (first citing *Kastner v. Jenkens & Gilchrist, P.C.*, 231 S.W.3d 571, 580 (Tex. App.—Dallas 2007, no pet.); and then citing *Kinzbach*, 160 S.W.2d at 513–14).
[114] *Id.*

attaches joint and several liability to a defendant who knowingly participates in another's breach of fiduciary duty.  Applying *Kinzbach*, the court ignored the Proportionate Responsibility Statute as to apportioning liability.

This is problematic.  *Heat Shrink Innovations* did not consider whether *Kinzbach* survived Chapter 33's adoption—whether in its original form or after subsequent amendments.  *Guillory* relied on a theory of vicarious liability—and then jumped immediately to the common law's imposition of joint and several liability.  But the ***method*** of attaching liability is not the same as the ***extent*** of liability.  Although vicariously liable parties were traditionally held jointly and severally liable at common law, the Proportionate Responsibility Statute arguably disrupts this common-law if-then conclusion.  At common law, ***if*** a party was vicariously liable for a knowing participation claim, ***then*** it was jointly and severally liable.  But the Statute severs this link.  A defendant's liability can attach vicariously—by relationship alone—but this does not mean that the ***extent*** of that liability must be full liability.  In light of the Statute, it is plausible to suggest that liability can attach due to a relationship, but the extent of that liability can be less than total. The Texas Legislature appears to have done exactly that.

Moreover, it is difficult to say that the Proportionate Responsibility Statute does not address vicarious liability situations.  The Texas Legislature could have said that the Statute applies to "tortious conduct for which the defendant is directly liable."  But it didn't.  The Statute applies to ***all causes of action based on tort***.  The Legislature's use of broad and inclusive language underscores the point.  In addition, why would the Texas Legislature permit co-liable defendants to only pay their proportionate share for torts where they engage in culpable conduct, but hold defendants responsible for all the harm when they incur liability without fault?  As discussed previously, pure vicarious liability theories attach liability even without fault.  Although a knowing

participation (and civil conspiracy) claim involves culpable conduct, the cases and scholars declaring that the Proportionate Responsibility Statute does not apply to *pure* vicarious liability theories is incongruent with the statutory text, the legislative intent, and the degrees of culpability—ranging from purely vicarious (no fault), to conspiracy (some culpability), to malicious conduct (the highest degree of culpability).  If the Legislature intended to impose full liability for conduct without fault, but not to conduct where fault is found or presumed, it would say so in the Statute.  *See Dugger v. Arredondo*, 408 S.W.3d 825, 836 (Tex. 2013) ("Following a broad trend, the Legislature has embraced proportionate responsibility.") (citing Restatement (Third) of Torts:  Apportionment of Liability, § 1).

One last case and its referenced authorities should be discussed.  In *Fidelity & Guaranty Insurance Underwriters Inc. v. Wells Fargo Bank, National Association*, the United States District Court for the Southern District of Texas[115] observed that courts and commentators have recognized the difficulty in reconciling the Proportionate Responsibility Statute's text with certain causes of action, including vicarious and/or derivative liability claims.[116]  The court recognized that "the statute itself indicates a clear legislative preference for apportionment of responsibility in all tort actions," but also observed that the Statute has been declared inapplicable in certain contexts—particularly for respondeat superior theories.[117]

---

[115] The Court notes that this federal court's view on Texas law carries no binding weight in the *Erie* context.
[116] 2006 WL 870683, at *5 (S.D. Tex. Mar. 31, 2006) (first citing *Duenez*, 237 S.W.3d; then citing *Bedford v. Moore*, 166 S.W.3d 454, 464–66 (Tex. App.—Fort Worth 2005, no pet.) (considering the effect of the Proportionate Responsibility Statute on vicarious or derivative liability actions); and then citing William D. Underwood & Michael D. Morrison, *Apportioning Responsibility in Cases Involving Claims of Vicarious Derivative, or Statutory Liability for Harm Directly Caused by the Conduct of Another*, 55 Baylor L. Rev. 617, 647–48 (2003) (postulating that the Legislature, in enacting the original and present versions of section 33.003, did not consider derivative or vicarious liability cases)).
[117] *Id.* (citing *Rosell v. Cent. W. Motor Stages, Inc.*, 89 S.W.3d 643, 657 (Tex. App.—Dallas 2002, pet. denied)).

The court discussed *Duenez*—but read the case differently than this Court does.  The court reasoned that "[w]hile it is true that the statute involved in *Duenez* did impose derivative liability, the Texas Supreme Court also notes in its opinion that its conclusion comports with traditional notions of vicarious and derivative liability."[118]    The Southern District of Texas highlighted *Duenez*' approving citation to § 13 of the Restatement (Third) of Torts, which provides that "[a] person whose liability is imputed based on the tortious acts of another is liable for the entire share of comparative responsibility assigned to the other . . . ."  The court then reasoned that although § 13 refers to pure vicarious liability theories, "the Restatement makes clear that a party to whom liability is imputed and who is also independently liable 'is responsible for the share of the verdict assigned to [the party whose liability is imputed] and is also responsible for the share of the verdict assigned to its own negligence.'"[119]    The court used these "traditional notions of vicarious and derivative liability" to justify imposing joint and several liability.[120]

The court distinguished the aiding and abetting conspiracy claim at issue there, which requires a degree of fault, from pure vicarious liability theories.[121]    Because of the culpability required for an aiding and abetting claim, the court found that joint and several liability was appropriate.  Other than *Duenez*' reference to "traditional notions of vicarious and derivative liability," the court's only basis for imposing joint and several liability was the Proportionate Responsibility Statute's imposition of joint and several liability for concerted action involving

---

[118] *Id.* at *6.

[119] *Id.* at *7 (citing Restatement (Third) of Torts § 7 cmt. j).

[120] *See id.* (referring to *Duenez*, stating that "[i]n light of the citation of this language with apparent approval, it is evident that the court considered joint and several liability to be applicable in the context of derivative actions even absent a specific statute.").

[121] *Id.* at *6 ("These claims are not pure vicarious liability claims because they require that the Sureties prove certain wrongful conduct on the part of Wells Fargo.").

criminal conduct.[122]  The court ultimately held that "the relationship between a primary tortfeasor and an aider and abettor or conspirator does justify joint and several liability."[123]

This end around the Statute's apportionment of liability provisions is equally as flawed as the logic from *Guillory* and *Heat Shrink Innovations*.  The Southern District of Texas relied on common-law doctrines imposing joint and several liability by way of culpability, and then made the same logical error as *Guillory*.  These courts all reason that because liability attaches vicariously, that liability must be total—or one in the same as the primary tortfeasor.  But these courts are ignoring clear language in the Statute, even when the text applies to "all causes of action based on tort."  When a statute speaks directly to a particular issue, it necessarily follows that the legislature intended to abrogate common-law rules to the contrary.  Common-law rules fill in the gaps in statutory text—but they cannot override a statute.

To conclude, if obligated to make an *Erie* guess, this Court would likely be compelled to apply the Proportionate Responsibility Statute as written—especially in the absence of a Supreme Court of Texas decision to the contrary.  This obeys *Erie*'s command.  Accordingly, the Court would likely consider the degree of K&J's fault, if so found, including whether such apportionment could be done with reasonable certainty.

## VIII. <u>CONCLUSION</u>

In conclusion, for the reasons set forth above:  **(A)** K&J's motion for partial summary judgment (on the constructive fraudulent transfers claims and the state-law knowing participation in breach of fiduciary duty claim) is hereby **DENIED**; **(B)** the Trustee's motion for summary

---

[122] *See id.* (referring to Tex. Civ. Prac. & Rem. Code § 33.013).
[123] *Id.*

judgment on K&J's affirmative defenses (attorney-immunity defense and litigation-privilege defense) is hereby **GRANTED**;  and **(C)** K&J's motion for leave to designate a responsible third party is hereby **GRANTED**.  All other relief that may have been requested but that is not set forth herein is **DENIED**.

### ### END OF MEMORANDUM OPINION AND ORDER ###